## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**JOHN C. STOJETZ,**

   **Petitioner,**

 **v.**         **Case No.  2:04-cv-263**
             **JUDGE GREGORY L. FROST**
**TODD ISHEE, Warden,**     **Magistrate Judge Norah McCann King**

   **Respondent.**

## OPINION AND ORDER

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action under 28 U.S.C. § 2254.  This matter is before the Court upon respondent's motion to dismiss procedurally defaulted claims, (Doc.# 23), petitioner's memorandum in opposition, (Doc.# 34), and respondent's reply, (Doc.# 35).

### I.  Factual History

The facts and procedural history of this case were set forth by the Supreme Court of Ohio in *State v. Stojetz*, 84 Ohio St. 3d 453, 705 N.E.2d 329 (1999):

> On April 25, 1996, appellant, John C. Stojetz, Jr., along with five other adult inmates, ran across the prison yard of Madison Correctional Institution and toward the Adams Alpha Unit ("Adams A"), which houses many of the state's juvenile offenders who had been tried as adults and convicted of criminal offenses.  Appellant and the other five inmates were each armed with knives commonly known as "shanks."  Appellant and the others entered the Adams A unit, circled the control desk, and held corrections officer Michael C. Browning at knifepoint.  Appellant then placed a shank to Browning's throat and ordered him to give appellant the keys that opened the cell doors of the Adams A unit. Browning threw the keys down and was allowed to flee the unit.
>
> Corrections officers immediately responded to Browning's "man down" alarm and converged on Adams A.  Officers were able to observe appellant and the other five inmates carrying shanks.  The corrections officers, armed only with pepper mace, attempted to enter Adams A.  However, appellant and the other inmates, wielding shanks, prevented the officers from entering.

Once inside Adams A, appellant and his accomplices proceeded to cell number 144, the cell of Damico Watkins, a seventeen-year-old juvenile inmate. Using the keys taken from Browning, appellant unlocked Watkins's cell and appellant and the other adult inmates entered the cell and began attacking Watkins. After eluding the initial attack and escaping from his cell, Watkins was pursued throughout the Adams A unit and repeatedly stabbed by appellant and the other shank-wielding inmates. Watkins was able to escape his attackers several times only to be again cornered and subjected to repeated stabbings. Eventually, Watkins was cornered by appellant on the second floor of the Adams A unit. As Watkins pleaded for his life, appellant and inmate Bishop repeatedly stabbed Watkins and left him for dead.

During the attack on Watkins, correction officers had surrounded the exterior of the Adams A unit. Deputy Warden Mark Saunders arrived on the scene and began conversing with the inmates who had taken over Adams A. During this conversation, inmate Lovejoy stated that "they [the inmates who had taken over Adams A] would not cell with black inmates." Also during the conversation, appellant stated, "we took care of things because you [prison officials] wouldn't." Subsequently, the inmates were ordered to surrender. The prison yard was cleared and appellant and the five perpetrators passed their shanks through a window in the foyer of Adams A. Once prison officials retrieved the weapons, appellant and the other adult inmates exited the Adams A unit and surrendered to prison authorities.

After prison authorities regained control of Adams A unit, the coroner arrived at the scene and declared Watkins dead.

In October 1996, appellant was indicted by the Madison County Grand Jury for the aggravated murder of Watkins. The single-count indictment charged appellant with purposely causing the death of Watkins with prior calculation and design in violation of R.C. 2903.01([A]). The count also charged appellant with a (R.C. 2929.04[A][4]) death penalty specification of committing aggravated murder while a prisoner in a detention facility.

Appellant entered a plea of "not guilty" to the charges in the indictment, and the case proceeded to a trial by jury. Evidence submitted at trial indicated that appellant was known to be the head of the "Aryan Brotherhood" gang at the Madison Correctional Institution. Other evidence at trial indicated that appellant and other members of the Aryan Brotherhood did not want to be housed in the same cells as black inmates. Further testimony indicated that appellant and members of the Aryan Brotherhood wanted to be transferred from Madison Correctional to other penal institutions. In fact, following the murder, prison authorities conducted a search of appellant's cell as well as the cells of his accomplices. During the search it was found that appellant and four of the other

2

five inmates who had participated in the attack on Watkins had already packed their personal belongings.

At the conclusion of the trial, and after deliberation, the jury found appellant guilty of the charge and specification in the indictment.  Following a mitigation hearing, the jury recommended that appellant be sentenced to death for the aggravated murder of Watkins.  The trial court accepted the jury's recommendation and imposed the sentence of death.

*Stojetz*, 84 Ohio St. 3d at 452-54, 705 N.E.2d at 333-35.

II.  State Court History

A.  Direct Appeal

On October 10, 1996, petitioner was indicted by the Madison County Grand Jury on one count of aggravated murder in violation of Ohio Rev. Code §2903.01(B), and with a death penalty specification under Ohio Rev. Code §2929.04(A)(4), *i.e.*, that petitioner committed the aggravated murder offense while petitioner was a prisoner in a detention facility.  Attorneys James Doughty and Jon Doughty were appointed on October 17, 1996.  The trial phase commenced on April 1, 1997 with voir dire, and concluded on April 8, 1997 when the jury found petitioner guilty as charged.  The mitigation phase began on April 16, 1997, and, on April 17, 1997, the jury recommended that petitioner be sentenced to death.  On April 18, 1997, the trial court issued a decision and entry sentencing petitioner to death.

Represented by attorneys Joseph Wilhelm and Kelly Culshaw of the Ohio Public Defender's Office, petitioner appealed to the Supreme Court of Ohio.  In a merit brief filed on December 23, 1997, petitioner raised the following propositions of law:

Proposition of Law No. I: During jury selection in a capital case, the trial court must ask each prospective sentencing juror whether the juror's views on the death penalty would prevent or substantially impair the juror's ability to consider a life sentence if the defendant is found guilty of aggravated murder and the aggravating circumstance.  Life qualification of each prospective juror is required

3

whenever the trial court death qualifies the jurors by asking them if their views on the death penalty would prevent of substantially impair their ability to consider the death penalty in the case before them.

Proposition of Law No. II: John Stojetz's death sentence is inappropriate. Damico Watkins' death resulted from his own threats against Stojetz and Stojetz's post-traumatic stress disorder.

Proposition of Law No. III: When trial counsel fail to conduct an adequate voir dire, fail to object to inadmissible evidence, fail to request a separation of witnesses, fail to conduct an adequate investigation of the case, fail to object to victim impact evidence, present a confusing explanation of the mitigation weighing process, fail to adequately present evidence of a capital defendant's post-traumatic stress disorder, and fail to adequately prepare defendant's mitigation expert, a capital defendant is deprived of the right to the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ 10 and 16 of the Ohio Constitution.

Proposition of Law No. IV: A capital defendant is denied his rights to a jury verdict, to a fair trial, to due process, to the effective assistance of counsel, and to a reliable and nonarbitrary death sentence when the jury returns a general verdict of guilty for aggravated murder without a unanimous finding that the defendant was either the principal offender or an aider and abettor. U.S. Const. Amend. VI, VIII, XIV; Ohio Const. Art. I, §§ 5, 9, 10, 16.

Proposition of Law No. V: The defendant who is death-eligible as either a principal offender or aider and abettor must have access to the grand jury's testimony when there are five co-defendants and the defendant shows a particularized need for their testimony. U.S. Const. Amend. XIV; Ohio Const. Art. I, §16.

Proposition of Law No. VI: A defendant's right to a fair and impartial sentencing jury is denied when the trial court overrules a challenge for cause against a prospective juror who is biased in favor of capital punishment.

Proposition of Law No. VII: When improper identification evidence is presented during a defendant's capital trial the defendant's due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution and §16, Article I, of the Ohio Constitution are violated.

Proposition of Law No. VIII: Appellant's right to due process is violated when the trial court admits improper testimony in violation of the Fourteenth Amendment to the United States Constitution and §16, Article I, of the Ohio Constitution.

Proposition of Law No. IX: Appellant's due process and confrontation rights are violated when the trial court admits hearsay testimony in violation of the Sixth and Fourteenth Amendments to the United States Constitution and §§ 10 and 16, Article I, of the Ohio Constitution.

Proposition of Law No. X: Ohio Rev. Code Ann. § 2929.03(D)(1)(Anderson 1996) and Ohio Rev. Code Ann. § 2929.04 are unconstitutionally vague in violation of Appellant Stojetz's right against cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution and §§ 9 and 16, Article I, Ohio Constitution.

Proposition of Law No. XI: When prosecutors misrepresent witness testimony, argue victim impact evidence unrelated to the offense, deny a defendant individualized sentencing, mislead on the definition of mitigation, and shift the burden of proof to the defendant, a capital defendant is denied his substantive and procedural due process rights to a fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, as well as Article I, Sections 1, 9, 16, and 20 of the Ohio Constitution.  He is also denied his right to reliable sentencing as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9 and 16 of the Ohio Constitution.

Proposition of Law No. XII: A jury instruction that shifts the burden of proof on the mens rea element of aggravated murder to the accused is unconstitutional. U.S. Const. Amend. XIV; Ohio Const. Art. I, §16.  A jury instruction that makes the accused's guilt or innocence the ultimate issue of fact is also unconstitutional. U.S. Const. Amend. XIV; Ohio Const. Art. I, §16.

Proposition of Law No. XIII: A capital defendant's right to a reliable and nonarbitrary death sentence under the Eighth and Fourteenth Amendments is violated when the sentencing jury's responsibility for its verdict is attenuated by the trial court's instructions.

Proposition of Law No. XIV: When a videotape is replayed for the jury, its significance is overemphasized and a capital defendant's due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution and § 16, Article I, of the Ohio Constitution are violated.

Proposition of Law No. XV: It is constitutional error for the trial court to consider victim impact evidence in capital sentencing in the form of an opinion by a victim's family member about the defendant's fate.  U.S. Const. Amend. VIII, XIV.

Proposition of Law No. XVI: When the trial court considers public policy

5

matters, treats an institutional killing as requiring a mandatory death sentence, fails to weigh relevant mitigating evidence, and uses inappropriate standards in weighing proper mitigating evidence, a capital defendant is deprived of the right to individualized sentencing and of his liberty interest in the statutory sentencing scheme, thus violating rights guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and §§ 9 and 16, Article I, of the Ohio Constitution.

Proposition of Law No. XVII: The accused's right to due process under the Fourteenth Amendment to the United States Constitution is violated when the state is permitted to convict upon a standard of proof below proof beyond a reasonable doubt.

Proposition of Law No. XVIII: The defendant in a capital case has a due process liberty interest in Ohio Rev. Code Ann. § 2945.25(C)(Anderson 1996).  The defendant's liberty interest in Ohio Rev. Code Ann. § 2945.25(C) is infringed when the trial court fails to follow the revised code during voir dire on the issue of capital punishment.

Proposition of Law No. XIX: Ohio's death penalty laws are unconstitutional.  The Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution establish the requirements for a valid death penalty scheme.  Ohio Rev. Code Ann. Sections 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04, and 2929.05 (Anderson 1996).  Ohio's death penalty statute does not meet the prescribed constitutional requirements and is unconstitutional on its face and as applied to Appellant Stojetz.

(App. Vol. II, at 48).  On February 17, 1999, the Supreme Court of Ohio issued a decision rejecting petitioner's propositions of law, finding petitioner's death sentence to be appropriate and proportionate, and affirming the judgment of the trial court.  *State v. Stojetz*, 84 Ohio St. .3d 452, 705 N.E.2d 329 (1999); App. Vol. III, at 143.  Petitioner filed a motion for reconsideration on March 1, 1999, (App. Vol. III, at 171), which motion the Supreme Court of Ohio summarily denied on April 7, 1999, (App. Vol. III, at 178).

On November 10, 1999, the United States Supreme Court denied petitioner's petition for a writ of *certiorari*.  (App. Vol. III, at 215).

6

B.  "*Murnahan*" Application for Reopening

Represented by attorney John J. Gideon, petitioner on May 18, 1999 filed an application for reopening in the Supreme Court of Ohio, pursuant to Rule XI, Section 5 of the Rules of Practice of the Supreme Court and *State v. Murnahan*, 63 Ohio St. 3d 60 (1992) – Ohio's procedure for raising claims of ineffective assistance of appellate counsel.  Petitioner alleged that his attorneys performed unreasonably and to his prejudice on his direct appeal of right by failing to raise the following propositions of law:

> Proposition of Law I: Trial counsel render ineffective assistance of counsel under the Sixth Amendment to the United States Constitution by failing to object to the admission of the hearsay testimony of a corrections officer that juvenile inmates were yelling from their cells that the defendant was a murderer.
>
> Proposition of Law II: Trial counsel render ineffective assistance of counsel under the Sixth Amendment to the United States Constitution by failing to object to prosecutorial misconduct: (I) in misrepresenting testimony in trial phase closing argument; (ii) in drawing extraneous comparisons between the defendant and others and arguing public policy during sentencing phase closing argument; (iii) in misleading the jury on the definition of "mitigation" during sentencing phase closing argument; and (iv) in shifting the burden of proof to the defendant during sentencing phase closing argument.
>
> Proposition of No III: Trial counsel render ineffective assistance of counsel under the Sixth Amendment to the United States Constitution by failing to object to the admission of a crime scene videotape and for failing to object to the replaying of the videotape during trial phase deliberations.

(App. Vol. III, at 186).  On August 18, 1999, the Supreme Court of Ohio issued a decision summarily denying petitioner's application for reopening.  (App. Vol. III, at 214).

C.  Postconviction Proceedings

1.  Trial Court

Represented by attorney John J. Gideon, petitioner filed a postconviction action in the trial court on March 4, 1998, pursuant to Ohio Rev. Code §2953.21, while his direct appeal was

7

still being litigated by the Ohio Public Defender's Office.  Petitioner raised the following

grounds for relief:

> First Ground for Relief: Actual Innocence.

> Second Ground for Relief: Ineffective Assistance Of Counsel With Respect To
> Pretrial Publicity.

> Third Ground for Relief: Ineffective Assistance Of Counsel With Respect to Trial
> Publicity.

> Fourth Ground for Relief: Ineffective Assistance Of Counsel In Failing To
> Investigate And Present A Defense.

> Fifth Ground for Relief: Ineffective Assistance Of Counsel In Failing To Call
> Witnesses.

> Sixth Ground for Relief: Withholding Of Evidence.

(App. Vol. IV, at 5).

On March 10, 1998, petitioner filed a first amendment to his postconviction action

pursuant to Ohio Rev. Code §2953.21(F), submitting the original affidavit of Diane Ash as

Exhibit K to the original petition. (App. Vol. IV, at 213).

On March 19, 1998, petitioner then filed a second amendment to his postconviction

action pursuant to Ohio Rev. Code §2953.21(F), submitting additional exhibits supporting the

first, fourth, and fifth grounds for relief set forth in his original petition.  Specifically, petitioner

submitted a sworn statement by Phillip Wierzgac as Exhibit EE.  (App. Vol. IV, at 220).

On June 9, 1998, petitioner filed a third amendment to his postconviction action pursuant

to Ohio Rev. Code §2953.21(F), submitting additional exhibits supporting the first, fourth, and

sixth grounds for relief set forth in his original petition.  Specifically, petitioner submitted a copy

of the 15-page Ohio State Highway Patrol Report of Investigation authored by Trooper R.A.

Downey as Exhibit FF. (App. Vol. IV, at 254). Petitioner also submitted his own supplemental

affidavit as Exhibit GG (App. Vol. IV, at 282); and another copy of Trooper R.A. Downey's

investigation report as Exhibit HH, (App. Vol. IV, at 286).

On August 19, 1998, petitioner filed a fourth amendment to his postconviction action

pursuant to Ohio Rev. Code §2953.21(F), adding two more grounds for relief and submitting a

second supplemental affidavit by petitioner as Exhibit II in support of those new grounds. (App.

Vol. IV, at 309). Petitioner added the following grounds for relief:

> Seventh Ground for Relief: Denial of Petitioner's Right to Testify.

> Eighth Ground for Relief: Ineffective Assistance of Counsel for Failing to Advise
> Petitioner of His Right to Testify and for Failing to Call Petitioner to Testify.

(App. Vol. IV, at 310).

On February 26, 1999, petitioner filed a motion for leave to amend his postconviction

action in an effort to preserve his ability to file a fifth amendment to his postconviction action.

(App. Vol. IV, at 328). The trial court granted petitioner's motion on March 5, 1999. (App. Vol.

IV, at 333). Accordingly, on March 19, 1999, petitioner filed a fifth amendment to his

postconviction action to add three more ground for relief and to supplement his sixth, ninth,

tenth, eleventh grounds for relief with additional argument and exhibits, *i.e.*, a sworn statement

by Phillip Wierzgac attached as Exhibit JJ, an article by Matthew Silberman for the annual

meetings of the American Sociological Association in August 1993 entitled "The Demise of the

'Hands-Off' Doctrine: The Impact of Recent Court Decisions on Prison Administration,"

attached as Exhibit KK; and a third supplemental affidavit by petitioner, attached as Exhibit

MM; . (App. Vol. IV, at 334). Petitioner added the following grounds for relief:

> Ninth Ground for Relief: Ineffective Assistance of Counsel for Failing to Present

9

Evidence to Rebut Prosecution Attempt to Portray Incident as Racist.

<u>Tenth Ground for Relief</u>: Ineffective Assistance of Counsel for Failing to Present Mitigating Evidence that the Victim Induced the Offense and that Petitioner was Provoked.

<u>Eleventh Ground for Relief</u>: Ineffective Assistance of Counsel for Failing to Move for a Separation of Witnesses.

(App. Vol. IV, at 334-349).

An evidentiary hearing scheduled for May 10, 1999 was continued until August 9, 1999. The hearing was again rescheduled for December 6, 1999. On March 13, 2000, the trial court, following the hearing and after reviewing the postconviction pleadings and state court record, issued an entry directing the parties to submit supplement briefs. (App. Vol. V, at 67). Petitioner submitted his post-hearing brief on April 11, 2000. On July 31, 2000, the state filed a motion for summary judgment. (App. Vol. V, at 145).

On September 14, 2000, the trial court issued a decision and entry considering and rejecting petitioner's claims, and denying his petition for postconviction relief. (App. Vol. V, at 191-303).

## 2. Court of Appeals

Petitioner filed a notice of appeal in the trial court on October 13, 2000. (App. Vol. V, at 304). On May 2, 2001, petitioner sought a fourteen-day extension of time to file his appellate brief. On May 11, 2001, the appellate court granted petitioner's request for an extension of time, directing him to file his appellate brief by May 28, 2001. (App. Vol. VII, at 26). On May 29, 2001, petitioner sought a six-day extension of time to file his appellate brief. (App. Vol. VII, at 27). On June 4, 2001, petitioner sought a seven-day extension of time to file his appellate brief. On June 5, 2001, the appellate court ruled on petitioner's request of May 29, 2001 and directed

him to file his appellate brief by June 4, 2001. (App. Vol. VII, at 35). On June 11, 2001, petitioner filed a motion requesting leave to file a sixty-five page brief, above the twenty-page limit. On June 25, 2001, the appellate court granted petitioner leave to file a brief not to exceed forty pages in length. (App. Vol. VII, at 40).

After being granted several extensions of time, as well as leave to file a brief in excess of twenty pages, counsel for petitioner apparently failed to file his appellate brief or to request an extension of time within the time permitted by the appellate court. Accordingly, the appellate court issued an order on September 10, 2001, directing counsel for petitioner to show cause why the appeal should not be dismissed. (App. Vol. VII, at 42). On September 24, 2001, counsel for petitioner responded to the show cause order, explaining that he had never received the appellate court's entry dated June 25, 2001 granting him leave to file a brief in excess of twenty pages, since that entry, according to counsel, was sent to him at the Ohio Attorney General's Office, though counsel for petitioner did not work at the Ohio Attorney General's Office. (App. Vol. VII, at 44). On October 9, 2001, the appellate court issued an entry in response to counsel for petitioner's "show cause" brief directing him to file his appellate brief before October 15, 2001. (App. Vol. VII, at 51). Counsel for petitioner apparently failed to file his appellate brief.

On January 10, 2002, the appellate court dismissed petitioner's appeal with prejudice. (App. Vol. VII, at 53).

On January 23, 2002, represented by the Ohio Public Defender's Office, petitioner filed a motion in the court of appeals to re-open his appeal, to allow the Ohio Public Defender's Office replace John Gideon, and to allow new counsel to file an appellate brief by February 4, 2002. (App. Vol. VII, at 54). Petitioner explained that his previous counsel had failed to file the

11

appellate brief due to mental health problems he had been experiencing and that the prosecuting

attorney did not object to the Ohio Public Defender's motion to re-open petitioner's appeal. On

February 4, 2002, the Ohio Public Defender's Office filed a motion to file a brief instanter,

pending the appellate court's disposition of their motion filed on January 23, 2002. (App. Vol.

VII, at 71).

On February 8, 2002, the appellate court issued an entry summarily denying petitioner's

motion to re-open his appeal. (App. Vol. VII, at 290). The appellate court also issued an entry

on February 19, 2002, denying petitioner's February 4, 2002 motion to file a brief instanter.

(App. Vol. VII, at 292).

### 3. Supreme Court of Ohio

Represented by the Ohio Public Defender's Office, petitioner appealed to the Supreme

Court of Ohio on February 21, 2002. (App. Vol. VII, at 294). Petitioner filed a memorandum in

support of jurisdiction on February 21, 2002, raising the following propositions of law:

> Proposition of Law No. I: When a capital appellant demonstrates that post-
> conviction counsel, due to apparent mental illness, failed to file his merit brief,
> the appellate court must re-open that appellant's direct appeal. Failure to do so
> violates the appellant's rights to effective assistance of counsel, due process of
> law, equal protection of the law, confrontation of the state's evidence against him,
> and freedom from cruel and unusual punishment. U.S. Const. Amends. V, VI,
> VIII, IX, and XIV; Ohio Const. Art. I, §§ 1, 2, 5, 9, 10, 16, 20.

> Proposition of Law No. II: Where the evidence adduced at a post-conviction
> evidentiary hearing, in conjunction with post-conviction exhibits, showed that
> Stojetz was denied his right to the effective assistance of counsel, the trial court
> must grant relief on the post-conviction petition. U.S. Const. Amends. VI, XIV;
> Ohio Const. Art. I, § 1, 10, 16.

> Proposition of Law No. III: A defendant who is actually innocent of the death
> penalty may not be executed. U.S. Const. Amends. VIII, XIV; Ohio Const. Art. I,
> §§ 1, 10, 16.

Proposition of Law No. IV: When a post-conviction petitioner demonstrates the state withheld material, exculpatory evidence, the trial court must reverse the petitioner's conviction and sentence.  U.S. Const. Amends. V, XIV; Ohio Const. Art. I, § 16.

(App. Vol. VIII, at 6).  On May 15, 2002, the Supreme Court of Ohio issued a one-line entry

summarily declining to accept jurisdiction over the appeal.  (App. Vol. VIII, at 238).

### D.  Motion for a New Trial

On April 12, 2000, during the pendency of his postconviction action in the trial court,

petitioner, represented by attorneys John J. Gideon and Cordelia Glenn, filed a motion for a new

trial based on newly discovered evidence.  (App. Vol. IX, at 5).  Petitioner argued that the

December 19, 1997 deposition testimony of Phillip Wierzgac and the August 18, 1998 testimony

of Wierzgac at the trial of James Bowling – neither of which were available within the one-

hundred-and-twenty-day period following petitioner's sentencing by the trial court – provided

newly discovered evidence that: (1) John Stojetz is actually innocent of calculated murder; (2)

Damico Watkins' assault on Doug Haggerty and his threats against John Stojetz induced and

provoked the actions of John Stojetz; (3) the actions of John Stojetz were not motivated by

racism but by self-preservation and self-protection; and (4) defense counsel were constitutionally

ineffective in failing to investigate and present evidence of John Stojetz's actual innocence,

evidence of Damico Watkins' inducement and provocation of John Stojetz, and the protectionist

motivation underlying John Stojetz's actions.  On April 17, 2000, the trial court issued an entry

reserving judgment on petitioner's motion until the completion of the trial court's decision on

petitioner's postconviction motion.  (App. Vol. IX, at 134).  On March 22, 2002, following the

trial court's decision denying petitioner's postconviction motion, the trial court issued a decision

denying his motion for a new trial.  (App. Vol. IX, at 135).  The trial court noted that it had fully

13

evaluated and rejected the claims set forth in his motion for a new trial – including the new testimony by Phillip Wierzgac – in rejecting petitioner's postconviction motion.

On April 22, 2002, petitioner, represented by the Ohio Public Defender's Office, filed a notice of appeal to the Ohio Court of Appeals for the Twelfth District. In a merit brief filed on June 14, 2002, petitioner raised the following assignments of error:

> Assignment of Error No. I: The trial court erred in denying Appellant Stojetz's motion for a new trial.
>
> Issues Presented for Review and Argument:
>
> 1.    When the trial court bases its denial of a motion for a new trial in part on factual findings unsupported by the record below, the trial court abuses its discretion and deprives the appellant of his rights to due process and an adequate state corrective process.
>
> 2.    When the trial court denies a motion for a new trial despite a wealth of evidence supporting an appellant's request, the trial court abuses its discretion and deprives appellant of his rights to effective assistance of counsel, due process, and an adequate state corrective process.
>
> Assignment of Error No. II: The trial court erred in failing to find counsel rendered ineffective assistance.
>
> Issues Presented for Review and Argument:
>
> 1.    When trial counsel fail to interview witnesses and to present relevant testimony, ineffective assistance is rendered depriving the defendant to effective assistance of counsel.

(App. Vol. X, at 31). On December 2, 2002, the appellate court issued a decision affirming the trial court's decision denying petitioner's motion for a new trial. (App. Vol. X, at 110).

Petitioner appealed to the Supreme Court of Ohio and raised the following propositions of law in a memorandum in support of jurisdiction filed on January 15, 2003:

> Proposition of Law No. I: A trial court abuses its discretion when, despite a wealth of evidence supporting the request, it denies a capital appellant's new trial

14

motion. This error is compounded when the trial court's decision is based on flawed factual findings. This violates the appellant's rights to effective assistance of counsel, due process, and an adequate state corrective process. U.S. Const. Amends. VI, VIII, XIV.

Proposition of Law No. II: Trial counsel render ineffective assistance of counsel when they fail to interview witnesses and present relevant testimony. This deprives the appellant of his rights to effective assistance of counsel and due process. U.S. Const. Amends. VI, XIV.

(App. Vol. XI, at 22). On April 2, 2003, the Supreme Court of Ohio issued a one-line entry

summarily declining to accept jurisdiction over the appeal. (App. Vol. XI, at 63).

## III. Habeas Corpus Petition

The instant proceedings began on July 1, 2003, when petitioner filed a notice of intention

to file a habeas corpus petition, as well as a motion for appointment of counsel. (Doc.Nos. 1 and

3). In accordance with this Court's Order of September 19, 2003, (Doc.# 7), the habeas corpus

petition was filed on April 1, 2004. (Doc.# 14). Petitioner raises the following claims for relief:

**First Claim for Relief:** Ineffective assistance of counsel.

**A.** Failed to Effectively Present a Defense or Defend Mr. Stojetz. (Petition, Doc.# 14-3, ¶¶ 95-218).

**B.** Voir Dire.

    **1.** Pretrial Publicity (¶¶ 219-234).

    **2.** Death Penalty Qualification (¶¶ 235-248).

**C.** Improper Opening Statements. (¶¶ 249-256).

**D.** Failed to Move for a Mistrial when the Jury was Exposed to Suppressed Evidence. (¶¶ 257-259).

**E.** Failed to Challenge Improper Jury Instructions. (¶¶ 260-267).

**F.** Failed to Object to Prosecutorial Misconduct. (¶¶ 268-280).

15

**G.**    Failed to Object to the Admission of Evidence.  (¶¶ 281-283).

**H.**    Failed to Present the Testimony of Mr. Stojetz.  (¶¶ 284-286).

**I.**    Failed to Properly Prepare, Investigate, and Present a Mitigation Defense.

      **1.**    Failure to Investigate and Present a Defense.  (¶¶ 288-301).

      **2.**    Failed to Hire Experts for Mitigation.  (¶¶ 302-311).

**J.**    Failed to Object to Victim Impact Evidence.  (¶¶ 312-314).

**K.**    Cumulative Impact.  (¶¶ 315-319).

**Second Claim for Relief:** Mr. Stojetz is actually innocent of aggravated murder and/or innocent of the death penalty.  (¶¶ 320-330).

**Third Claim for Relief:** The voir dire conducted in Mr. Stojetz's trial was inadequate to ensure a fair jury.

INTRODUCTION.  (¶¶ 331-337).

PRETRIAL MATTERS.  (¶¶ 338-351).

JURY VOIR DIRE AND DEATH QUALIFICATION.  (¶¶ 352- 365).

A.    Carla Stover.

B.    Edward Banion.

C.    Andre Porter.

D.    Juror Suzanne Coffin.

E.    Kathy Wolfe.

F.    Sherry Leonard.

G.    Juror Number Three, Michelle Kowalski.

H.    Prospective jurors Ronald Smith, Lisa Morgan, Celia Browning, and Aleda Reed.

I.    Terry Puckett and Ronald Daniels.

16

J.    Dusty McCollum.

K.    Thomas Herman.

L.    Sandra Shaner and John Shilling.

M.    Juror Number Ten, Harold Huffman.

N.    Daniel Persinger, Juror Number Nine, and Daniel Puckett, Juror Number Six.

O.    Tamara Cantrell.

P.    Annabelle Biggs.

Q.    David Little.

R.    Richard Hirst, Juror Number Eleven.

S.    Questions about belief in the right of self-defense or defense of another.

GENERAL VOIR DIRE BY DEFENSE COUNSEL.  (¶¶ 366-373).

Counsel Failed to Ask Following Questions in a "Probing or Skillful Manner":

A.    Jurors' preconceived notions about reasonable doubt;

B.    Whether any of the prospective jurors had been victims of crime;

C.    Prior service on other juries.

D.    Jurors' knowledge of the Aryan Brotherhood.

E.    Jurors' expectations of the Petitioner testifying in his own behalf during trial.

F.    Whether jurors would consider petitioner's testimony under the same instructions on credibility as other witnesses;

G.    Whether jurors would automatically believe law enforcement witnesses or whether they would view their testimony under the same tests for credibility as other witnesses as instructed by the trial court;

H.    The effect on jurors of State's evidence including graphic testimony and

17

language, photographs, and video recordings, testimony about racist comments and beliefs, and testimony about prison gangs and prison violence;

I.    Whether jurors had read or heard news accounts of the incident or had discussed the incident with others in the community or with other prospective jurors;

J.    What opinions, if any, were held by the jurors due to the fact that Petitioner was at the time of the incident charged, and at the time of trial, an inmate in a state correctional facility;

K.    Jurors' familiarity with witnesses for the State;

L.    Jurors' understanding, if any, of the presumption of innocence;

M.    Jurors' opinions of the justice system as expressed in juror questionnaires, and in particular, opinions on notorious cases such as the McDonald's Coffee Case and the O.J. Simpson Case.

N.    Jurors' overall perceptions of the justice system and especially the criminal justice system.

EXERCISE OF PEREMPTORIES.  (¶¶ 374-382).

CONCLUSION.

**Fourth Claim for Relief:** Erroneous Jury Instructions.

**1.**    Trial Phase Instructions.

    **A.**    Reasonable Doubt Instruction.  (¶¶ 389-395).

    **B.**    Purpose to Kill Instruction.  (¶¶ 396-406).

    **C.**    Improper Instruction on Principal Offender or Aider and Abettor Element.  (¶¶ 407-409).

    **D.**    Acquittal First Instruction.  (¶¶ 410-414).

**2.**    Mitigation Phase Instructions.

    **A.**    The jury improperly considered and weighed both the principal offender and aider and abettor findings.  (¶¶ 415-418).

18

        **B.**    Acquittal of Death First Instruction.  (¶¶ 419-427).

**3.**    Conclusion.

**Fifth Claim for Relief:** The lack of specific findings by the jury denied Mr. Stojetz his Sixth Amendment right to a unanimous jury verdict.

**A.**    Jury Verdicts.  (¶¶ 431-450).

**B.**    Grand Jury.  (¶¶ 451-456).

**Sixth Claim for Relief:** During trial the jury was exposed to suppressed evidence inaccurately reported by the media as a confession of personal responsibility.  (¶¶ 457-482).

**Seventh Claim for Relief:** The jury was exposed to irrelevant, inadmissible, inflammatory, and unduly prejudicial material of personal responsibility.  (¶¶ 483-518).

**Eighth Claim for Relief:** The jury's responsibility for the execution of Mr. Stojetz was improperly diminished.  (¶¶ 519-534).

**Ninth Claim for Relief:** Prosecutorial misconduct throughout the trial deprived Mr. Stojetz of fair trial, a fair sentencing proceeding, due process, and equal protection.

**A.**    Gender Discrimination in Voir Dire.  (¶¶ 540-554).

**B.**    Misrepresentation of Testimony.  (¶¶ 555-561).

**C.**    Victim Impact.  (¶¶ 562-566).

**D.**    Improper Mitigation Argument.  (¶¶ 567-599).

**E.**    Conclusion.  (¶¶ 600-601).

**Tenth Claim for Relief:** The state improperly withheld exculpatory, mitigation, and/or impeachment evidence from the defense.  (¶¶ 602-624).

**Eleventh Claim for Relief:** Ineffective assistance of counsel on his direct appeals.

**Counsels' Performance was Unreasonable, Deficient, and Failed to Meet Reasonable Standard of Care in Capital Cases.**

Appellate counsel failed to raise the following non-exhaustive list of issues on direct appeal (¶ 628):

A.    The prosecutor's discriminatory use of peremptory challenges to exclude potential women jurors and death-qualified jurors and defense counsel's failure to object to the prosecutor's discriminatory use of peremptory challenges as to women and death qualified jurors. *See* Claim for Relief No. IX;

B.    The failure of trial counsel to object to improper jury instructions including but not limited to the trial court's improper instruction that mitigation verdicts must be unanimous. *See* Claim for Relief No. IV;

C.    The failure of trial counsel to object to victim impact information. *See* Claim for Relief No. XV;

D.    [Petition fails to set fort sub-part D].

E.    The failure of trial counsel to object to improper, inflammatory, and prejudicial arguments by the prosecutors. *See* Claim for Relief No. IX;

F.    The actual innocence of Mr. Stojetz of the charge of aggravated murder and/or the death penalty. *See* Claim for Relief No. II;

G.    The failure of trial counsel to request a mistrial when the jury was exposed to suppressed, and incorrectly characterized, evidence. *See* Claim for Relief No. VI;

H.    The failure of trial counsel to advise Mr. Stojetz of his right to testify and to put Mr. Stojetz on the stand. *See* Claim for Relief No. XVI;

I.    The failure of trial counsel to rebut the state's theory of racial animus. *See* Claim for Relief I;

J.    The failure of trial counsel to present mitigation evidence that Watkins provoked the attack. *See* Claim for Relief No. I; and

K.    The failure of trial counsel to seek sequestration of the jurors. *See* Claim for Relief No. III.

**Twelfth Claim for Relief:** Ohio's postconviction process is an inadequate corrective remedy rendering the entire death penalty scheme arbitrary and capricious.

Ohio's Postconviction Scheme is not an Independent and Adequate Mechanism to

Protect the Constitutional Rights of Capital Defendants. (¶¶ 649-667).

Ohio's Postconviction Scheme is an Ineffective and Inadequate Remedy as Conducted in Mr. Stojetz's Case. (¶¶ 668-709).

**Thirteenth Claim for Relief:** Denial of a fair proportionality review.

Ohio Created a Liberty Interest in Proportionality Review. (¶¶ 717-735).

The Statutorily Mandated Proportionality Review Ensures Proper Protections Against Arbitrary and Capricious Death Sentences. (¶¶ 736-749).

The Statutorily Mandated Proportionality Review Ensures Proper Protections Against Arbitrary and Capricious Death Sentences. (¶¶ 750-763).

Deference must be Given to the Legislative Mandate of the Ohio Legislature. (¶¶ 764-766).

**Fourteenth Claim for Relief:** John Stojetz's death sentence is inappropriate, arbitrary, and capricious.

Arbitrary, Capricious, and Disproportionate to Other Cases. (¶¶ 772-781).

Watkins's Actions Prompted the Attack. (¶¶ 782-797).

Mr. Stojetz's Post-Traumatic Stress Disorder Renders the Death Sentence Constitutionally Deficient. (¶¶ 798-812).

**Fifteenth Claim for Relief:** The trial court relied on inadmissible, irrelevant, inflammatory, and unduly prejudicial victim impact evidence in sentencing Mr. Stojetz to death. (¶¶ 815-835).

**Sixteenth Claim for Relief:** Mr. Stojetz was denied his constitutional right to testify in his own defense. (¶¶ 836-862).

**Seventeenth Claim for Relief:** Unconstitutionality of the death penalty statute. (¶¶ 863- ).

**A.** O.R.C. §§ 2929.022, 2929.03, and 2929.04 violate the defendant's rights to effective assistance of counsel and to a trial before an impartial jury, as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. (¶¶ 885-897).

**B.** O.R.C. §§ 2929.03, 2929.04, and 2929.022 violate the Eighth and

Fourteenth Amendments to the United States Constitution by failing to provide adequate guidelines for deliberation, leaving the jury without proper guidelines in balancing the aggravating and mitigating circumstances. (¶¶ 898-924).

**C.** O.R.C. §§ 2929.022, 2929.03, and 2929.04 and Ohio R. Crim. P. 11(C)(3) place an unconstitutional burden on the defendant's right to a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution and his rights to be free from compulsory self-incrimination under the Fifth and Fourteenth Amendments to the United States Constitution. (¶¶ 925-936).

**D.** O.R.C. § 2929.03 fails to provide a meaningful basis for distinguishing between life and death sentences, as it does not explicitly require the jury, when it recommends life imprisonment, to specify the mitigating circumstances found, or to identify its reasons for such sentence. This denies the accused his rights under O.R.C. § 2929.03(A), [and] the Constitution. (¶¶ 937-944).

**E.** O.R.C. §§ 2929.021, 2929.03, and 2929.05 fail to assure adequate appellate analysis of arbitrariness, excessiveness, and disproportionality of death sentences and the Supreme Court of Ohio fails to engage in a level of analysis that ensures against arbitrary death sentencing. (¶¶ 945-983).

**F.** The appellate review provision of O.R.C. § 2929.05 fails to specifically require inquiry and findings regarding arbitrariness, passion, or prejudice, and this is constitutionally inadequate under the Eighth and Fourteenth Amendments to the United States Constitution. (¶¶ 984-987).

**G.** The Ohio Death Penalty Statute impermissibly mandates imposition of the death penalty and precludes a mercy option in the absence of mitigating evidence or when aggravating circumstances outweigh mitigating factors. The statute also fails to require a determination that death is the appropriate punishment. (¶¶ 988-998).

**H.** O.R.C. §§ 2929.03, 2929.04, and 2929.05 violate the Eighth and Fourteenth Amendments to the United States Constitution by failing to require the jury to decide the appropriateness of the death penalty. (¶¶ 999-1008).

**I.** The Ohio Death Penalty Scheme permits imposition of the death penalty on a less than adequate showing of culpability by failing to require a conscious desire to kill, premeditation, or deliberation as the culpable mental state, by denying lesser offense instructions and by allowing affirmance of capital convictions on the basis of unconstitutional presumptions respecting the presence of intent to kill. (¶¶ 1009-1019).

**J.** The Ohio "beyond a reasonable doubt" standard of proof fails to meet the

22

requirement of higher reliability for the guilt determination phase of a capital
case.  (¶¶ 1020- 1034).

> The statutes fail to require proof beyond all doubt as to guilt that
> aggravating circumstances outweigh mitigating factors, and the
> appropriateness of death as a punishment before the death sentence
> may be imposed.

> Ohio's definition of proof "beyond a reasonable doubt" results in a
> burden of proof insufficiently stringent to meet the higher
> reliability requirement in capital cases at the guilt phase, and this
> has not been cured by the appellate courts in their review of
> convictions or death sentences.

> The Ohio death penalty statutes fail to require that the jury
> consider as a mitigating factor pursuant to O.R.C. § 2929.04(B)
> that the evidence fails to preclude all doubt as to the defendant's
> guilt.

**K.**   O.R.C. §§ 2929.03, 2929.04, and 2929.05 violate the Eighth and Fourteenth
Amendments to the United States Constitution in failing to properly allocate the
burden of proof during mitigation phase of trial.  (¶¶ 1035-1041).

**L.**   The definition of mitigating factors in O.R.C. § 2929.04(B)(7) creates an
unreliable death sentence by creating non-statutory aggravating circumstances.
(¶¶ 1042-1046).

**M.**   Ohio's statutory nature and circumstances mitigating factor is improperly
used as a non-statutory aggravating circumstance.  (¶¶ 1047-1050).

**N.**   The Death Penalty violates international law.  (¶¶ 1051-1068).

**Eighteenth Claim for Relief:** The cumulative impact of the errors addressed in
this petition render Mr. Stojetz's conviction and sentence unreliable and
unconstitutional.  (¶¶ 1071-1077).

(Habeas Corpus Petition, Doc.# 14).

Pursuant to the Court's December 22, 2004 Scheduling Order (Doc.# 22), respondent

filed a motion to dismiss procedurally defaulted claims on January 3, 2005 (Doc.# 23).

Petitioner filed a response in opposition on June 2, 2005 (Doc.# 34), and respondent filed a reply

on June 16, 2005 (Doc.# 35).  Respondent's motion to dismiss procedurally defaulted claims is now ripe for disposition.

## IV.  Procedural Default Discussion

It does not appear that every claim petitioner has raised in his habeas corpus petition was presented to the Ohio courts either during the direct appeal or on collateral review.  As a general matter, a defendant who is convicted in Ohio of a criminal offense has available to him more than one method of challenging that conviction.  Claims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*.  *State v. Perry*, 10 Ohio St. 2d 175, 226 N.E.2d 104 (1967).  Issues that must be raised in a postconviction action pursuant to Ohio Rev. Code §2953.21 include claims that do not appear on the face of the record and claims of ineffective assistance of trial counsel where the defendant was represented on direct appeal by the same attorney who represented him at trial.  *State v. Cole*, 2 Ohio St. 3d 112, 443 N.E.2d 169 (1982).  In 1992, a third procedure of review emerged.  Claims of ineffective assistance of appellate counsel must be presented to the appellate court in a motion for delayed reconsideration pursuant to *State v. Murnahan*, 63 Ohio St. 3d 60, 584 N.E.2d 1204 (1992) and Ohio R. App. P. 26(B).

In addition to raising each claim in the appropriate forum, a habeas litigant, in order to preserve his constitutional claims for habeas review, must also present those claims to the state's highest court.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).  Thus, under Ohio law, the conviction and sentence must be appealed to the Supreme Court of Ohio on direct appeal.  Further, any adverse decision rendered by the trial court in postconviction must be appealed to both the Ohio Court of Appeals and the Supreme Court of Ohio.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). But if, because of a procedural default, the petitioner can no longer present his claims to the state courts, then he has also waived those claims for purposes of federal habeas corpus review, unless he can demonstrate both cause for the procedural default, as well as actual prejudice from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, the Court must undertake a four-part analysis when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must decide that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not

25

to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985).

Respondent alleges that many of petitioner's grounds, in their entirety or in part, are subject to one or more procedural defaults. Respondent argues that these grounds are defaulted because they were never presented to the state courts, because they were not preserved at trial with a contemporaneous objection, because they were not fairly presented to the state courts, because they were not appealed to the court of appeals during petitioner's postconviction proceedings, and/or because they were not presented in accordance with Ohio's *res judicata* rule. Respondent also asserts a procedural default defense against several grounds "where it is impossible to tell whether Stojetz raised the claim or not." (Doc.# 23, at 7).

The Court will address each of the grounds individually to determine whether each ground is subject to the procedural default alleged by respondent.

A.  Ground One, Sub-Part (A) – Ineffective Assistance For Failure To Present A Defense

In ground one, sub-part (A), petitioner argues that his trial attorneys performed deficiently and to his prejudice by promising, and then failing to deliver, a defense of petitioner during his trial. (Doc.# 14, at ¶¶ 95-218). Specifically, petitioner argues that his trial attorneys made no effort to investigate or present evidence on the defense theories that they had advanced during opening statements – namely, that petitioner believed that the victim had attacked another inmate named Doug Haggerty, that petitioner was aware that the victim had threatened to attack petitioner and others, that petitioner did not intend to cause the victim's death and was not the

26

leader of the Aryan Brotherhood that had planned the attack, and that the murder was not racially motivated but was incident to the culture of prison life.

Respondent argues in his motion to dismiss that petitioner's claim is procedurally defaulted because petitioner raised the claim in his postconviction action, but subsequently failed to prosecute an appeal to the state court of appeals following the trial court's decision denying his postconviction action.  (Doc.# 23, at 20-21).  Petitioner has countered with a number of responses, including the argument that he had preserved this constitutional claim by raising it in his motion for a new trial.  (Doc.# 34, at 38-44).

Respondent agrees and, in his reply, expressly abandons his procedural default argument against ground one, sub-part (A).  (Doc.# 35, at 32).  Accordingly, respondent's motion to dismiss ground one, sub-part (A) is **DENIED**.

B(1).  <u>Ground One, Sub-Part (B)(1) – Ineffective Assistance During Voir Dire (Pretrial Publicity)</u>

In ground one-sub-part, (B)(1), petitioner argues that his attorneys performed deficiently and to his prejudice by failing, during *voir dire*, to adequately explore with potential jurors the issue of whether they had been unduly influenced by pretrial publicity.  (Doc.# 14, at ¶¶ 219-234).  Respondent argues that petitioner's claim is procedurally defaulted under Ohio's doctrine of *res judicata* because petitioner raised the claim in his postconviction action instead of raising it on direct appeal and that the claim is subject to a second procedural default by virtue of petitioner's failure to prosecute an appeal to the state court of appeals following the trial court's decision denying petitioner's postconviction action.  (Doc.# 23, at 22-23).

Petitioner counters with several arguments in response.  First, petitioner argues that this

27

claim was raised on direct appeal in his third proposition of law and that the claim was addressed on the merits by the Supreme Court of Ohio.  (Doc.# 34, at 44-45).  Petitioner further argues that Ohio's *res judicata* rule cannot provide the basis for a procedural default because the state courts in this instance did not clearly and expressly explain their enforcement of the *res judicata* rule, because his claim relied on evidence *dehors* the record, and because Ohio's postconviction process in general does not provide a fair and adequate remedy.  (*Id*. at 45).  Finally, with respect to respondent's argument that petitioner's claim is subject to a second procedural default stemming from his failure to prosecute an appeal in postconviction, petitioner argues that the state waived that procedural default when the prosecution declined to oppose petitioner's motion requesting the state court of appeals to reconsider its decision dismissing petitioner's postconviction appeal with prejudice on the basis of petitioner's failure to file a merit brief. (*Id*.).

In a different section of his brief in opposition, petitioner raises numerous arguments generally against enforcement by this Court of the default stemming from his failure to prosecute an appeal during his postconviction proceedings.  Although it is far from clear whether petitioner intended, in the section of his brief specifically addressing ground one, sub-part (B)(1), to incorporate all of those arguments against enforcement of the default from his failure to prosecute an appeal in postconviction, this Court will, out of an abundance of caution, address them anyway.

a.  First Part of the *Maupin* test – Violation of State Procedural Rule

The first part of the *Maupin* test requires the Court to determine whether a state procedural rule is applicable to petitioner's claim, and, if so, whether petitioner violated that

rule. As noted above, claims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*. *See State v. Perry, supra*. Claims that do not appear on the face of the record are properly raised in a postconviction action pursuant to Ohio Rev. Code §2953.21.

Initially, the Court rejects petitioner's assertion that this claim was raised and addressed on direct appeal. Petitioner asserts that this claim was raised on direct appeal to the Supreme Court of Ohio in his third proposition of law. This Court scoured those pages of petitioner's appellate brief devoted to his third proposition of law – ineffective assistance of trial counsel – and found no mention whatsoever of trial counsel's failure to ask potential jurors about their exposure to pretrial publicity. (App.Vol. II, at 113-34). In short, petitioner's assertion that ground one, sub-part (B)(1) was raised on direct appeal is belied by the record.

Having determined that petitioner did not raise this claim on direct appeal, the Court turns its focus to whether petitioner violated Ohio's *res judicata* rule when he instead raised the claim in his postconviction action. In determining whether *res judicata* applies, the Court focuses its inquiry on whether the claim relies on non-record evidence that supports the claim in a manner that no record evidence could. Petitioner raised this claim of trial counsel ineffectiveness as his second claim for relief in his postconviction action. He supported the claim with photocopies of more than twenty articles about the murder from local newspapers in the months and days leading up to his trial. (App. Vol. IV, at 187, Exh. DD). These newspaper articles were not part of the trial record, and, technically speaking, there was no evidence beyond the trial court's general remarks during *voir dire* about the issue of pretrial publicity, (Tr. Vol. II, at 53-55), from which petitioner's appellate counsel could have argued on appeal that the failure

of trial counsel to probe prospective jurors on the extent to which they were exposed to pretrial publicity might have prejudiced petitioner.  Thus, petitioner's claim technically relied on and was supported by evidence outside the record.  Moreover, the trial court, in rejecting petitioner's claim, clearly addressed and rejected it on the merits.  (App. Vol. V, at 292).  Under these circumstances, the Court is inclined to conclude that petitioner was not required under Ohio's doctrine of *res judicata* to raise this claim on direct appeal and that petitioner did not violate the state rule by raising the claim in his postconviction action.  The is also inclined to conclude, under the second part of the *Maupin* test, that the state trial court did not clearly and expressly enforce the *res judicata* rule against petitioner's claim.

The Court need not resolve this issue, however, because petitioner subsequently defaulted this claim when he failed to prosecute an appeal to the state court of appeals following the trial court's decision denying his postconviction action.

As discussed in more detail *supra* in Section II.(C)(2) of this Opinion and Order, after being granted several extensions of time, as well as leave to file a brief in excess of twenty pages, petitioner's postconviction counsel, John J. Gideon, apparently failed to file his appellate brief, or a request for an extension of time, within the time permitted by the appellate court.  Accordingly, the appellate court issued an order on September 10, 2001, directing counsel for petitioner to show cause why the appeal should not be dismissed.  (App. Vol. VII, at 42).  On September 24, 2001, counsel for petitioner responded to the show cause order, explaining that he had never received the appellate court's entry dated June 25, 2001 granting him leave to file a brief in excess of twenty pages, because that entry, according to counsel, was sent to him at the Ohio Attorney General's Office, though counsel for petitioner did not work at the Ohio Attorney

General's Office. (App. Vol. VII, at 44). On October 9, 2001, the appellate court issued an entry in response to counsel for petitioner's "show cause" brief directing him to file his appellate brief before October 15, 2001. (App. Vol. VII, at 51). Counsel for petitioner apparently failed again to file his appellate brief.

On January 10, 2002, the appellate court dismissed petitioner's appeal with prejudice. (App. Vol. VII, at 53).

Turning to the first part of the *Maupin* test – whether petitioner violated a state procedural rule – the Court concludes that Ohio law could not be more clear that postconviction actions, even in death penalty cases and other felony cases, are civil in nature and must be appealed in accordance with the Ohio Rules of Appellate Procedure. *State v. Nichols*, 11 Ohio St. 3d 40, paragraphs one and two of the syllabus, 463 N.E.2d 375 (1984). Rule 18(c) of the Ohio Rules of Appellate Procedure provides that an appeal may be dismissed for the failure to timely file an appellate brief. When petitioner failed to file his appellate brief in accordance with the appellate court's scheduling order and as permitted by numerous extensions of time, he failed to prosecute an appeal in violation of the Ohio Rules of Appellate Procedure and *State v. Nichols*. Thus, the first part of the *Maupin* test has been met.

b. Second Part of *Maupin* Test – Actual Enforcement by State Courts

The second part of the *Maupin* test requires the Court to determine whether the state courts actually enforced the state procedural rule. In the instant case, the state court of appeals clearly and expressly dismissed petitioner's appeal in his postconviction proceedings on the ground that petitioner failed to file an appellate brief. (App. Vol. VII, at 53). Thus, the second part of the *Maupin* test has been met.

31

c. Third Part of *Maupin* Test – "Adequate and Independent" Requirement

The Court further finds that the third part of the *Maupin* test has been satisfied. The rule established by *State v. Nichols* as to appeals in postconviction proceedings, and the Ohio Rules of Appellate Procedure, are stated in unmistakable language, are consistently enforced, and, together, serve the state's interests in finality and judicial economy by ensuring that postconviction appeals are adjudicated in a timely and orderly fashion. Moreover, they do not rely on or otherwise implicate federal law. For these reasons, the Court concludes that state rules at issue are an adequate and independent state ground upon which to deny relief.

Petitioner urges the Court not to enforce the procedural default on the ground that Ohio's postconviction procedure is not an adequate and independent ground upon which to deny federal habeas corpus relief. (Doc.# 34, at 19-23). Specifically, petitioner argues that the Supreme Court of Ohio, beginning with the decision of *State v. Perry*, 67 Ohio St. 2d 175 (1967), has severely restricted the application of Ohio's postconviction statute, *i.e.*, Ohio Rev. Code §2953.21; that Ohio's postconviction process offers little or no opportunity for factual development; that the doctrine of *res judicata* is applied to prevent effective review of constitutional claims; and that the remedy has essentially become futile. For all of these reasons, petitioner argues, a procedural default committed in connection with Ohio's postconviction process is not an adequate and independent ground upon which to deny relief. Petitioner's argument has been considered and rejected by the Court of Appeals for the Sixth Circuit.

In *Coleman v. Mitchell*, 268 F.3d 417, (6th Cir. 2001), the Sixth Circuit examined its previous decisions in *Keenor v. Ridenour*, 594 F.2d 581 (6th Cir. 1979), *Riggins v. McMackin*, 935 F.2d 790 (6th Cir. 1991), and *Rust v. Zent*, 17 F.3d 155 (6th Cir. 1994), and concluded that

"application of *res judicata* under § 2953.21 is an adequate and independent state ground for

barring habeas review of constitutional claims." *Coleman*, 268 F.3d at 428-29.  In considering

the petitioner's argument "that *res judicata* was an inadequate procedural bar in this case

because he was denied a reasonable opportunity to present his claims in state court," *Coleman*,

268 F.3d at 428, the Sixth Circuit specifically considered the language from *Keenor* cited by

Petitioner Stojetz herein:

> This Court in *Keener* cited several cases in support of its position that
> "because of the narrow interpretation placed on [Section] 2953.21 by the Ohio
> Supreme Court, collateral relief is often unavailable or ineffective as a State
> remedy." *Keener*, 594 F.2d at 590.  However, these cases concerned forgiveness
> of the exhaustion requirement for habeas review, not the adequacy of *res judicata*
> under § 2953.21 as a state ground justifying foreclosure of a federal constitutional
> claim.

*Coleman*, 268 F.3d at 428.  Thus, to the extent that petitioner is arguing that no procedural

default committed in connection with Ohio's postconviction process should be enforced because

Ohio's postconviction process is an inadequate remedy, his argument appears to be foreclosed by

Sixth Circuit precedent.

In urging the Court not to enforce this procedural default, petitioner also argues that the

State of Ohio disavowed any reliance on the procedural default.  Specifically, petitioner explains

that when attorneys with the Ohio Public Defender's Office took over representation of

petitioner during his state postconviction proceedings and planned to ask the state court of

appeals to reconsider its decision dismissing petitioner's postconviction appeal with prejudice,

the county prosecutor, Stephen Pronai, advised them that he would not oppose their motion and

that he did not oppose the state appellate court addressing the merits of petitioner's appeal.

Petitioner argues that the prosecutor's failure to object is tantamount to a waiver by the

State of the procedural default. Citing *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004), and

*Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004), petitioner argues that once waived, a

procedural default cannot be reasserted. Those cases do not support petitioner's argument. *Baze*

and *Sowell* both involved situations in which the respondent in the habeas corpus action

neglected to raise a procedural default defense, thereby paving the way for the federal courts to

address the merits of claims that appeared to have been subject to dismissal on the basis of

procedural default. Those cases do not, in this Court's view, stand for the proposition that a

county prosecutor, by not opposing a motion for reconsideration of a state court's decision

enforcing a state procedural rule, effectively waives or forfeits the right of a warden-respondent

in a subsequent habeas corpus proceeding to raise the issue of procedural default. The Court is

not aware of any case law supporting such a proposition. The record before the Court indicates

that the warden-respondent clearly asserted a timely procedural default defense against ground

one, sub-part (B)(1). Petitioner's argument that the state waived the issue of procedural default

as to ground one, sub-part (B)(1), by virtue of the decision of the county prosecutor not to

oppose petitioner's motion for reconsideration during his state postconviction appeal, is not well

taken.

d. Fourth Part of *Maupin* Test – Cause and Prejudice to Excuse Default

Once the Court determines that a claim is subject to procedural default and that the

procedural default is an adequate and independent state ground upon which to deny relief, it is

incumbent upon petitioner to demonstrate "cause" sufficient to excuse the procedural default.

To that end, petitioner offers ineffective assistance of postconviction counsel.[1]  Specifically, petitioner argues that he had an Eighth Amendment and a due process right to the effective assistance of counsel in his state postconviction proceedings and that the failure of attorney John J. Gideon to file an appellate brief violated this right in contravention of *Evitts v. Lucey*, 469 U.S. 387 (1985).

The circumstances surrounding Gideon's failure to file an appellate brief during petitioner's state postconviction appeal are as follows.  (Doc.# 34, at 15-16).  Gideon was contracted by the Ohio Public Defender's Office to represent petitioner in connection with his state postconviction proceedings.  Following the trial court's decision denying relief, Gideon filed a notice of appeal and the other requisite paperwork to begin the appellate process.  Then, after Gideon obtained several extensions of time and after the appellate court issued a "show cause" order, Gideon failed to file an appellate brief in petitioner's case, resulting in the state court of appeals dismissing petitioner's appeal with prejudice.  Petitioner explains that at some point between the initiation of his appeal and the appellate court's dismissal of his appeal, Gideon suffered a mental breakdown that left him incapable of representing petitioner and other clients, incapable of communicating with petitioner and others, and incapable of seeking assistance to protect petitioner's rights.  Petitioner notes that Gideon was sanctioned for misconduct for this and other dereliction of duties.  *Disciplinary Counsel v. Gideon*, 104 Ohio

---

[1]     In one part of his Opposition, petitioner argues that ineffective assistance of his postconviction counsel constitutes an independent ground for overlooking the procedural default committed when counsel failed to file a timely appellate brief during petitioner's postconviction appeal.  *See* Petitioner's Opposition, Doc.# 34, at 41-42.  In another part of his Opposition, petitioner argues that ineffective assistance of his postconviction counsel constitutes cause and prejudice sufficient to excuse the procedural default.  *See* Petitioner's Opposition, Doc.# 34, at 23.  Because petitioner is not constitutionally entitled to effective assistance of postconviction counsel, it is immaterial whether the Court construes petitioner's arguments as a reason why the procedural default is not an adequate and independent ground under the third part of the *Maupin* test or as cause to excuse the procedural default under the fourth part of the *Maupin* test.

St. 3d 418, 819 N.E.2d 1103 (2004).

There is no constitutional right to counsel in a collateral attack upon a criminal conviction.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  It is therefore well settled that ineffective assistance of postconviction counsel cannot be asserted as cause to excuse a procedural default.  *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991).  In an effort to side-step this well-settled principle, petitioner asserts that he had a right to effective assistance of postconviction as a matter of due process and under the Eighth Amendment.  Petitioner asserts that reliance on *Pennsylvania v. Finley* ignores the due process issue in this case.  (Doc.# 34, at 23-28).

Petitioner asserts that the failure to file an appellate brief constitutes ineffective assistance of counsel under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), sufficient to establish cause and prejudice to excuse procedural default.  That is true, petitioner concedes, only where there exists a constitutional right to counsel in the first place.  Petitioner argues that the United States Supreme Court has consistently recognized that procedural mechanisms in place to review capital cases, such as state postconviction procedures, are essential components to Eighth Amendment protections for capital inmates.  *See, e.g., Gregg v. Georgia*, 428 U.S. 153 (1976).  Further, according to petitioner, once a State chooses to act, even where there is no obligation to act, due process protections vest to protect individuals' rights in those state-created actions.  (Doc.# 34, at 24, citing *Evitts v. Lucey*, 469 U.S. 387 (1985)).  Petitioner argues that this "vesting" of due process rights creates a right to counsel and, concomitantly, a right to the effective assistance of counsel, in postconviction proceedings. (Doc.# 34, at 24).

36

Petitioner goes on to argue that guaranteeing a statutory right to and providing postconviction counsel, as Ohio does for death row inmates, creates for the death row inmate a liberty interest in the right to effective assistance of counsel.  (*Id*. at 24-25).  Because the Ohio postconviction statute provides for counsel and a process of review in capital cases, Ohio Rev. Code § 2953.21(I)(1), petitioner argues, some measure of due process extends to that right to counsel and the postconviction process.  (*Id*. at 25, citing *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272 (1998)).

Thus, according to petitioner, "It is time for the Court to consider the direct issue of the due process right to the effective assistance of counsel in state post-conviction proceedings in capital cases."  (Doc.# 34, at 27).  Petitioner continues:

> The fact of the matter is that the State of Ohio guarantees every death row inmate competent representation in post-conviction proceedings, either through contract with the Office of the Ohio Public Defender or through appointment of counsel.  O.R.C. § 2953.21(I)(1).  Since the State guarantees every death row inmate an attorney, due process mandates that the attorney provide effective representation.  To provide otherwise would render the provision of counsel, at best, illusory, at worst, fatal.***."

(Doc.# 34, at 27).  Petitioner's arguments are not well taken.

In *Murray v. Giarratano*, 492 U.S. 1 (1989), a plurality of the United States Supreme Court held that neither the Eighth Amendment nor the Due Process Clause requires states to appoint counsel for indigent death row inmates.  Petitioner argues that the plurality decision in *Murray*, just like the *Pennsylvania v. Finley*, fails to address the due process issue in this case. Petitioner cites an excerpt from Justice Kennedy's concurring opinion in *Murray* as evidence that there are "circumstances where a system on its face or as applied may be unconstitutional, albeit not on the facts of *Murray*."  (Doc.# 34, at 26, citing *Murray v. Giarratano*, 492 U.S. at

14-15 (Kennedy, J., joined by O'Connor, J., concurring in judgment)).

Petitioner's argument urges the Court not to apply *Murray*; it does not, however, demonstrate or even suggest that *Murray* is distinguishable. Moreover, both *Pennsylvania v. Finley* and *Murray v. Giarratano*, appear to have addressed and rejected the due process argument raised by petitioner. In *Pennsylvania v. Finley,* the Supreme Court stated that "[s]tates have no obligation to provide [collateral] relief, [cite omitted], and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." *Pennsylvania v. Finley*, 481 U.S. at 557. Subsequently, in *Murray v. Giarratano*, the plurality expanded:

> [T]he rule of *Pennsylvania v. Finley* should apply no differently in capital cases. State collateral proceedings are not constitutionally required as an adjunct to the state criminal proceedings and serve a different and more limited purpose than either the trial or appeal. The additional safeguards imposed by the Eighth Amendment at the trial stage of a capital case are, we think, sufficient to assure the reliability of the process by which the death penalty is imposed. We therefore decline to read either the Eighth Amendment or the Due Process Clause to require yet another distinction between the rights of capital case defendants and those in noncapital cases.

*Id.*, 482 U.S. at 10. This Court is obligated to follow the letter and spirit of *Finley* and *Murray* holding that there simply is no Eighth Amendment or due process right to counsel during state collateral proceedings. From this, it follows that there is no right to the effective assistance of postconviction counsel. This is true even as to petitioner's argument that, once counsel is provided, counsel's conduct must meet the minimum guarantees of effectiveness.

This Court has carefully considered petitioner's arguments for why he is entitled, under the Eighth Amendment and as a matter of due process, to effective assistance of postconviction counsel. None of those arguments, nor the cases cited in support, are sufficient to overcome the

inescapable fact that there are two Supreme Court decisions stating unequivocally that there is no constitutional right to counsel during state collateral proceedings and that ineffective assistance of counsel cannot be asserted as "cause" to excuse a procedural default committed during a state collateral proceeding, *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991).

Petitioner argues that even though states are not required to provide collateral proceedings, once they elect to do so, they create a liberty interest in due process rights to protect individuals in connection with those collateral proceedings.  Moreover, petitioner argues that the Ohio legislature, by providing for the appointment of postconviction counsel for death row inmates, Ohio Rev. Code §2953.21(I), created a liberty interest in, or due process right to, the effective assistance of postconviction counsel.  The fact of the matter is that petitioner has not cited, and the Court is not aware of, any case holding that this proposition entitles death row inmates as a matter of constitutional law to counsel in postconviction proceedings, or to minimum guarantees of effectiveness once counsel is provided.  Petitioner all but concedes as much by inviting this Court to make that leap: "It is time for the Court to consider the direct issue of the due process right to the effective assistance of counsel in state post-conviction proceedings in capital cases."  (Doc.# 34, at 27).

Petitioner's reliance on *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, is misplaced.  Petitioner argues that under *Woodard*, "[d]ue process protections extend beyond the initial trial to the direct appeal of right, and even to a capital defendant in the pursuit of clemency."  (Doc.# 34, at 25, citing *Woodard*, 523 U.S. 272).  In *Woodard*, the Court split on the issue of whether clemency proceedings were subject to constitutional safeguards of the Due Process Clause.  *See, e.g., Workman v. Bell*, 245 F.3d 849, 852 (6th Cir. 2001).  Whatever else

39

*Woodard* stands for with respect to the issue of what, if any, measure of due process rights extends to state collateral proceedings, it simply does not support the proposition that state prisoners enjoy an Eighth Amendment or due process right to effective assistance of counsel during state postconviction proceedings, especially in light of the fact that there are two Supreme Court decisions stating that there is no such right. *See Pennsylvania v. Finley, supra*, and *Murray v. Giarratano, supra*.

The Court is not unsympathetic to petitioner's plight. Petitioner is faced with the forfeiture of numerous constitutional claims due to a clear dereliction of duties on the part of the attorney appointed to represent him during his postconviction appeal. However, petitioner's arguments urging this Court to find that he has a constitutional right to effective assistance of postconviction counsel find no support in controlling case law. Petitioner was entitled to counsel in postconviction as a matter of Ohio statutory law, not because of constitutional compulsion. As a result, his postconviction counsel was not bound by minimum guarantees of effectiveness. In the absence of authority holding that there is a constitutional right to counsel in state postconviction proceedings, whether under the Eighth Amendment or as a matter of due process, this Court, however sympathetic it might be, cannot excuse the procedural default that occurred when petitioner's counsel failed to file an appellate brief resulting in the with-prejudice dismissal of his state postconviction appeal. Accordingly, petitioner has failed to demonstrate cause and prejudice sufficient to excuse the default of ground one, sub-part (B)(1).

### e. Conclusion

The Court has concluded that ground one, sub-part (B)(1), *i.e.*, ineffective assistance of counsel during *voir dire* regarding the issue of pretrial publicity, is procedurally defaulted due to

petitioner's failure to file an appellate brief during his postconviction appeal. The Court has concluded that it cannot consider petitioner's claim of postconviction counsel ineffectiveness as cause to excuse the default, because there is no constitutional right to effective assistance of counsel in postconviction proceedings. Thus, applying the *Maupin* test, the Court concludes that ground one, sub-part (B)(1) is procedurally defaulted. Respondent's motion to dismiss ground one, sub-part (B)(1) as procedurally defaulted is **GRANTED**.

(B)(2). Ground One, Sub-Part (B)(2) Ineffective Assistance During Voir Dire (Death Penalty Qualifications)

In ground one, sub-part (B)(2), petitioner argues that his trial attorneys completely ignored petitioner's constitutional right to "life qualify" the potential jurors. (Petition, Doc.# 14, at ¶¶ 235-248). Instead, petitioner argues, defense counsel left it up to the trial court to occasionally ask potential jurors life-qualifying questions.

Respondent argues that petitioner's claim is barred by procedural default, but, as petitioner points out, respondent's argument is somewhat difficult to decipher. Petitioner clearly raises this particular allegation of trial counsel ineffectiveness as ground one, sub-part (B)(2), in paragraphs 235-248 of his petition. However, respondent asserts that this claim of trial counsel ineffectiveness – failure during *voir dire* to "life qualify" potential jurors – was raised in the petition as ground one, sub-part (E). (Doc.# 23, at 16-17). Even a cursory review of the petition reveals that ground one, sub-part (E), contrary to respondent's assertion, alleges trial counsel ineffectiveness for the failure to challenge improper jury instructions. (Petition, Doc.# 14, at ¶¶ 260-267). Thus, this Court will refer to petitioner's claim of trial counsel ineffectiveness for the failure during *voir dire* to "life qualify" prospective jurors as ground one, sub-part (B)(2).

41

In any event, respondent argues that this claim of trial counsel ineffectiveness is partially procedurally defaulted because petitioner challenged certain jurors and prospective jurors on direct appeal, but challenges various other jurors and prospective jurors in his habeas corpus petition herein. (Doc.# 23, at 16-17). Thus, respondent argues that, as to those jurors and prospective jurors whom petitioner challenged on direct appeal – *i.e.*, jurors Coffin, Smith, Morgan, Daniels Thornsberry, Hirst, Lawhorn, McCollum, Porter, Flynn, and Wilson – ground one, sub-part (B)(2) is preserved for habeas corpus review. However, as to those jurors and prospective jurors whom petitioner challenges for the first time in his habeas corpus petition herein – Carla Stover, Edward Banion, Andre Porter, Kathy Wolfe, Sherry Leonard, Michelle Kowalski, Celia Browning, and Aleda Reed – respondent argues that ground one, sub-part (B)(2) is procedurally defaulted because it was not fairly presented to the Ohio courts on direct appeal.

Respondent's arguments are not well taken. This particular allegation of trial counsel ineffectiveness – failure during *voir dire* to "life qualify" prospective jurors – as set forth in the petition, (Doc.# 14, ¶¶ 235-248), does not identify any jurors or prospective jurors by name. However, this particular allegation of trial counsel, as set forth in the petition, incorporates by reference petitioner's third ground for relief, wherein petitioner does, in arguing that his trial attorneys were ineffective for failing to ask "life qualifying" questions, identify jurors and prospective jurors by name. (Petition, Doc.# 14, at ¶¶ 352-365). In any event, ground one, sub-part (B)(2) alleges generally that trial counsel failed during *voir dire* to ask "life qualifying" questions of the prospective jurors. That allegation of trial counsel ineffectiveness was clearly and unequivocally presented to the Supreme Court of Ohio on direct appeal as Proposition of Law No. III, (1.). (App. Vol. II, at 113-115).

Respondent is correct that the claim presented to the Supreme Court of Ohio set forth the names of prospective jurors who were not asked "life qualifying" questions – jurors Coffin, Smith, Morgan, Daniels, Thornsberry, Hirst, Lawhorn, McCollum, Porter, Flynn, and Wilson – while the claim presented herein, by incorporating by reference allegations set forth in ground three, sets forth the names of additional prospective jurors who were not asked "life qualifying" questions.  Contrary to respondent's argument, this discrepancy is immaterial.   It is clear from a reading of the claim in its entirety, both as presented to the Supreme Court of Ohio on direct appeal and as set forth in the habeas corpus petition, that the inclusion or omission of the names of prospective jurors simply is not an essential component of the claim.  *See, e.g.*, *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986)(holding that additional facts or evidence may be considered by a federal habeas corpus court where that new information does not "fundamentally alter the legal claim already considered by the state courts."); *see also Sampson v. Love*, 782 F.2d 53, 55 (6th Cir. 1986)(holding that additional facts or evidence may be considered by a federal habeas court where that new information does not place the claim in a "significantly different posture" than the claim considered by the state courts).  Thus, under the reasoning set forth in *Vasquez v. Hillery*, the Court declines to find that petitioner's claim is procedurally defaulted as to any prospective jurors whom he did not identify by name in his brief to the Supreme Court of Ohio on direct appeal.  Respondent's argument that this claim of trial counsel ineffectiveness is partially defaulted due to petitioner's failure to fairly present it on direct appeal is not well taken.

It is well settled that, in order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of his constitutional claim to the state courts. *Anderson v. Harless*, 459 U.S. 4, 6, (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  A

43

petitioner "fairly presents" the "substance of his federal habeas corpus claim" when the state courts are afforded sufficient notice and a fair opportunity to apply controlling legal principles to the facts bearing upon the constitutional claim. *Harless*, 459 U.S. at 6. Even a cursory reading of petitioner's brief to the Supreme Court of Ohio on direct appeal reveals that he fairly presented this claim of trial counsel ineffectiveness. Further, the Supreme Court of Ohio considered and rejected the claim on the merits, albeit, in cursory fashion. (App. Vol. III, at 148). Respondent's motion to dismiss ground one, sub-part (B)(2) – misidentified by respondent as ground one, sub-part (E) – is **DENIED**.[2]

    C. Ground One, Sub-Part (C) – Ineffective Assistance During Opening Statements

    In ground one, sub-part (C), petitioner argues that his trial attorneys were ineffective for committing the "neophyte blunder" of promising a defense and explanation for the killing of Damico Watkins, and then failing entirely to deliver that defense. (Petition, Doc.# 14, at ¶¶ 249-256).

    Respondent argues that petitioner's claim is procedurally defaulted because it was never presented to any state court. (Doc.# 23, at 6). It is important to note, at this point, that respondent misidentified this allegation of trial counsel ineffectiveness as ground one, sub-part (F). (*Id.*). The claim, as set forth in the petition, clearly is set forth in ground one, sub-part (C), and the Court will address it as such.

    Petitioner responds with a number of arguments. (Doc.# 34, at 55-57). First, petitioner

---

[2]    At this point, it bears mentioning that respondent and petitioner set forth numerous arguments regarding the alleged default of this particular allegation of trial counsel ineffectiveness. To the extent that the Court failed to address or even acknowledge some of those arguments, the Court notes that the parties' arguments and record cites, at times, were so inexcusably confusing as to be virtually indecipherable. This Court is under no obligation to delve into the record without sufficient direction from the parties in search of support for the parties' arguments.

insists that this claim of trial counsel ineffectiveness was raised on direct appeal and addressed

by the Supreme Court of Ohio on the merits.  In this regard, petitioner argues that the fact that

this claim subsequently was raised in postconviction and denied on the basis of *res judicata* is

irrelevant, since the claim initially was preserved by virtue of having been raised on direct

appeal.  Petitioner goes on to argue that, even assuming the claim is subject to procedural

default, petitioner can demonstrate cause and prejudice to excuse the default, or that the default

should be excused under the "actual innocence" exception, or that the default should be excused

to avoid a miscarriage of justice.

Initially, the Court rejects petitioner's assertion that he raised this claim on direct appeal

to the Supreme Court of Ohio.  This Court has combed through petitioner's brief to the Supreme

Court of Ohio, (App. Vol. II, at 48), and nowhere did petitioner even arguably assert that his trial

attorneys were ineffective for promising a defense during their opening statements, and then

failing to deliver that defense.

### 1.  Procedural Default Under The *Maupin* Test

Having determined that petitioner did not raise this claim on direct appeal, the Court

turns its focus to respondent's procedural default argument against this claim – that this claim

was not presented to any state court.  Careful review of the record confirms respondent's

assertion.  Having reviewed not only petitioner's brief to the Supreme Court of Ohio on direct

appeal, but also petitioner's postconviction petition, Rule 26(B) "*Murnahan*" application for

delayed reopening, and petitioner's motion for a new trial, this Court finds that he never raised a

claim that trial counsel were ineffective for promising in opening statements a defense that

ultimately they failed to deliver.

The first part of the *Maupin* test requires the Court to determine whether a state procedural rule is applicable to petitioner's claim, and, if so, whether petitioner violated that rule. As noted above, claims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*. *See State v. Perry*, 10 Ohio St. 2d 175, 226 N.E.2d 104. Claims which do not appear on the face of the record are properly raised in a postconviction action pursuant to Ohio Rev. Code §2953.21. A claim challenging defense counsel's opening statement, by its very nature, appears on the face of the record. Thus, petitioner violated Ohio's *res judicata* doctrine when he failed to raise this claim on direct appeal.

The second part of the *Maupin* test requires the Court to determine whether the state courts actually enforced the procedural rule. Since petitioner failed to present this trial counsel ineffectiveness claim to any state court, the state courts were never given an opportunity to enforce the *res judicata* rule. Consequently, the Court deems the second part of the *Maupin* test to have been met.

The Court further finds that the procedural rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732-33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id*. at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348-351 (1984)). *See also Barr v. City of Columbia*, 378 U.S.

46

146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); *see also Jamison v. Collins*, 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The determination of whether a state procedural rule is an adequate ground for denying relief necessarily focuses on the procedural rule at issue, namely, the *Perry* rule. The Court of Appeals for the Sixth Circuit, as well as other courts within this district, have consistently held, and recently reaffirmed, that Ohio's doctrine of *res judicata*, *i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Coleman v. Mitchell*, 268 F.3d 417, 427-29 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). The doctrine of *res judicata* is stated in unmistakable terms in countless Ohio decisions, and Ohio courts have consistently refused, in reliance on that doctrine, to review the merits of claims. *See State v. Cole*, 2 Ohio St. 3d 112, 443 N.E.2d 169 (1982); *State v. Ishmail*, 67 Ohio St. 2d 16, 423 N.E.2d 1068 (1981). Further, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. That Ohio courts may on occasion elect to ignore or forgive non-compliance with its procedural rules has no bearing on the general question of whether the *Perry* rule is adequate. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. Accordingly, this Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

### 2. Cause And Prejudice

Once the Court determines that a constitutional claim is subject to procedural default, the Court may not address the merits of that claim absent a showing by petitioner that the default can be excused under either the cause-and-prejudice test or the narrow "actual innocence" exception.

47

Petitioner asserts that he can demonstrate both, as well as that enforcing this procedural default would result in a miscarriage of justice.

With respect to cause-and-prejudice, petitioner states "there is simply nothing John Stojetz could to do ensure proper litigation of his claims." (Doc.# 34, at 56). Petitioner incorporates by reference cause-and-prejudice arguments that he made in an earlier section of his brief, (*Id*. at 42-43). That section, however, set forth petitioner's argument that ineffective assistance of postconviction counsel constituted cause and prejudice sufficient to excuse the default that was committed when petitioner's postconviction counsel failed to file an appellate brief during petitioner's postconviction appeal. That cause-and-prejudice argument does not logically apply to the default in the instant case, *i.e.*, petitioner's failure to raise on direct appeal trial counsel's ineffectiveness during opening statements for promising a defense that they did not deliver. Further, this Court has already determined that because there is no constitutional right to effective assistance of postconviction counsel, petitioner cannot assert ineffective assistance of postconviction counsel as "cause" to excuse any procedural default. In sum, petitioner has failed to demonstrate cause and prejudice to excuse the default of ground one, sub-part (C).

### 3. Actual Innocence Exception

The Court has concluded that ground one, sub-part (C) – ineffective assistance of counsel during opening statements for promising a defense that was never delivered – is procedurally defaulted due to petitioner's failure to present that claim to any state court and, more specifically, petitioner's failure to raise that claim on direct appeal. The Court has further concluded that petitioner has failed to demonstrate cause and prejudice sufficient to excuse the

48

default. Thus, applying the *Maupin* test, the Court concludes that ground one, sub-part (C) is procedurally defaulted.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." *Murray v. Carrier, supra,* 477 U.S. at 496. The "actual innocence" exception to procedural default applies whether the petitioner is asserting that he is actually innocent of the underlying crime for which he was convicted, or is challenging the aggravating circumstances that made him eligible for the death penalty. As the Sixth Circuit explained in *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004):

> The "fundamental miscarriage of justice" gateway is open to a petitioner who submits new evidence showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)(quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id*. The gateway is also available to a petitioner who demonstrates that he is "actually innocent" of the sentence of death that has been imposed on him. To establish his "innocence" of the death penalty, a petitioner must "show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Sawyer v. Whitley*, 505 U.S. 333, 336, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

*Williams v. Bagley*, 380 F.3d at 973.

Thus, the "actual innocence" exception to procedural default applies whether the petitioner is asserting that he is actually innocent of the underlying crime for which he was convicted, or is challenging the aggravating circumstances that made him eligible for the death penalty. The standard of proof that he must satisfy depends upon the challenge he is making. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). Claims challenging the petitioner's

49

conviction for the underlying crime are governed by *Schlup*'s more lenient "more likely than

not" standard. *Calderon*, 523 U.S. at 559. Claims challenging the petitioner's eligibility for the

death penalty are governed by *Sawyer*'s more exacting "clear and convincing" standard – this is

true even where the petitioner's claim challenges an element of the underlying offense that has

the effect of enhancing the underlying offense to a capital offense, thereby making the petitioner

eligible for the death penalty. *Calderon*, 523 U.S. at 559-560. In *Calderon*, the Supreme Court

emphasized:

> The *Sawyer* standard has a broader application than is first apparent. As
> the Court explained in *Schlup*, when a capital petitioner challenges his underlying
> capital murder conviction on the basis of an element that "function[s] essentially
> as sentence enhancer," the *Sawyer* "clear and convincing" standard applies to the
> claim. *Schlup, supra*, at 326, 115 S.Ct., at 866-867. Thus, to the extent a capital
> petitioner claims he did not kill the victim, the *Schlup* "more likely than not"
> standard applies. To the extent a capital petitioner contests the special
> circumstances rendering him eligible for the death penalty, the *Sawyer* "clear and
> convincing" standard applies, irrespective of whether the special circumstances
> are elements of the offense of capital murder or, as here, mere sentencing
> enhancers.

*Calderon, supra*, 523 U.S. at 560.

It is unclear whether that distinction is important in the instant case because petitioner

appears to be arguing both that he is actually innocent of the murder of Damico Watkins, (Doc.#

34, at 31), and that he is actually innocent of the death penalty, (Petitioner's Opposition, Doc.#

34, at 30).[3] In the end, petitioner focuses his arguments on *Schlup*'s "more likely than not"

standard, arguing that he is actually innocent of the death penalty under the facts and law. (*Id*.).

Specifically, in an effort to demonstrate the facts necessary to qualify for the "actual

---

[3]       In arguing that he can satisfy the "actual innocence" exception to excuse the default of ground one,
sub-part (C), petitioner incorporates by reference arguments set forth on pages 43-44, and pages 30-37 of his
Opposition. (Doc.# 34, at 56).

50

innocence" exception, petitioner argues that evidence of his mental state, his underlying

motivation for the attack on Damico Watkins, actions and threats by Watkins that provoked the

attack against him, and the "culture" of prison life, demonstrate that petitioner is actually

innocent of the death penalty specifications of which he was convicted. Petitioner points out that

inmate Vandersommen testified during petitioner's state postconviction hearing that he

(Vandersommen) and inmate Bishop killed Watkins; that petitioner did not kill Watkins or even

intend for Watkins to be killed; and that Watkins was killed because he (Vandersommen)

"snapped" once the attack began. (Doc.# 34, at 31, citing Tr. Vol. IX, at 31-51, deposition of

William Vandersommen). Petitioner further argues that other witnesses corroborated

Vandersommen's account. (Doc.# 34, at 31, citing Tr. Vol. IX, at 15-20, deposition of David

Hicks).

To satisfy the legal predicate of the "actual innocence" exception, petitioner argues that,

under *Schlup*, he need only demonstrate that it is more likely than not that a reasonable juror, in

light of the new evidence described above, would not have found guilt beyond a reasonable

doubt. (Doc.# 34, at 31-32). Petitioner further argues that the question is not whether sufficient

evidence was presented at trial to sustain his conviction and death sentence. (*Id*.). Petitioner

asserts that evidence in support of his claim that he is actually innocent of the death penalty is

intricately tied to his habeas claims of ineffective assistance of counsel, prosecutorial

misconduct, and violations of his rights under the Eighth Amendment. (*Id*.).

Regardless of whether petitioner is arguing that he is actually innocent of the aggravated

murder of Damico Watkins, to which *Schlup*'s more lenient "more likely than not" standard

would apply, or whether petitioner is arguing that he is actually innocent of the death sentence

51

that he received for the aggravated murder of Damico Watkins, to which *Sawyer*'s more exacting

"clear and convincing" standard would apply, the Court is of the view that it would be ill-

advised to address petitioner's "actual innocence" claim at this time. In addition to offering an

actual innocence claim as a "gateway" claim to revive otherwise defaulted claims, petitioner has

raised a free-standing claim of actual innocence in his second ground for relief. Respondent has

expressly conceded that petitioner's free-standing claim of actual innocence – his second ground

for relief – is not procedurally defaulted. As such, it is deserving of a full review on the merits

and will be fully briefed by the parties at a later date. Although free-standing claims of actual

innocence involve a different, and surely more exacting, standard of proof than gateway claims

of actual innocence, *see Herrera v. Collins*, 506 U.S. 390, 417 (1993)(noting that the "threshold

showing" for a free-standing claim of actual innocence would be "extraordinarily high"); *Schlup*

*v. Delo, supra*, 513 U.S. at 313-315 (distinguishing between a free-standing, substantive claim of

actual innocence upon which the Court could grant habeas relief, and a gateway, procedural

claim of actual innocence by which a Court could examine the merits of an otherwise defaulted

claim), the facts supporting both claims – and both claims will involve a fact-intensive analysis –

will be the same. Thus, this Court is of the view that it would be more prudent to address

petitioner's "gateway" claim of actual innocence when it considers his "free-standing" claim of

actual innocence.

### 4. Miscarriage Of Justice

Beyond the four-part *Maupin* test and the narrow "actual innocence" exception, petitioner

appears to argue that this procedural default should be excused to avoid a miscarriage of justice.

Specifically, petitioner argues:

> The State of Ohio has no interest in relying on or imposing a procedural default in this case.  Imposing the default will reward the State for providing ineffective, incompetent, and even a mentally ill attorney to represent death row inmates.  Failing to provide federal review fails to serve the purposes of comity and federalism.  Given the magnitude of the errors and constitutional violations as well as the fact that death is different, the Court should refuse to impose the default and consider the merits of this Claim.

(Doc.# 34, at 56-57).  With all due respect, petitioner has not cited, and this Court is not aware of, any case holding that there is a "miscarriage of justice" exception above and beyond the "actual innocence" exception discussed in *Schlup v. Delo* and *Sawyer v. Whitley*.  That being the case, petitioner's argument that the Court should refuse to impose the procedural default in this instance is not well taken.

### 5.  Conclusion

In sum, the Court concludes that ground one, sub-part (C) – promising a defense in opening statements that was never delivered at trial – is procedurally defaulted and that petitioner has not demonstrated cause and prejudice to excuse the default.  The Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence.  For that reason, respondent's motion to dismiss ground one, sub-part (C) as procedurally defaulted is GRANTED, subject to reconsideration once the Court addresses the claim of actual innocence set forth in petitioner's second ground for relief.

D.  Ground One, Sub-Part (D) – Ineffective Assistance For Failing To Move For A Mistrial When The Jury Was Exposed To Suppressed Evidence

In ground one, sub-part (D), petitioner argues that his trial attorneys performed

unreasonably and to his prejudice in failing to move for a mistrial after the jury was exposed, through a newspaper article, to evidence that the trial court had suppressed. (Petition, Doc.# 14, at ¶¶ 257-259, 457-482).

Respondent argues that petitioner's claim is procedurally defaulted under Ohio's doctrine of *res judicata* because it was raised for the first time in his postconviction action instead of on direct appeal, and that petitioner's claim is subject to a second procedural default due to petitioner's failure to file an appellate brief to the state court of appeals during his postconviction appeal. (Doc.# 23, at 23). It is important to note, at this point, that respondent misidentified this allegation of trial counsel ineffectiveness as ground one, sub-part (G). (*Id.*). The claim, as set forth in the petition, clearly is set forth in ground one, sub-part (D), and the Court will address it as such.

Petitioner responds with a number of arguments. (Doc.# 34, at 57-59). First, petitioner argues that his claim is not defaulted because he included it in his Rule 26(B) "*Murnahan*" application to reopen his direct appeal and because the Supreme Court of Ohio rejected the claim on the merits. Second, petitioner argues that he raised the claim as his third cause of action in his postconviction petition and that the claim is not subject to the *res judicata* bar because the state courts did not clearly and expressly state which aspect of the *res judicata* they were enforcing against petitioner's claim, and because the imposition of the *res judicata* bar was improper in the first place, given the fact that the claim relied on and was supported by evidence outside the trial record. With respect to the alleged default committed when he failed to file an appellate brief to the state court of appeals during his postconviction appeal, petitioner argues that the state waived that procedural default when the prosecution declined to oppose petitioner's

54

motion for reconsideration of the dismissal of his postconviction appeal.  Petitioner further

argues that ineffective assistance of postconviction counsel constitutes cause and prejudice

sufficient to excuse the default committed when he failed to file the appellate brief.  Finally,

petitioner argues that any procedural default should be excused under the "actual innocence"

exception or overlooked to avoid a miscarriage of justice.  None of petitioner's arguments are

well taken.

Initially, this Court rejects for a number of reasons petitioner's assertion that ground one,

sub-part (D) is not procedurally defaulted because he raised it in his Rule 26(B) "*Murnahan*"

application for reopening.  First, under Ohio law, an application for reopening pursuant to App.

R. 26(B), or a "*Murnahan*" motion, is a procedural mechanism for raising claims of appellate

counsel ineffectiveness, not for bootstrapping underlying constitutional claims that were omitted

from the direct appeal in the first place.  Fair presentment requires a petitioner to present his

claims to the state courts in a procedure and manner that will provide the state courts with the

opportunity to apply controlling legal principles.  *Picard v. Connor*, 404 U.S. 270, 276-77

(1971).  To the extent petitioner is suggesting that raising a claim in a Rule 26(B) application is

equivalent to raising that claim on direct appeal, he is in error.  The notion that any constitutional

claim raised in an application for reopening is fairly presented to the state courts in the same

manner as if that claim had been raised in a timely direct appeal is untenable and unsupported by

case law.  The only claims that can be preserved in a Rule 26(B) application for reopening,

therefore, are claims of ineffective assistance of appellate counsel.

Second, even assuming this Court could accept petitioner's suggestion that an underlying

constitutional claim could be preserved for review by being included in a Rule 26(B) application

for reopening, the fact of the matter is that nowhere in his Rule 26(B) application for reopening did petitioner argue that his appellate attorneys were ineffective for failing to raise a claim challenging trial counsel's failure to move for a mistrial after the jury was exposed, through a newspaper article, to evidence that was suppressed.  That being so, petitioner did not even preserve a claim of appellate counsel ineffectiveness for the failure to raise the claim set forth in ground one, sub-part (D).

Having determined that petitioner did not raise this claim in his Rule 26(B) application for reopening, the Court turns its focus to respondent's arguments, first, that petitioner's claim is barred by *res judicata* because it was raised in postconviction, and second, that petitioner's claim is barred because petitioner failed to file an appellate brief to the state court of appeals during his postconviction appeal.  In determining whether *res judicata* applies, the Court focuses its inquiry on whether the claim relies on non-record evidence that supports the claim in a manner that no record evidence could.  Petitioner raised this claim of trial counsel ineffectiveness as his third claim for relief in his postconviction action.  He supported the claim with a photocopy of the April 7, 1997 newspaper article setting forth alleged statements by petitioner that had been suppressed, as well as affidavits by petitioner's brother-in-law, sister, and maternal aunt detailing their efforts to persuade defense counsel to question jurors about whether they had seen the article.  (App. Vol. IV, at 108-121, Postconviction Exhibits M, N, O, and P).  These materials were not part of the trial record, and, technically speaking, there was no substantial evidence on the trial record from which petitioner's appellate counsel could have argued on appeal that the failure of trial counsel to probe jurors about whether they had seen or heard about the April 7, 1997 newspaper article might have prejudiced petitioner.  Thus, petitioner's claim technically

relied on and was supported by evidence outside the record. Moreover, the trial court, in rejecting petitioner's claim, clearly addressed and rejected it on the merits. (App. Vol. V, at 292-93). Under these circumstances, the Court is inclined to conclude that petitioner was not required under Ohio's doctrine of *res judicata* to raise this claim on direct appeal, and that petitioner did not violate the state rule by raising the claim in his postconviction action. The Court is also inclinded to conclude, under the second part of the *Maupin* test, that the state trial court did not clearly and expressly enforce the *res judicata* rule against petitioner's claim.

The Court need not resolve this issue, however, because petitioner subsequently defaulted this claim when he failed to prosecute an appeal to the state court of appeals following the trial court's decision denying his postconviction action.

As discussed in more detail *supra* in Section II.(C)(2) of this Opinion and Order, after being granted several extensions of time, as well as leave to file a brief in excess of twenty pages, petitioner's postconviction counsel, John J. Gideon, apparently failed to file his appellate brief, or a request for an extension of time, within the time permitted by the appellate court. Ultimately, on January 10, 2002, the appellate court dismissed petitioner's appeal with prejudice. (App. Vol. VII, at 53).

Turning to the first part of the *Maupin* test – whether petitioner violated a state procedural rule – Ohio law could not be more clear that postconviction actions, even in death penalty cases and other felony cases, are civil in nature and must be appealed in accordance with the Ohio Rules of Appellate Procedure. *State v. Nichols*, 11 Ohio St. 3d 40, paragraphs one and two of the syllabus, 463 N.E.2d 375 (1984). As discussed more fully *supra* in Section IV(B)(1)(a), when petitioner failed to file his appellate brief in accordance with the appellate

57

court's scheduling order and as permitted by numerous extensions of time, he failed to prosecute an appeal in violation of the Ohio Rules of Appellate Procedure and *State v. Nichols*. Thus, the first part of the *Maupin* test has been met.

The second part of the *Maupin* test requires the Court to determine whether the state courts actually enforced the state procedural rule. In the instant case, the state court of appeals clearly and expressly dismissed petitioner's appeal in his postconviction proceedings on the ground that petitioner failed to file a brief. (App. Vol. VII, at 53). Thus, the second part of the *Maupin* test has been met.

The Court further finds that the third part of the *Maupin* test has been satisfied. As the Court discussed in more detail *supra* in Section IV(B)(1)(c), the rule established by *State v. Nichols* as to appeals in postconviction proceedings and the Ohio Rules of Appellate Procedure are stated in unmistakable language, are consistently enforced, and, together, serve the state's interests in finality and judicial economy by ensuring that postconviction appeals are adjudicated in a timely and orderly fashion. Moreover, they do not rely on or otherwise implicate federal law. Further, petitioner's argument that Ohio's postconviction process is an inadequate state remedy has been considered and rejected by the Court of Appeals for the Sixth Circuit. Finally, as discussed more fully *supra* in Section IV(B)(1)(c), the Court rejects petitioner's argument that the state disavowed or waived this procedural default. Thus, the third part of the *Maupin* test has been satisfied.

Once the Court determines that a claim is subject to procedural default and that the procedural default is an adequate and independent state ground upon which to deny relief, it is incumbent upon petitioner to demonstrate "cause" sufficient to excuse the procedural default.

58

To that end, petitioner offers ineffective assistance of postconviction counsel. Specifically, petitioner argues that he had an Eighth Amendment and a due process right to the effective assistance of counsel in his state postconviction proceedings and that the failure of attorney John J. Gideon to file an appellate brief violated this right in contravention of *Evitts v. Lucey*, 469 U.S. 387 (1985). The Court considered this argument in great detail in Section IV(B)(1)(d), *supra*, and concluded that there is no constitutional right to effective assistance of counsel during state collateral proceedings, *Pennsylvania v. Finley, supra*, and *Murray v. Giarratano, supra*, and that ineffective assistance of counsel cannot be asserted as "cause" to excuse a procedural default committed during a state collateral proceeding, *Coleman v. Thompson, supra*. In the absence of authority holding that there is a constitutional right to effective assistance of counsel in state postconviction proceedings, whether under the Eighth Amendment or as a matter of due process, this Court, however sympathetic it might be, cannot excuse the procedural default that occurred when petitioner's counsel failed to file an appellate brief resulting in the with-prejudice dismissal of his state postconviction appeal. Accordingly, petitioner has failed to demonstrate cause and prejudice sufficient to excuse the default of ground one, sub-part (D).

Petitioner also argues that any default of ground one, sub-part (D) should be excused under the "actual innocence" exception to procedural default. (Doc.# 34, at 59). For reasons discussed more fully in Section IV(C)(3), the Court will defer consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in his second ground for relief.

Petitioner also argues that this Court should ignore any default of ground one, sub-part (D) to avoid a miscarriage of justice. (Doc.# 34, at 59). As this Court concluded in Section

IV(C)(4), there is no "miscarriage of justice" exception to procedural default beyond the "actual innocence" exception noted above. That being so, petitioner's argument in this regard must be rejected.

For the foregoing reasons, the Court concludes that ground one, sub-part (D) is procedurally defaulted and that petitioner has failed to demonstrate cause and prejudice to excuse the default. The Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence. For that reason, respondent's motion to dismiss ground one, sub-part (D) as procedurally defaulted is **GRANTED**, subject to reconsideration once the Court addresses the claim of actual innocence set forth in petitioner's second ground for relief.

E. Ground One, Sub-Part (E) – Ineffective Assistance For Failing To Challenge Improper Jury Instructions.

In ground one, sub-part (E), petitioner argues that his trial attorneys were ineffective for failing to object to certain jury instructions. (Petition, Doc.# 14, at ¶¶ 260-267). Petitioner identified those jury instructions to which trial counsel failed to object both by listing them within this ground for relief and by incorporating by reference his fourth (¶¶ 387-429), fifth (¶¶ 430-456), and eighth grounds for relief (¶¶ 519-534). (Petition, Doc.# 14, at ¶ 260). Specifically, petitioner argues that his trial attorneys were ineffective for failing to object to the trial court's instructions: on reasonable doubt during the trial phase; that purpose could be presumed because a homicide had occurred; on both the principal offender and aider/abettor components of the aggravating circumstance, instead of one or the other; and telling jurors to

60

acquit petitioner of capital murder before considering the life options – an "acquittal first" instruction or an instruction improperly telling jurors to be unanimous in rejecting capital murder before considering the life sentence options. (Petition, Doc.# 14, at ¶¶ 260-267). Respondent raises no procedural default arguments against these components of ground one, sub-part (E).

Petitioner also asserts in his petition that he argued in ground four, sub-part (2)(C), that trial counsel should have objected to a reasonable doubt instruction during the mitigation phase that had the effect of creating a mandatory death penalty. (Doc.# 14, at ¶ 263). However, a review of ground four, sub-part (2)(C) reveals no such argument in the petition. (Doc.# 14, at ¶¶ 415-427). Although no such claim appears in the petition, respondent argues that this component of petitioner's claim, which respondent confusingly designated as ground one, sub-part (L), is procedurally defaulted because it was never presented to the state courts. (Doc.# 23, at 6). In arguing that this particular claim is defaulted, respondent generally references the reasonable doubt instruction without distinguishing between the instruction given during the trial phase and the instruction given during the mitigation phase. Regardless, any claim challenging trial counsel's ineffectiveness for failing to object to the mitigation-phase instruction on reasonable doubt appears to be procedurally defaulted.

Petitioner offers no arguments in response because, according to petitioner in his Opposition, respondent conceded that ground one, sub-part (E) was not procedurally defaulted. (Doc.# 34, at 59). Petitioner is not entirely correct. As noted above, respondent raised a procedural default defense against one component of ground one, sub-part (E) – that trial counsel were ineffective for failing to object to the trial court's reasonable doubt instruction. (Doc.# 23, at 6; Doc.# 35, at 8). According to respondent, that particular trial counsel ineffectiveness claim

61

was never presented to the state courts.  Respondent is correct.  This claim is procedurally defaulted because it was never presented to the state courts and now, no longer can be.

This Court reviewed petitioner's appellate brief to the Supreme Court of Ohio on direct appeal, petitioner's Rule 26(B) "*Murnahan*" application to reopen his direct appeal, and petitioner's postconviction action.  Nowhere did petitioner present an allegation that his trial attorneys were ineffective for failing to object to the trial court's mitigation-phase instruction on reasonable doubt as allegedly creating a mandatory death penalty.

Turning to the *Maupin* test, as noted above, claims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*. *See State v. Perry, supra*.  This applies to claims of ineffective assistance of trial counsel, so long as petitioner is represented by different counsel on direct appeal.  *State v. Cole, supra*.  A claim challenging trial counsel's failure to object to a mitigation-phase jury instruction is, in this Court's view, capable of being resolved without resort to evidence *dehors* the trial record.  That being so, petitioner violated Ohio's *res judicata* rule when he failed to raise on a direct appeal a claim challenging trial counsel's ineffectiveness for failing to object to the trial court's mitigation-phase jury instruction on reasonable doubt.

Because the state courts were never given the opportunity to enforce the procedural default, due to petitioner's failure to raise this claim anywhere, the Court deems the second part of the *Maupin* test to have been met.  Further, the Court has already determined that Ohio's *res judicata* rule is an adequate and independent state ground upon which to deny relief.  Due to his erroneous conclusion that respondent raised no procedural default arguments against ground one, sub-part (E), petitioner offered no arguments that the default identified above should be excused

62

under either the "cause and prejudice" or "actual innocence" exceptions. Accordingly, the Court concludes that ground one, sub-part (E) is procedurally defaulted *only* as to petitioner's claim that his trial attorneys were ineffective for failing to object to the trial court's mitigation-phase instruction on reasonable doubt. Respondent's motion to dismiss ground one, sub-part (E), which respondent designated as ground one, sub-part (L), is **GRANTED** only to the extent specified above.

F. Ground One, Sub-Part (F) – Ineffective Assistance For Failing To Object To Prosecutorial Misconduct.

In ground one, sub-part (F), petitioner argues that trial counsel were ineffective for failing to object to numerous instances of alleged prosecutorial misconduct. (Petition, Doc.# 14, at ¶¶ 268-280). Petitioner identified those instances of prosecutorial misconduct to which trial counsel failed to object both by listing them within this ground for relief and by incorporating by reference to his ninth and tenth grounds for relief. (Petition, Doc.# 14, at ¶268).

Respondent argues that just two of those trial counsel ineffectiveness claims are procedurally defaulted because they were never presented to the state courts. According to respondent, petitioner's claim that his trial attorneys were ineffective for failing to object to the prosecutor's mischaracterization of Barbara Sears' testimony is procedurally defaulted because it was never raised. Respondent designates this claim as ground one, sub-part (M). (Doc.# 23, at 6). It is actually paragraph 269 of ground one, sub-part (F) in the habeas corpus petition. (*See also* Petition, Doc.# 14, at ¶¶ 556-561). Also according to respondent, petitioner's claim that his trial attorneys were ineffective for failing to object to the prosecutor's arguments regarding the public policy supporting the sole aggravating circumstance and comments minimizing

petitioner's mitigation evidence is procedurally defaulted because it was never raised. Respondent designated this claim as ground one, sub-part (Q).  (Doc.# 23, at 6).  It is actually paragraph 271 of ground one, sub-part (F) in the habeas corpus petition.  (*See also* Petition, Doc.# 14, at ¶¶ 567-592).  The Court will refer to them as they were designated in the petition.

Petitioner offers a number of arguments in response.  (Doc.# 34, at 59-60).  First, petitioner argues that the claims of trial counsel's ineffectiveness for failing to object to the two instances of prosecutorial misconduct set forth above were presented to the state courts as Proposition of Law Number II in his Rule 26(B) "*Murnahan*" application to reopen his direct appeal.  Petitioner also notes that the prosecutorial misconduct claims themselves, as opposed to the claims of trial counsel ineffectiveness for the failing to object to those instances of prosecutorial misconduct, were presented to the Supreme Court of Ohio on direct appeal in Proposition of Law No. XI(1).  Petitioner goes on to argue that, assuming these claims are found to be procedurally defaulted, ineffective assistance of postconviction counsel constitutes cause and prejudice to excuse the default.  Finally, petitioner argues that any procedural default should be excused under the "actual innocence" exception and/or the "miscarriage of justice" exception. Petitioner's arguments fall short.

It is important, at this point, to stay focused on the precise claims that are at issue – namely, ineffective assistance of trial counsel for failing to object to the prosecutors' alleged misrepresentation of Barbara Sears' testimony and the prosecutors' alleged improper arguments regarding the public policy behind the sole aggravating circumstance and diminishing the mitigation evidence presented by petitioner.  Not at issue are the prosecutorial misconduct claims themselves.  For this reason, petitioner's remark that he presented the underlying prosecutorial

misconduct claims to the Supreme Court of Ohio on direct appeal, (Doc.# 34, at 60, n. 23), is immaterial.  The Court now turns its attention to petitioner's assertion that he presented the trial counsel ineffectiveness claims at issue to the state courts in his Rule 26(B) "*Murnahan*" application for reopening.

    In the second proposition of law in his Rule 26(B) application for reopening, petitioner argued that his appellate counsel were ineffective for failing to raise on direct appeal trial counsel's ineffectiveness in not objecting to the prosecutors' alleged misrepresentation of Barbara Sears' testimony or the prosecutors' alleged improper arguments regarding the public policy behind the sole aggravating circumstance and diminishing the mitigation evidence presented by petitioner.  (App. Vol. III, at 186).  However, as the Court discussed more fully *supra* in section IV.(D), under Ohio law, an application for reopening pursuant to App. R. 26(B), or a "*Murnahan*" motion, is a procedural mechanism for raising claims of appellate counsel ineffectiveness, not for bootstrapping underlying constitutional claims that were omitted from the direct appeal in the first place.  The only claims that can be preserved in a Rule 26(B) application for reopening, therefore, are claims of ineffective assistance of appellate counsel.  Thus, all that was preserved in petitioner's Rule 26(B) application were claims of appellate counsel ineffectiveness for the failure to raise the two distinct trial counsel ineffectiveness claims set forth in ground one, sub-part (F) that are alleged to be defaulted.

    Having found that petitioner did not preserve these trial counsel ineffectiveness claims on direct appeal or in his Rule 26(B) application for reopening, the Court turns its attention to the *Maupin* test.  As noted above, claims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*.  *See State v. Perry, supra*.

Claims which do not appear on the face of the record are properly raised in a postconviction action pursuant to Ohio Rev. Code §2953.21.  A claim challenging defense counsel's failure to object to on-the-record instances of prosecutorial misconduct, by its very nature, appears on the face of the record.  Thus, petitioner violated Ohio's *res judicata* doctrine when he failed to raise these trial counsel ineffectiveness claims on direct appeal.

The Court deems the second part of the *Maupin* test to have been met because petitioner failed to present these trial counsel ineffectiveness claims to the state courts in a manner that allowed the state courts to enforce the *res judicata* rule.  The only place that petitioner presented these claims of trial counsel ineffectiveness to the state courts was in his Rule 26(B) application for reopening.  As discussed above, a Rule 26(B) application for reopening is the procedure in Ohio for raising claims of appellate counsel ineffectiveness.  Thus, when the Supreme Court of Ohio considered petitioner's Rule 26(B) application for reopening, the only issues properly before it, and, therefore, the only issues it considered and rejected, were petitioner's claims of appellate counsel ineffectiveness.  The Supreme Court of Ohio was never given the opportunity, in considering petitioner's Rule 26(B) application for reopening, to hold that petitioner had violated Ohio's *res judicata* rule by failing to raise on direct appeal the two claims of trial counsel ineffectiveness at issue herein.  Thus, the Court deems the second part of the *Maupin* test – whether the state courts actually enforced the procedural rule, to have been met.

The Court has already determined that Ohio's *res judicata* rule is an adequate and independent state ground upon which to deny relief.  Thus, the third part of the *Maupin* test has been satisfied.

Once the Court determines that a claim is subject to procedural default and that the

procedural default is an adequate and independent state ground upon which to deny relief, it is incumbent upon petitioner to demonstrate "cause" sufficient to excuse the procedural default. To that end, petitioner appears to offer ineffective assistance of postconviction counsel as "cause" to excuse the default.  (Doc.# 34, at 60 (incorporating by reference arguments set forth at 42-43)).  To the extent that petitioner is offering ineffective assistance of postconviction counsel as cause, his argument is not well taken.  First, the Court already determined in section IV.(B)(1)(d), *supra*, that there is no constitutional right to effective assistance of postconviction counsel and, therefore, no way that petitioner can assert ineffective assistance of postconviction counsel as cause to excuse procedural default.  Further, and perhaps more to the point, an allegation of ineffective assistance of postconviction counsel cannot logically serve as cause to excuse a procedural default that occurred on direct appeal.

To the extent that petitioner is offering ineffective assistance of appellate counsel as cause, his argument is without merit.  Petitioner presented this claim of appellate counsel ineffectiveness to the Supreme Court of Ohio in his Rule 26(B) "*Murnahan*" application to reopen his direct appeal.  The Supreme Court of Ohio issued a one-line summary dismissal of the application on its merits.  Considering the two-part test for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), as well as the factors for considering a claim of ineffective assistance of appellate counsel set forth by the Sixth Circuit in *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999), the Court cannot find that the Supreme Court of Ohio's decision was contrary to clearly established Supreme Court precedent, or that this Court would have reached a different result in the Supreme Court of Ohio's place.  The trial counsel ineffectiveness claims at issue, *i.e.*, in failing to object to two distinct allegations of prosecutorial

misconduct, were not obviously and significantly stronger than the issues that were raised on

petitioner's direct appeal. Put simply, considering those claims against the claims that were

raised, and, when viewing the record as a whole, it tests the limits of credulity to suggest that,

had appellate counsel raised the trial counsel ineffectiveness claims at issue herein, there is a

reasonable probability that the outcome of petitioner's direct appeal would have been different.

This Court's conclusion is bolstered by the fact that the Supreme Court of Ohio, in reviewing the

alleged instances of prosecutorial misconduct on direct appeal for plain error, concluded after a

thorough review of the record that none of the instances of prosecutorial misconduct alleged by

petitioner, singularly or taken together, amounted to plain error. (App. Vol. III, at 153-54).

 Where alleged attorney error falls short of an independent constitutional violation, it

cannot suffice as cause to excuse a procedural default. *Murray v. Carrier*, 477 U.S. 478, 486-88

(1986)("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or

failed to raise the claim despite recognizing it, does not constitute cause for a procedural

default."). For these reasons, petitioner has failed to demonstrate that appellate counsel

ineffectiveness constitutes cause and prejudice to excuse the default of ground one, sub-part (F),

paragraphs 271 and 269.

 Beyond the cause-and-prejudice test, petitioner argues that the default of these two trial

counsel ineffectiveness claims should be excused under the "actual innocence" exception or to

avoid a "miscarriage of justice." For reasons discussed more fully in Section IV(C)(3), the Court

will defer consideration of petitioner's "gateway" actual innocence claim until it considers

petitioner's "free-standing" actual innocence claim set forth in his second ground for relief.

Further, as this Court concluded in Section IV(C)(4), there is no "miscarriage of justice"

exception to procedural default beyond the "actual innocence" exception noted above.  That

being so, petitioner's argument in this regard must be rejected.

For the foregoing reasons, the Court concludes that ground one, sub-part (F), paragraphs

269 and 271, is procedurally defaulted and that petitioner has failed to demonstrate cause and

prejudice to excuse the default.  The Court will defer consideration of petitioner's argument that

he can satisfy the "actual innocence" exception to procedural default until after the parties

submit their merit briefs and the Court considers petitioner's free-standing claim of actual

innocence.  For that reason, respondent's motion to dismiss ground one, sub-part (F), paragraphs

269 and 271, as procedurally defaulted is **GRANTED**, subject to reconsideration once the Court

addresses the claim of actual innocence set forth in petitioner's second ground for relief.

G. <u>Ground One, Sub-Part (G) – Ineffective Assistance For Failing To Object To Admission Of</u>
<u>Evidence</u>.

Petitioner argues in ground one, sub-part (G) that his trial attorneys were ineffective for

failing to object to the admission of certain evidence.  (Petition, Doc.# 14, at ¶¶ 281-283, 483-

518).  Of relevance to the instant discussion is petitioner's argument that his defense attorneys

failed to object to the admission of a videotape of the crime scene created by a corrections

officer, which videotape purported to recreate the path of escape attempted by the victim and

portrayed, graphically, the victim laying prone where he died.  (*Id*. at paragraphs 485-494).

Respondent argues that only this aspect of petitioner's trial counsel ineffectiveness claim

is subject to procedural default.  Specifically, respondent argues that this particular claim of trial

counsel ineffectiveness – failure to object to the admission and replaying of the crime scene

videotape – is procedurally defaulted because it was never presented to the state courts.  (Doc.#

69

23, at 6).  The Court hastens to clarify once again that respondent misidentified this claim in his

motion to dismiss as ground one, sub-part (V).  In the petition, this claim clearly is designated as

ground one, sub-part (G), and the Court will address it as such.

Petitioner raises a number of arguments in urging the Court to reject respondent's

procedural default defense.  (Doc.# 34, at 61-62).  First, petitioner argues that the claim of trial

counsel's ineffectiveness for failing to object to the admission of the videotape was presented to

the state courts as Proposition of Law Number III in his Rule 26(B) "*Murnahan*" application to

reopen his direct appeal.  Petitioner also notes that the claim challenging the trial court's

admission of the videotape, as opposed to the claim of trial counsel ineffectiveness for the failing

to object to the admission of the videotape, was presented to the Supreme Court of Ohio on

direct appeal in Proposition of Law No. XIV.  Petitioner goes on to argue that, assuming these

claims are found to be procedurally defaulted, ineffective assistance of postconviction counsel

constitutes cause and prejudice to excuse the default.  Finally, petitioner argues that any

procedural default should be excused under the "actual innocence" exception and/or the

"miscarriage of justice" exception.  Petitioner's arguments fall short.

It is important, at this point, to stay focused on the precise claim that is at issue – namely,

ineffective assistance of trial counsel for failing to object to the admission and replaying of the

crime scene videotape.  Not at issue is a claim challenging the trial court's admission of the

videotape.  For this reason, petitioner's remark that he presented the underlying claim

challenging the admission of the videotape to the Supreme Court of Ohio on direct appeal,

(Doc.# 34, at 61, n. 25), is immaterial.  The Court now turns its attention to petitioner's assertion

that he presented the trial counsel ineffectiveness claim at issue to the state courts in his Rule

26(B) "*Murnahan*" application for reopening.

In the third proposition of law in his Rule 26(B) application for reopening, petitioner argued that his appellate counsel were ineffective for failing to raise on direct appeal trial counsel's ineffectiveness in not objecting to the admission and replaying of the crime scene videotape. (App. Vol. III, at 186). However, as the Court discussed more fully *supra* in section IV.(D), under Ohio law, an application for reopening pursuant to App. R. 26(B), or a "*Murnahan*" motion, is a procedural mechanism for raising claims of appellate counsel ineffectiveness, not for bootstrapping underlying constitutional claims that were omitted from the direct appeal in the first place. The only claims that can be preserved in a Rule 26(B) application for reopening, therefore, are claims of ineffective assistance of appellate counsel. Thus, all that was preserved in petitioner's Rule 26(B) application was a claim of appellate counsel ineffectiveness for the failure to raise the trial counsel ineffectiveness claim set forth in ground one, sub-part (G), paragraphs 485-494.

Having found that petitioner did not preserve this trial counsel ineffectiveness claim on direct appeal or in his Rule 26(B) application for reopening, the Court turns its attention to the *Maupin* test. As noted above, claims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*. *See State v. Perry, supra*. Claims which do not appear on the face of the record are properly raised in a postconviction action pursuant to Ohio Rev. Code §2953.21. A claim challenging defense counsel's failure to object to the admission of evidence, by its very nature, appears on the face of the record. Thus, petitioner violated Ohio's *res judicata* doctrine when he failed to raise this trial counsel ineffectiveness claim on direct appeal.

The Court deems the second part of the *Maupin* test to have been met because petitioner failed to present these trial counsel ineffectiveness claims to the state courts in a manner that allowed the state courts to enforce the *res judicata* rule. The only place that petitioner presented this claim of trial counsel ineffectiveness to the state courts was in his Rule 26(B) application for reopening. As discussed above, a Rule 26(B) application for reopening is the procedure in Ohio for raising claims of appellate counsel ineffectiveness. Thus, when the Supreme Court of Ohio considered petitioner's Rule 26(B) application for reopening, the only issues properly before it, and, therefore, the only issues it considered and rejected, were petitioner's claims of appellate counsel ineffectiveness. The Supreme Court of Ohio was never given the opportunity, in considering petitioner's Rule 26(B) application for reopening, to hold that petitioner had violated Ohio's *res judicata* rule by failing to raise on direct appeal the claim of trial counsel ineffectiveness at issue herein. Thus, the Court deems the second part of the *Maupin* test – whether the state courts actually enforced the procedural rule, to have been met.

The Court has already determined that Ohio's *res judicata* rule is an adequate and independent state ground upon which to deny relief. Thus, the third part of the *Maupin* test has been satisfied.

Once the Court determines that a claim is subject to procedural default and that the procedural default is an adequate and independent state ground upon which to deny relief, it is incumbent upon petitioner to demonstrate "cause" sufficient to excuse the procedural default. To that end, petitioner appears to offer ineffective assistance of postconviction counsel as "cause" to excuse the default. (Doc.# 34, at 61 (incorporating by reference arguments set forth at 42-43)). To the extent that petitioner is offering ineffective assistance of postconviction

72

counsel as cause, his argument is not well taken. First, the Court already determined in section IV.(B)(1)(d), *supra*, that there is no constitutional right to effective assistance of postconviction counsel and, therefore, no way that petitioner can assert ineffective assistance of postconviction counsel as cause to excuse procedural default. Further, and perhaps more to the point, an allegation of ineffective assistance of postconviction counsel cannot logically serve as cause to excuse a procedural default that occurred on direct appeal.

To the extent that petitioner is offering ineffective assistance of appellate counsel as cause, his argument is without merit. Petitioner presented this claim of appellate counsel ineffectiveness to the Supreme Court of Ohio in his Rule 26(B) "*Murnahan*" application to reopen his direct appeal. The Supreme Court of Ohio issued a one-line summary dismissal of the application on its merits. Considering the two-part test for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), as well as the factors for considering a claim of ineffective assistance of appellate counsel set forth by the Sixth Circuit in *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999), the Court cannot find that the Supreme Court of Ohio's decision was contrary to clearly established Supreme Court precedent, or that this Court would have reached a different result in the Supreme Court of Ohio's place. The trial counsel ineffectiveness claim at issue, *i.e.*, failing to object to admission and replaying of the crime scene videotape, was not obviously and significantly stronger than the issues that were raised on petitioner's direct appeal. Put simply, considering that claim against the claims that were raised, and, when viewing the record as a whole, the Court simply is not persuaded that, had appellate counsel raised the trial counsel ineffectiveness claim at issue herein, there is a reasonable probability that the outcome of petitioner's direct appeal would have been different. This

Court's conclusion is bolstered by the fact that the Supreme Court of Ohio, in reviewing petitioner's claim challenging the trial court's admission of the videotape, concluded that there was no error.  (App. Vol. III, at 154-55).

Where alleged attorney error falls short of an independent constitutional violation, it cannot suffice as cause to excuse a procedural default.  *Murray v. Carrier*, 477 U.S. 478, 486-88 (1986)("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.").  For these reasons, petitioner has failed to demonstrate that appellate counsel ineffectiveness constitutes cause and prejudice to excuse the default of ground one, sub-part (G), paragraphs 485-494.

Beyond the cause-and-prejudice test, petitioner argues that the default of these two trial counsel ineffectiveness claims should be excused under the "actual innocence" exception or to avoid a "miscarriage of justice."  For reasons discussed more fully in Section IV(C)(3), the Court will defer consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in his second ground for relief.  Further, as this Court concluded in Section IV(C)(4), there is no "miscarriage of justice" exception to procedural default beyond the "actual innocence" exception noted above.  That being so, petitioner's argument in this regard must be rejected.

For the foregoing reasons, the Court concludes that ground one, sub-part (G), paragraphs 485-494, is procedurally defaulted and that petitioner has failed to demonstrate cause and prejudice to excuse the default.  The Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties

74

submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence. For that reason, respondent's motion to dismiss ground one, sub-part (G), paragraphs 485-494, as procedurally defaulted is **GRANTED**, subject to reconsideration once the Court addresses the claim of actual innocence set forth in petitioner's second ground for relief.

   H. <u>Ground One, Sub-Part (H) – Ineffective Assistance For Failing To Present Testimony of Petitioner Stojetz</u>.

   In ground one, sub-part (H), petitioner argues that his trial attorneys were ineffective for failing to put him on the stand to testify. (Petition, Doc.# 14, at 282-286; 836-862).

   Respondent, misidentifying this claim as ground one, sub-part (S), argues in his motion to dismiss that petitioner's claim is procedurally defaulted because it was never presented to the state courts. (Doc.# 23, at 6).

   Petitioner argues in response that he did present this claim to the state courts as the eighth claim for relief in his postconviction petition, and that the state trial court not only addressed the claim on the merits, but did so after conducting a full evidentiary hearing. (Doc.# 34, at 62). Petitioner's argument in this regard is well taken. A review of petitioner's fourth amendment to his postconviction action clearly reveals that he raised this precise claim in his postconviction action. (App. Vol. IV, at 310). Thus, respondent's argument that ground one, sub-part (H) is procedurally defaulted because it was never presented to the state courts clearly fails. But the inquiry does not end here.

   In his Opposition, petitioner argues that the fact that his postconviction counsel subsequently failed to prosecute an appeal to the state court of appeals following the trial court's decision denying his postconviction action does not constitute a procedural default in this

75

instance because respondent did not raise that argument against this claim in his motion to dismiss.  (Doc.# 34, at 62).  The only procedural default defense raised by respondent against this claim, as noted above, was that the claim had never been presented to the state courts.  And, as noted above, that argument is belied by the record.  Petitioner goes on to argue that, in the event the Court elects to enforce the procedural default that respondent failed to assert – petitioner's failure to file an appellate brief to the state court of appeals during postconviction – that procedural default should not be enforced because the state waived the defense during those state postconviction proceedings, because Ohio's postconviction process is an inadequate remedy, because ineffective assistance of postconviction counsel renders the procedural default inadequate, because petitioner can demonstrate cause and prejudice to excuse the default – ineffective assistance of postconviction counsel – because petitioner can demonstrate the "actual innocence" exception to procedural default, and/or because enforcement of the procedural default would be a miscarriage of justice.  (Doc.# 34, at 63-64).  All of petitioner's arguments fall short.

It is true that, as a general rule, procedural default is an affirmative defense that must be raised by the state at the first possible opportunity, or it will be waived. *Trest v. Cain*, 522 U.S. 87, 89 (1997)(holding that state's failure to raise procedural default normally constitutes waiver of the default); *Gray v. Netherland*, 518 U.S. 152, 166 (1996)(holding that procedural default is normally an affirmative defense that will be waived if not raised).  While federal courts are not required to raise procedural default *sua sponte*, *Trest v. Cain, supra*, 522 U.S. at 89, neither are they precluded from raising or recognizing a procedural default that was not expressly raised by the state.  That is especially true where, as here, petitioner has been given the opportunity to

respond to the procedural default. *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *r'hng and r'hng en banc denied* July 6, 2005, citing *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002); *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000).

The procedural default stemming from the failure of petitioner's postconviction counsel to file an appellate brief to the state court of appeals, even if not initially raised by respondent with respect to this particular claim of trial counsel ineffectiveness, has been exhaustively briefed by the parties and thoroughly considered by this Court. Thus, petitioner was on notice that any claim raised in his postconviction action would be subject to this particular procedural default and, when petitioner argued in his opposition that he had, in fact, raised the instant claim of trial counsel ineffectiveness in his postconviction petition, he surely was aware that the claim would be subject to the procedural default stemming from the failure of his postconviction counsel to prosecute his appeal. Respondent raised this procedural default argument in his reply to petitioner's opposition, and petitioner, obviously anticipating that respondent would do so, offered numerous arguments in response as to why this Court should not enforce the default. Thus, in the interests of common sense and because it will not unfairly prejudice petitioner, the Court will recognize the procedural default stemming from the failure of petitioner's postconviction counsel to file an appellate brief, even though respondent did not initially raise that procedural default argument in his motion to dismiss.

Turning to the first part of the *Maupin* test, the Court finds, for reasons discussed more fully *supra* in section IV(B)(1), that when petitioner failed during his postconviction appeal to file his appellate brief in accordance with the appellate court's scheduling order and as permitted by numerous extensions of time, he failed to prosecute an appeal in violation of the Ohio Rules

of Appellate Procedure and *State v. Nichols*. Further, the state court of appeals clearly and expressly dismissed petitioner's appeal in his postconviction proceedings on the ground that petitioner failed to file a brief. (App. Vol. VII, at 53). Thus, the second part of the *Maupin* test has been met.

The third part of the *Maupin* test requires the Court to determine whether the state procedural rule at issue is an adequate and independent ground upon which to deny habeas corpus review. The Court has determined that it is. Petitioner argues that the default at issue fails the adequate and independent requirement because the State waived reliance on the default when the prosecutor declined to oppose petitioner's motion asking the state court of appeals to reopen his postconviction appeal and because Ohio's postconviction remedy is inadequate. The Court, after careful consideration, has already rejected those arguments in Section IV(B)(1)(c).

To the extent that petitioner offers ineffective assistance of postconviction counsel as cause and prejudice to excuse the default, this Court determined in section IV(B)(1)(d) that there is no right to effective assistance of postconviction counsel and that, as a result, ineffective assistance of postconviction counsel cannot constitute cause and prejudice to excuse a procedural default.

Finally, petitioner argues that the procedural default should be excused under either the "actual innocence" exception or to avoid a "miscarriage of justice." For reasons discussed more fully in Section IV(C)(3), the Court will defer consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in his second ground for relief. Further, as this Court concluded in Section IV(C)(4), there is no "miscarriage of justice" exception to procedural default beyond the "actual innocence" exception

noted above.

For the foregoing reasons, the Court concludes that ground one, sub-part (H) is procedurally defaulted and that petitioner has failed to demonstrate cause and prejudice to excuse the default. The Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence. For that reason, respondent's motion to dismiss ground one, sub-part (H) as procedurally defaulted is **GRANTED**, subject to reconsideration once the Court addresses the claim of actual innocence set forth in petitioner's second ground for relief.

I.(1)  Ground One, Sub-Part (I)(1) – Ineffective Assistance For Failing To Properly Prepare, Investigate, And Present Mitigation Evidence.

In ground one, sub-part (I), petitioner argues that his trial attorneys were ineffective for failing to properly prepare, investigate, and present mitigation evidence. (Petition, Doc.# 14, at ¶¶ 287-311). Specifically, in ground one, sub-part (I)(1), petitioner argues that defense counsel failed to interview and present witnesses in support of their mitigation theory that the murder had stemmed not from racial animus, as asserted by the prosecution, but from petitioner's emotional reaction to the victim's earlier attack on inmate Doug Haggerty, the victim's stated intention to kill petitioner, the fact that petitioner had been ordered by his Aryan Brotherhood leader to fight the victim, the fact that petitioner was suffering from post-traumatic stress disorder, and the culture of prison life. (*Id.* at ¶¶ 288-301).

Respondent, inexplicably identifying this claim as ground one, sub-part (C), argues in his motion to dismiss that this claim is procedurally defaulted because, to the extent it was raised in

postconviction, petitioner failed to prosecute an appeal to the state appellate court.  (Doc.# 23, at 20-21).

Petitioner's argument in response, though equally difficult to follow due to respondent's misidentification of the claim, appears to be that the claim of trial counsel ineffectiveness for the failure to investigate and present mitigation evidence was raised on direct appeal as Proposition of Law No. III(4-8).  (Doc.# 34, at 64).

After carefully reviewing petitioner's arguments in his appellate brief on direct appeal to the Supreme Court of Ohio, and indulging petitioner every benefit of the doubt, this Court is constrained to conclude that he did not present on direct appeal the arguments he raises in ground one, sub-part (I)(1).  In his appellate brief to the Supreme Court of Ohio on direct appeal, petitioner argued that his trial counsel were ineffective for failing to investigate (though this discussion was confined to the inadequate cross examination of Walt Ashbridge), for presenting a confusing opening statement during the mitigation phase, for failing to develop and present evidence of petitioner's post-traumatic stress disorder, and for failing to prepare Dr. Eimer more thoroughly.  (App. Vol. II, at 121-128).  These allegations, construed singularly or as a whole, simply are not the same as, or similar enough to, the arguments set forth in ground one, sub-part (I)(1) – that defense counsel failed to interview and present witnesses in support of their mitigation theory that the murder had stemmed not from racial animus, as asserted by the prosecution, but from petitioner's emotional reaction to the victim's earlier attack on inmate Doug Haggerty, the victim's stated intention to kill petitioner, the fact that petitioner had been ordered by his Aryan Brotherhood leader to fight the victim, the fact that petitioner was suffering from post-traumatic stress disorder, and the culture of prison life.  (Petition, Doc.# 14, at ¶¶ 288-

80

301).  That being so, the Court is constrained to reject petitioner's assertion that the allegations

set forth in ground one, sub-part (I)(1) were presented to the Supreme Court of Ohio on direct

appeal.

Turning to the *Maupin* test, the Court finds that, to the extent that the failings of defense

counsel in investigating and presenting mitigation evidence as set forth in ground one, sub-part

(I)(1) appeared on the face of the trial record, petitioner violated Ohio's *res judicata* rule by

failing to raise those trial counsel ineffectiveness claims on direct appeal.  The Court deems the

second part of the *Maupin* test to have been met because the state courts were never given an

opportunity to enforce the default, due to petitioner's failure to present those claims to any state

court.  The Court has already determined that Ohio's *res judicata* rule is adequate and

independent, thereby satisfying the third part of the *Maupin* test.

To the extent that petitioner argues that this default should be excused either the cause

and prejudice test, the "actual innocence" exception, or to avoid a "miscarriage of justice," his

arguments are not well taken.  Petitioner cannot offer ineffective assistance of appellate counsel

as cause for the default of these trial counsel ineffectiveness claims because he never presented

that allegation of appellate counsel ineffectiveness to the state courts.  *See Edwards v.*

*Carpenter*, 529 U.S. 446, 452-53 (2000)(holding that an ineffective assistance of counsel claim

offered as cause for the default of a substantive federal claim must first be properly presented to

the state courts).  Further, for reasons discussed more fully in Section IV(C)(3), the Court will

defer consideration of petitioner's "gateway" actual innocence claim until it considers

petitioner's "free-standing" actual innocence claim set forth in his second ground for relief.

Finally, as this Court concluded in Section IV(C)(4), there is no "miscarriage of justice"

exception to procedural default beyond the "actual innocence" exception noted above.

To the extent that petitioner argues that the trial counsel ineffectiveness claims set forth in ground one, sub-part (I)(1) were raised in his postconviction action, litigated during his state postconviction evidentiary hearing, and/or were considered by the state trial court in its decision dismissing his postconviction action, for reasons discussed *infra* in section IV(I)(2), petitioner's claims is nonetheless procedurally defaulted due to the failure of petitioner's postconviction counsel to prosecute an appeal from the trial court's decision denying his postconviction action.

For the foregoing reasons, the Court concludes that ground one, sub-part (I)(1) is procedurally defaulted and that petitioner has failed to demonstrate cause and prejudice to excuse the default. The Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence. For that reason, respondent's motion to dismiss ground one, sub-part (I)(1) as procedurally defaulted is **GRANTED**, subject to reconsideration once the Court addresses the claim of actual innocence set forth in petitioner's second ground for relief.

I(2). <u>Ground One, Sub-Part (I)(2) – Ineffective Assistance For Failing To Obtain Mitigation Expert</u>.

In ground one, sub-part (I), petitioner argues that his trial attorneys were ineffective for failing to properly prepare, investigate, and present mitigation evidence. (Petition, Doc.# 14, at ¶¶ 287-311). Specifically, in ground one, sub-part (I)(2), petitioner argues that defense counsel failed to hire a mitigation expert/investigator, which failure resulted in counsel's failure to collect all relevant records, interview potential witnesses, and identify the need for further

neurological testing. (*Id*. at ¶¶ 302-310).

Respondent, again deviating inexplicably from the number that petitioner assigned to this claim, identifies it as ground one, sub-part (D) and argues that it is procedurally defaulted because it was never presented to the state courts. (Doc.# 23, at 6).

Petitioner's argument in response, though somewhat difficult to follow due to respondent's misidentification of the claim, appears to be that the failure of his trial counsel to obtain mitigation experts was addressed by the state trial court during the postconviction evidentiary hearing, and that respondent waived, by not explicitly raising, any procedural default that stemmed from the subsequent failure of petitioner's postconviction counsel to prosecute an appeal from the trial court's decision denying petitioner's postconviction action. (Doc.# 34, at 64). Petitioner goes on to argue that, in the event the Court elects to enforce the procedural default that respondent failed to assert, that procedural default should not be enforced because the state waived the defense during those state postconviction proceedings, because Ohio's postconviction process is an inadequate remedy, because ineffective assistance of postconviction counsel renders the procedural default inadequate, because petitioner can demonstrate cause and prejudice to excuse the default in the form of ineffective assistance of postconviction counsel, because petitioner can demonstrate the "actual innocence" exception to procedural default, and/or because enforcement of the procedural default would be a miscarriage of justice. (Doc.# 34, at 64-66).

To the extent that this trial counsel ineffectiveness claim was considered by the state trial court during petitioner's postconviction evidentiary hearing, (even though it was not succinctly pleaded as a claim for relief in petitioner's postconviction petition or any one of the five

amendments to petitioner's postconviction petition), this claim is nonetheless procedurally defaulted due to the failure of petitioner's postconviction counsel to file an appellate brief to the state court of appeals following the trial court's decision denying petitioner's postconviction action.

Initially, the Court rejects petitioner's argument that respondent waived this procedural default argument by failing to explicitly raise it against ground one, sub-part (I)(2) in the motion to dismiss. For reasons discussed more fully *supra* in section IV(H), federal courts are not precluded from *sua sponte* recognizing a procedural default defense that was not explicitly raised by the state, especially where, as here, petitioner has had the opportunity to respond to the procedural default defense. Thus, in the interests of common sense and because it will not unfairly prejudice petitioner, the Court will recognize the procedural default stemming from the failure of petitioner's postconviction counsel to file an appellate brief, even though respondent did not explicitly raise that procedural default argument against ground one, sub-part (I)(2) in his motion to dismiss.

Turning to the first part of the *Maupin* test, the Court finds, for reasons discussed more fully *supra* in section IV(B)(1), that when petitioner failed during his postconviction appeal to file his appellate brief in accordance with the appellate court's scheduling order and as permitted by numerous extensions of time, he failed to prosecute an appeal in violation of the Ohio Rules of Appellate Procedure and *State v. Nichols*. Further, the state court of appeals clearly and expressly dismissed petitioner's appeal in his postconviction proceedings on the ground that petitioner failed to file a brief. (App. Vol. VII, at 53). Thus, the second part of the *Maupin* test has been met.

84

The third part of the *Maupin* test requires the Court to determine whether the state procedural rule at issue is an adequate and independent ground upon which to deny habeas corpus review. The Court has determined that it is. Petitioner argues that the default at issue fails the adequate and independent requirement because the State waived reliance on the default when the prosecutor declined to oppose petitioner's motion asking the state court of appeals to reopen his postconviction appeal and because Ohio's postconviction remedy is inadequate. The Court, after careful consideration, has already rejected those arguments in Section IV(B)(1)(c).

To the extent that petitioner offers ineffective assistance of postconviction counsel as cause and prejudice to excuse the default, this Court determined in section IV(B)(1)(d) that there is no right to effective assistance of postconviction counsel and that, as a result, ineffective assistance of postconviction counsel cannot constitute cause and prejudice to excuse a procedural default.

Finally, petitioner argues that the procedural default should be excused under either the "actual innocence" exception or to avoid a "miscarriage of justice." For reasons discussed more fully in Section IV(C)(3), the Court will defer consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in his second ground for relief. Further, as this Court concluded in Section IV(C)(4), there is no "miscarriage of justice" exception to procedural default beyond the "actual innocence" exception noted above.

For the foregoing reasons, the Court concludes that ground one, sub-part (I)(2) is procedurally defaulted and that petitioner has failed to demonstrate cause and prejudice to excuse the default. The Court will defer consideration of petitioner's argument that he can

satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence.  For that reason, respondent's motion to dismiss ground one, sub-part (I)(2) as procedurally defaulted is **GRANTED**, subject to reconsideration once the Court addresses the claim of actual innocence set forth in petitioner's second ground for relief.[4]

   J.  Ground One, Sub-Part (J) – Ineffective Assistance In Not Objecting To Victim Impact Evidence.

In ground one, sub-part (J), petitioner argues that his trial attorneys were ineffective for failing to object to victim impact evidence.  (Petition, Doc.# 14, at ¶¶ 312-314, 815-835). Respondent, mislabeling this claim as ground one, sub-part (P), appears to concede that his claim is properly before the Court for a full review on the merits.  (Doc.# 23, at 5).

   K.  Ground One, Sub-Part (K) – Cumulative Impact Of Ineffective Assistance of Counsel.

In ground one, sub-part (K), petitioner argues that the cumulative impact of the errors committed by his trial attorneys warrants habeas corpus relief.  (Petition, Doc.# 14, at ¶¶ 315-319).  It does not appear that respondent has raised a procedural default defense against this claim in his motion to dismiss.  When petitioner points that out in his Opposition, (Doc.# 34, at 66), respondent fails again in his reply to even mention ground one, sub-part (K).  That being so, this Court is inclined not to recognize any procedural default arguments against this claim.

In accordance with Sixth Circuit practice and because respondent raises no procedural default argument against ground one, sub-part (K), the Court is inclined to address in a

---

[4]        Regarding the alleged default of ground one, sub-part (I), to the extent that the Court failed to address some of the arguments presented by petitioner and respondent, or perhaps attributed to either party arguments that they did not make, the Court notes that the parties' arguments regarding ground one, sub-part (I), at times, were so inexcusably confusing as to be virtually indecipherable.

subsequent order the cumulative impact of any constitutional errors. *See, e.g., Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *but see Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief.").  In so doing, however, the Court will consider only claims where constitutional error has been demonstrated and that have not been procedurally defaulted. *Derden v. McNeal*, 978 F.2d 1453, 1458 (5th Cir. 1992)(*en banc*); *Cooey v. Anderson*, 988 F.Supp. 1066, 1096 (N.D. Ohio 1997).  The Court concludes that ground one, sub-part (K) is properly before the Court for a review on the merits.

### L.  Ground Two – Actual Innocence

In his second ground for relief, petitioner argues that he is actually innocent of aggravated murder and/or innocent of the death penalty.  (Petition, Doc.# 14, at ¶¶ 320-330). Respondent argues in his motion to dismiss that petitioner's claim is procedurally defaulted because petitioner failed to prosecute his appeal following the state trial court's decision denying his postconviction action.  (Doc.# 23, at 20-21).  Subsequently, in his reply, respondent acknowledges that this claim is not procedurally defaulted and expressly withdraws the procedural default defense he had raised in his motion to dismiss.  (Doc.# 35, at 1). Accordingly, respondent's motion to dismiss petitioner's second ground is **DENIED**.

### M.  Ground Three – Inadequate Voir Dire

In his third ground for relief, petitioner argues that the *voir dire* conducted in his trial was inadequate to ensure a fair jury.  (Petition, Doc.# 14, at ¶¶ 331-386).  Petitioner's arguments, to the extent they can be summarized, allege that:

> Failure of Petitioner's trial counsel to renew their request for additional peremptory challenges denied Petitioner his constitutional right to effective

assistance of counsel and a fair and impartial jury as guaranteed by the Sixth Amendment and to due process of law as guaranteed by the Fifth Amendment. (Petition, Doc.# 14, at ¶383).

As a result of erroneous instructions and rulings of the trial court and errors and omissions of Petitioner's trial counsel, Petitioner was denied a jury which was capable of correctly considering, or considering at all, evidence in mitigation of death.  (Petition, Doc.# 14, at ¶384).

Presence of singularly death qualified jurors to the exclusion of life qualified jurors deprived the Petitioner of his constitutional right to have a jury which would give due consideration to mitigation evidence.  (citations omitted). The presence of even one juror on Petitioner's jury panel who was death prone invalidates the Petitioner's sentence of death.  (Petition, Doc.# 14, at ¶385).

In presenting his arguments, petitioner generally organized the alleged errors into the following categories: introduction, pretrial matters, voir dire and death qualification, general voir dire by defense counsel, exercise of peremptories, and conclusion.  Respondent, in alleging that petitioner's third ground for relief should be dismissed as procedurally defaulted, disregarded petitioner's organization of his own claim and instead chose to divide petitioner's allegations into the following sub-parts:

(A) juror bias due to the failure to properly death qualify
(B) juror bias due to improper description of unanimity
(C)  juror bias due to their opinions regarding the death penalty
(D) juror bias due to failure to adequately assure that jurors would follow the law
(E) juror bias due to improper life qualification
(F) juror bias due to "incomprehensible questions" by the court
(G) juror bias due to misstatements of law by petitioner's trial counsel
(H) juror bias due to "confusing statements" by petitioner's trial counsel
(I) juror bias due to trial court's refusal to grant additional peremptory challenges

(Doc.# 23, at 6, 7-8, 10; see also "Stojetz Table of Claims," Doc.# 36-2, at 25-33).  As petitioner noted in his Opposition, "Petitioner did not delineate these portions of Claim for Relief No. III in any subparts and Petitioner is at a loss to understand how Respondent has subdivided or reorganized his Petition."  (Doc.# 34, at 74 n. 29).  This Court is equally at a loss.

88

When petitioner filed a motion to strike respondent's motion to dismiss on the ground that it "created a jumble of additional subsections which bear no relation to the claims as presented by Mr. Stojetz," (Motion to Strike, Doc.# 30, at 2), respondent insisted in his opposition to the motion to strike that his presentation of petitioner's claims was "easily explained by the Table of Claims." (Opposition, Doc.# 31, at 2). Respondent insisted that each claim and sub-claim, as designated by respondent, was linked in the Table of Claims with the paragraph in the petition where that claim or sub-claim appeared. (*Id*.). This Court has reviewed respondent's Table of Claims and compared it with the allegations set forth in the petition, and, with all due respect to respondent, his reorganization of petitioner's claims is not as "easily explained by the Table of Claims," as he insists.

For example, in his Motion to Dismiss, respondent moves to dismiss ground three, sub-part (A) as procedurally defaulted because of the lack of a contemporaneous objection at trial. (Doc.# 23, at 9-10). In his Motion to Dismiss, respondent calls ground three, sub-part (A), "Juror Bias Due to Failure to Properly Life Qualify Jurors." (Doc.# 23, at 10). In his Table of Claims, respondent calls ground three, sub-part (A), "Juror Bias Due To Failure to Properly Death Qualify." (Table of Claims, Doc.# 36-2, at 25). In his Table of Claims, respondent indicates that the claim which he designated as ground three, sub-part (A), was set forth in paragraph 360 of the petition. (Table of Claims, Doc.# 36-2, at 25). Respondent's Table of Claims, far from easily explaining respondent's reorganization of petitioner's claims, only further muddies the water.

First, in his Motion to Dismiss, respondent calls ground three, sub-part (A), "Juror Bias Due to Failure to Properly *Life* Qualify Jurors," whereas, in his Table of Claims, respondent calls

89

ground three, sub-part (A), "Juror Bias Due to Failure to Properly *Death* Qualify."  This contradiction is important because, later in his Motion to Dismiss, respondent calls ground three, sub-part (E), "Juror Bias Due to Improper Life Qualification."  (Doc.# 23, at 8).  Thus, it is unclear whether the allegations that respondent has designated as ground three, sub-part (A) are the same as, related to, or different than the allegations that respondent has designated as ground three, sub-part (E).

Second, in his Table of Claims, respondent indicates that the claim which he designates as ground three, sub-part (A) was set forth in paragraph 360 of the habeas corpus petition.  (Table of Claims, Doc.# 36-2, at 25).  However, paragraph 360 of the petition lists a whole host of alleged problems with the jurors who were seated on petitioner's jury, only one of which involved the failure to "life qualify" jurors and/or the improper "death qualification" of jurors.  (Petition, Doc.# 14, at pp. 13-15).  Further, as best the Court can tell, petitioner's arguments regarding the failure to "life qualify" the jurors and/or the improper "death qualification" of jurors, are scattered throughout petitioner's third ground for relief in paragraphs 334-336 and 352-362 of the petition, (Doc.# 14).  Thus, as the Court stated above, respondent's reorganization of petitioner's claims is not as "easily explained by the Table of Claims," as he insisted when he opposed petitioner's motion to strike the motion to dismiss.

When the Court denied petitioner's motion to strike respondent's motion to dismiss, and in the alternative granted him an extension of time to respond to that motion to dismiss, (*Order* of 04/20/05, Doc.# 32), the Court was not of the view then, and is still not of the view now, that it was necessary to strike respondent's motion to dismiss in its entirety.  That said, the confusion created by respondent's reorganization of petitioner's third ground for relief cannot be

90

understated.  The Court appreciates respondent's dilemma – namely, that petitioner's third ground for relief sets forth a multi-faceted claim that was not presented to the state courts in the exact same manner as it is presented herein.  Rather, it is comprised of various facts and legal theories that may or may not have been presented to the state courts.  That is, parts of petitioner's third ground for relief may involve a mere re-packaging or "tweaking" of claims that were previously presented to the state courts, which is permissible.[5]  Other parts of petitioner's third ground for relief, however, may involve the presentation of facts and legal theories that were not previously presented to the state courts, which is not permissible.  However confusing petitioner's third ground for relief may be, though, respondent only compounded the problem by reorganizing ground three into sub-parts that do not appear in the petition.

This Court could go through petitioner's third ground for relief, paragraph by paragraph, and sift through the state court record to determine whether each paragraph was fairly presented to the state courts in accordance with state procedural rules.  But that is not the Court's responsibility.  That is respondent's responsibility if respondent wants this Court to dismiss petitioner's third ground for relief as procedurally defaulted.

It bears reminding that procedural default is an affirmative defense that must be raised and established by the state.  *See Trest v. Cain, supra*, 522 U.S. at 89; *Gray v. Netherland, supra*, 518 U.S. at 166.  This Court has endeavored to address respondent's motion to dismiss petitioner's third ground for relief, and all of the arguments raised by the parties in connection

---

[5]     *See, e.g., Vasquez v. Hillery*, 474 U.S. 254, 260 (1986)(holding that additional facts or evidence may be considered by a federal habeas corpus court where that new information does not "fundamentally alter the legal claim already considered by the state courts."); *see also Sampson v. Love*, 782 F.2d 53, 55 (6th Cir. 1986)(holding that additional facts or evidence may be considered by a federal habeas court where that new information does not place the claim in a "significantly different posture" than the claim considered by the state courts).

therewith.  However, it is often hopelessly unclear what procedural default argument respondent is alleging or what part of petitioner's third ground for relief respondent is attacking.  Further, many arguments advanced by respondent find this Court combing through the record in search of support for those arguments, which, as noted above, is not this Court's responsibility.  The Court is constrained to conclude that respondent has failed to sustain his burden of proving the affirmative defense that petitioner's third ground for relief is procedurally defaulted.  However, the Court will give respondent one, and only one, more chance to do so.  The Court is giving respondent this additional opportunity because of the complex nature of petitioner's third ground for relief and because respondent attempted to advance the affirmative defense of procedural default against ground three at his first available opportunity.

Respondent's motion to dismiss petitioner's third ground for relief, as set forth in his Motion to Dismiss, (Doc.# 23, at 6, 7-8, and 10) is stricken.  Petitioner's arguments in response, as set forth in his Opposition, (Doc.# 34, at 74-80), are stricken, too.  Respondent will have thirty days from the date of this opinion and order to file a new motion to dismiss petitioner's third ground for relief.  Petitioner will have twenty days to file a memorandum in opposition. Respondent will have fifteen days to file a reply.  No extensions of time will be granted.  While it is not the Court's place to tell respondent how to litigate his case, respondent is strongly encouraged to address petitioner's claims as those claims have been numbered, identified, and set forth in the habeas corpus petition.

For the foregoing reasons, respondent's motion to dismiss petitioner's third ground for relief is **DENIED**, subject to renewal in the manner set forth above.

   N.  Ground Four, Sub-Part (1)(A) – Trial Phase "Reasonable Doubt" Instruction

92

In his fourth ground for relief, petitioner raises a litany of challenges to the jury instructions that he divides between trial phase instructions and mitigation phase instructions. (Petition, Doc.# 14, at ¶¶ 387-429).[6]  In ground four, sub-part (1)(A), petitioner challenges the "reasonable doubt" instruction given by the trial court during the trial phase.  Respondent concedes that this claim is not procedurally defaulted.  (Doc.# 23, at 4-5).  Accordingly, ground four, sub-part (1)(A) is entitled to full review on the merits.

      O.   Ground Four, Sub-Part (1)(B) – Trial Phase "Purpose To Kill" Instruction

In ground four, sub-part (1)(B), petitioner challenges the "purpose to kill" instruction given by the trial court during the trial phase.  (Petition, Doc.# 14, at ¶¶ 396-406).  Specifically, petitioner argues that the trial court erred in instructing the jury that it could presume petitioner's purpose to kill or specific intent to kill simply by finding that the victim had been stabbed.  (*Id*. at 397).

Respondent argues that petitioner's claim is procedurally defaulted because trial counsel failed to object to the jury instruction during trial, thereby violating Ohio's contemporaneous instruction rule.  (Doc.# 23, at 10-11).

Petitioner appears to concede that there was no contemporaneous objection at trial, but asserts that he can excuse the procedural default under the "cause and prejudice" test and/or the "actual innocence" exception.  (Doc.# 34, at 81-83).  Specifically, petitioner argues that ineffective assistance of trial counsel constitutes cause and prejudice sufficient to excuse the

---

      [6]     In his petition, petitioner identifies his claims using the number "1" to designate trial phase instructions, and using the letters "A" through "D" to designate the sub-parts of his claim.  (Petition, Doc.# 14, at ¶¶ 387-414).  In his Opposition to respondent's motion to dismiss, however, petitioner reverses course and identifies his claims using the letter "A" to designate trial phase instructions, and using the numbers "1" through "4" to designate the sub-parts of his claim.  In an effort to maintain consistency and avoid confusion, to the extent that is even possible at this point, this Court will refer to the claims as they have been identified in the petition.

default. In the alternative, petitioner argues that he can satisfy the "gateway" actual innocence exception, permitting review of an otherwise defaulted claim, because he is actually innocent of the death penalty under the facts and law.

Turning first to the four-part *Maupin* test, the Court concludes that petitioner violated Ohio's contemporaneous objection rule when he failed to object to the trial court's "purpose to kill" instruction. Claimed errors in jury instructions that are not objected to during trial are waived, absent a showing of plain error. *See, e.g., State v. Underwood*, 3 Ohio St. 3d 12, syllabus, 444 N.E.2d 1332 (1993). Petitioner violated this rule when he failed to object to the portions of the penalty phase jury instructions set forth above; petitioner does not appear to contend otherwise.

The Court further finds that the second part of the *Maupin* test has been satisfied, insofar as the Supreme Court of Ohio clearly and expressly enforced the contemporaneous objection rule against petitioner's claim challenging the trial court's "purpose to kill" instruction. Petitioner raised this claim in his twelfth proposition of law on direct appeal to the Supreme Court of Ohio. The Supreme Court of Ohio noted that petitioner had waived all but plain error in the jury instruction that he claimed was erroneous because he had failed to object to the instructions at trial. *Stojetz, supra*, 84 Ohio St. 3d 452, 705 N.E.2d 329; App. Vol. III, at 154. Thus, the second part of the *Maupin* test has been satisfied and again, petitioner does not contend otherwise.

Ohio's contemporaneous objection rule is clearly stated and regularly enforced. *See, e.g., State v. Underwood*, 3 Ohio St. 3d 12, syllabus, 444 N.E.2d 1332 (1983)("The failure to object to a jury instruction constitutes a waiver of any claim of error thereto...."); *State v. Durkin*, , 66 Ohio St. 2d 158, 161, 420 N.E.2d 124, 127 (1981)(failure to object to jury instruction improperly

94

allocating burden of proof is waiver). Ohio's contemporaneous objection rule serves important

state interests in judicial economy and minimizing reversible error by enabling a trial judge to

deliver jury instructions that are free of error, and, where possible, agreeable to the parties.

Finally, Ohio's contemporaneous objection rule -- even with the application of plain error review

-- does not rely on or otherwise implicate federal law. The Sixth Circuit has consistently ruled

that Ohio's contemporaneous objection rule is an adequate and independent procedural rule that

bars federal habeas corpus review absent a demonstration of cause for the waiver and resulting

prejudice. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell,* 209 F.3d

854, 866-71 (6th Cir. 2000); *see also Osborne v. Ohio*, 495 U.S. 103, 123 (1990); *Engle v. Isaac*,

456 U.S. 107, 124-25 (1982). Thus, the third part of the *Maupin* test has been satisfied.

Having determined that ground four, sub-part (1)(B) is subject to procedural default, the

Court turns its attention to petitioner's argument that ineffective assistance of trial counsel

constitutes cause and prejudice sufficient to excuse the default. Specifically, petitioner argues

that his trial attorneys performed unreasonably and to his prejudice when they failed to object to

the trial court's "purpose to kill" instruction, since, according to petitioner, that instruction was

clearly erroneous for creating a mandatory death penalty. As respondent points out, ruling on

petitioner's cause-and-prejudice argument will call upon the Court to rule on the trial counsel

ineffectiveness claim set forth in ground one, sub-part (E), paragraph 262. Since ground one,

sub-part (E), paragraph 262 is properly before the Court for a full review on the merits, and the

parties have not yet submitted their merits briefs, the Court will defer consideration of the instant

cause-and-prejudice argument until it rules on the trial counsel ineffectiveness claim set forth in

ground one, sub-part (E), paragraph 262.

Beyond the four-part *Maupin* test, petitioner argues that the default of ground four, sub-part (1)(B) can be excused under the "actual innocence" exception.  For reasons discussed more fully in Section IV(C)(3), the Court will defer consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in his second ground for relief.

For the foregoing reasons, the Court concludes that ground four, sub-part (1)(B) is subject to procedural default.  The Court will defer consideration of petitioner's argument that trial counsel ineffectiveness constitutes cause and prejudice sufficient to excuse the default until after the parties submit their merits briefs and the Court considers the trial counsel ineffectiveness claim set forth in ground one, sub-part (E), paragraph 262.  Further, the Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence.  For the foregoing reasons, respondent's motion to dismiss ground four, sub-part (1)(B) as procedurally defaulted is **DENIED**, subject to reconsideration once the Court addresses the trial counsel ineffectiveness claim set forth in ground one, sub-part (E), paragraph 262, and the claim of actual innocence set forth in petitioner's second ground for relief.[7]

---

[7]  As to other claims, where the Court has deferred consideration of petitioner's argument that he can satisfy the "gateway" actual innocence exception to procedural default, the Court has granted respondent's motion to dismiss those claims, subject to reconsideration, because the Court otherwise found that all four parts of the *Maupin* test had been met and that respondent had tentatively sustained his burden of establishing the procedural default.

With respect to the instant claim, where the Court has deferred consideration of not only petitioner's argument that he can satisfy the "gateway" actual innocence exception to procedural default, but also petitioner's argument that he can satisfy the cause-and-prejudice exception to procedural default, this Court must deny respondent's motion to dismiss this claim, subject to reconsideration, because the Court cannot find that all four parts of the *Maupin* test have been met.

P.  Ground Four, Sub-Part (1)(C) – Trial Phase Instruction On The "Principal Offender" and "Aider and Abettor" Components of Aggravated Murder Charge.

In ground four, sub-part (1)(C), petitioner argues that the trial court's instruction on the sole aggravating circumstance in petitioner's indictment was erroneous.  (Petition, Doc.# 14, at ¶¶ 407-409, 431-450).  Petitioner explains that, Ohio's death penalty scheme permits conviction for aggravated murder as *either* the principal offender *or* an aider and abettor.  Petitioner argues that the trial court's jury instructions failed to require a unanimous jury verdict as to which element the State actually proved beyond a reasonable doubt.

Respondent argues that ground four, sub-part (1)(C) is procedurally defaulted because it was never presented to any state court.  (Doc.# 23, at 6).[8]

Petitioner disputes respondent's assertion, arguing that he presented this claim on direct appeal to the Supreme Court of Ohio in his fourth proposition of law.  Petitioner's argument in this regard is well taken.  A review of petitioner's fourth proposition of law on direct appeal to the Supreme Court of Ohio clearly reveals that he raised this precise claim.  (App. Vol. II, at 135-139).  Thus, respondent's argument that ground four, sub-part (1)(C) is procedurally defaulted because it was never presented to the state courts clearly fails, and, respondent concedes as much in his reply.  (Doc.# 35, at 11).  But the inquiry does not end here.

In his Opposition, petitioner argues that the fact that no contemporaneous objection was raised against this jury instruction during trial does not constitute a procedural default in this instance because respondent did not raise that argument against this claim in his motion to dismiss.  (Doc.# 34, at 83-84).  The only procedural default defense raised by respondent against

---

[8]        Respondent referred to this claim as ground four, subpart C.  (Doc.# 23, at 6).

this claim, as noted above, was that the claim was never presented to the state courts.  And, as noted above, that argument is belied by the record.  Petitioner goes on to argue that, in the event the Court elects to enforce the procedural default that respondent failed to assert, *i.e.*, petitioner's violation of Ohio's contemporaneous objection rule, petitioner argues that that procedural default should not be enforced because petitioner can demonstrate cause and prejudice to excuse the default, *i.e.*, ineffective assistance of trial counsel, and because petitioner can demonstrate the "actual innocence" exception to procedural default.  (Doc.# 34, at 84).  All of petitioner's arguments fall short.

As discussed more fully *supra* in section IV(H), federal courts are not precluded from raising or recognizing a procedural default that was not expressly raised by the state, especially where, as here, petitioner is not unfairly disadvantaged and is given the opportunity to respond to the procedural default.  The procedural default stemming from trial counsel's failure to raise a contemporary objection to the jury instructions, even if not initially raised by respondent with respect to this particular claim against the trial court's jury instructions, has been briefed by the parties.  Petitioner was on notice that any claims involving jury instructions that were not objected to during trial would be subject to this particular procedural default.  When petitioner argued in his opposition that he had, in fact, raised the instant claim challenging the trial court's "aider and abettor" instruction, he surely was aware that the claim would be subject to the procedural default stemming from trial counsel's failure to raise a contemporaneous instruction. Respondent raised this procedural default argument in his reply to petitioner's opposition, and petitioner, obviously anticipating that respondent would do so, offered several arguments in response to why this Court should not enforce the default.  Thus, in the interests of common

sense and because it will not unfairly prejudice petitioner, the Court will recognize the procedural default stemming from trial counsel's failure to raise a contemporaneous objection to the trial court's "aider and abettor" instruction, even though respondent did not initially raise that procedural default argument in his motion to dismiss.

Turning to the *Maupin* test, petitioner violated Ohio's contemporaneous objection rule when he failed to object to the trial court's instruction on the "principal offender" and "aider and abettor" segments of the aggravated murder charge. The Supreme Court of Ohio clearly and expressly enforced the rule when it found, on direct appeal, that the claim did not rise to the level of plain error. (App. Vol. III, at 149). Further, the Court has already determined that Ohio's contemporaneous objection rule is an adequate and independent state ground upon which to deny relief. Thus, the first three parts of the *Maupin* test have been met.

Having determined that ground four, sub-part (1)(C) is subject to procedural default, the Court turns its attention to petitioner's argument that ineffective assistance of trial counsel constitutes cause and prejudice sufficient to excuse the default. Specifically, petitioner argues that his trial attorneys performed unreasonably and to his prejudice when they failed to object to the failure of the trial court during the trial phase to require the jury to find beyond a reasonable doubt either that petitioner was the principal offender or that petitioner was an aider and abettor. The Court cannot consider petitioner's "cause" argument. The Court is not permitted to consider as "cause" any claim of counsel ineffectiveness that petitioner did not properly present to the state courts. *See Edwards v. Carpenter, supra*, 529 U.S. at 452-53. It does not appear that petitioner presented to the state courts a claim of trial counsel ineffectiveness for the failure to object to the trial court's failure during the trial phase to require the jury to find beyond a

reasonable doubt *either* that petitioner was the principal offender *or* that petitioner was an aider and abettor.  That being so, the Court cannot find that petitioner has demonstrated cause and prejudice to excuse the default of ground four, sub-part (1)(C).

Beyond the four-part *Maupin* test, petitioner argues that the default of ground four, sub-part (1)(C) can be excused under the "actual innocence" exception.  For reasons discussed more fully in Section IV(C)(3), the Court will defer consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in his second ground for relief.

For the foregoing reasons, the Court concludes that ground four, sub-part (1)(C) is procedurally defaulted and that petitioner has failed to demonstrate cause and prejudice to excuse the default.  The Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence.  For the foregoing reasons, respondent's motion to dismiss ground four, sub-part (1)(C) as procedurally defaulted is **GRANTED**, subject to reconsideration once the Court addresses the claim of actual innocence set forth in petitioner's second ground for relief.[9]

Q.  Ground Four, Sub-Part (1)(D) – Trial Phase "Acquittal First" Instruction.

In ground four, sub-part (1)(D), petitioner argues that the trial court erred in giving an "acquittal first" instruction during the trial phase.  (Petition, Doc.# 14, at ¶¶ 410-414).  Petitioner argues that, on three separate occasions, the trial court instructed the jury that it had to

___

[9]  The Court has granted respondent's motion to dismiss, subject to reconsideration, rather than denying respondent's motion to dismiss, subject to reconsideration, because the Court otherwise finds that all four parts of the *Maupin* test had been met and that respondent had tentatively sustained his burden of establishing the procedural default.

unanimously acquit petitioner of aggravated murder before it could consider the lesser included offense of murder.  That instruction was constitutionally infirm, petitioner argues, because it effectively removed the lesser included offense from the jury's consideration.

Respondent argues that ground four, sub-part (1)(D) is procedurally defaulted because it was never presented to the state courts.  (Doc.# 23, at 6).[10]

Petitioner concedes that this jury instruction claim was never presented to the state courts, but offers several arguments for why the procedural default should be excused.  (Doc.# 34, at 84-87).  First, petitioner argues that ineffective assistance of trial counsel constitutes cause and prejudice to excuse petitioner's failure to object to the instruction during trial.  Second, petitioner argues that ineffective assistance of appellate counsel constitutes cause and prejudice to excuse petitioner's failure to raise this jury instruction claim on direct appeal.  Finally, petitioner argues that he can satisfy the "gateway" actual innocence exception to procedural default.

The Court is not permitted to consider as "cause" any claim of counsel ineffectiveness that petitioner did not properly present to the state courts.  *See Edwards v. Carpenter, supra*, 529 U.S. at 452-53.  It does not appear that petitioner presented to the state courts either of the "cause" arguments that he offers herein.  That is, it does not appear that petitioner presented to the state courts either a claim of trial counsel ineffectiveness for the failure to object to the "acquittal first" instruction or a claim of appellate counsel ineffectiveness for the failure to challenge the "acquittal first" instruction on direct appeal.  Thus, it would appear that the Court

---

[10]        Respondent gave this claim not only a different number than petitioner gave it, but also a different name.  Respondent referred to this claim as ground four, subpart D, and called it petitioner's "*Beck*" claim.  (Doc.# 23, at 6).

101

cannot consider "cause" argument.

In urging the Court to excuse the default of his "cause" arguments, petitioner explains that he was represented on direct appeal by the Ohio Public Defender's Office, and that the Ohio Public Defender's Office contracted and paid attorney John Gideon to file in the state courts a Rule 26(B) "*Murnahan*" application challenging the effectiveness of the public defender's representation of petitioner during his appeal. According to petitioner, this amounted to a conflict of interest that effectively denied him his Sixth Amendment right to counsel altogether and the Supreme Court of Ohio erred in not inquiring about the conflict of interest. Petitioner further argues that this was a structural error not capable of being cured through a review for harmless error.

Petitioner appears to be arguing that Mr. Gideon suffered from an actual conflict of interest, by virtue of the fact that he was hired by the Ohio Public Defender's Office to file a state action alleging the ineffectiveness of the Ohio Public Defender in representing petitioner on direct appeal, and that this actual conflict of interest resulted in a total denial of counsel during petitioner's Rule 26(B) proceedings such that petitioner should be excused for having failed to present to the state courts the appellate counsel ineffectiveness claim that he seeks to present to this Court as cause for the default of ground four, sub-part (1)(D). The Court is not persuaded. Petitioner, to demonstrate an actual conflict of interest and resulting denial of counsel, must be able to point to specific evidence that something about the circumstances surrounding Mr. Gideon's representation of him in connection with his Rule 26(B) application for reopening caused Mr. Gideon to represent interests adverse to petitioner's own interests. *See United States v. Hall*, 200 F.3d 962, 965-66 (6th Cir. 2000). Petitioner has made no such showing. Rather,

petitioner has offered only a hypothetical conflict of interest.  *See Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir. 1987).  In sum, the Court is not persuaded that an actual conflict of interest resulted in a denial of petitioner's Sixth Amendment right to counsel sufficient to excuse the fact that petitioner never presented to the state courts the ineffective assistance claims that he asks this Court to consider as "cause" to excuse the procedural default of ground four, sub-part (1)(D). That being so, the Court cannot find that petitioner has demonstrated cause and prejudice to excuse the default of ground four, sub-part (1)(D).

Beyond the four-part *Maupin* test, petitioner argues that the default of ground four, sub-part (1)(D) can be excused under the "actual innocence" exception.  For reasons discussed more fully in Section IV(C)(3), the Court will defer consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in his second ground for relief.

For the foregoing reasons, the Court concludes that ground four, sub-part (1)(D) is procedurally defaulted and that petitioner has failed to demonstrate cause and prejudice to excuse the default.  The Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence.  For the foregoing reasons, respondent's motion to dismiss ground four, sub-part (1)(D) as procedurally defaulted is **GRANTED**, subject to reconsideration once the Court addresses the claim of actual innocence set forth in petitioner's second ground for relief.[11]

---

[11]        The Court has granted respondent's motion to dismiss, subject to reconsideration, rather than denying respondent's motion to dismiss, subject to reconsideration, because the Court otherwise finds that all four parts of the *Maupin* test had been met and that respondent had tentatively sustained his burden of establishing the procedural default.

R.  <u>Ground Four, Sub-Part (2)(A) – Mitigation Phase Instruction Regarding the "Principal</u>

<u>Offender" and "Aider and Abettor" Segments of Aggravated Murder Charge</u>.

In ground four, sub-part (2)(A), petitioner argues that the trial court erred during the

mitigation phase in not instructing the jury to use *either* the "principal offender" component of

the aggravating circumstance *or* Rule 18(c) of the Ohio Rules of Appellate Procedure provides

that an appeal may be dismissed for the failure to timely file an appellate brief.   the "aider and

abettor" component of the aggravating circumstance in determining whether the aggravating

circumstance outweighed the mitigating evidence.  (Petition, Doc.# 14, at ¶¶ 415-418, 431-450).

Respondent argues that petitioner's claim is procedurally defaulted because it was never

presented to the state courts.  (Doc.# 23, at 7).[12]

Petitioner disputes respondent's argument, insisting that he presented this claim to the

Supreme Court of Ohio on direct appeal as his fourth proposition of law.  (Opposition, Doc.# 34,

at 87, citing App. Vol. II, at 138-39).  In his reply, respondent counters that the claim presented

to the Supreme Court of Ohio is not the same as the claim presented in ground four, sub-part

(2)(A), insofar as petitioner did not cite *Ring v. Arizona*, 536 U.S. 584 (2002)[13] in his argument

to the Supreme Court of Ohio, though he cites the *Ring* argument herein.  Therefore, according

to respondent, ground four, sub-part (2)(A) was not fairly presented to the Supreme Court of

Ohio on direct appeal as asserted by petitioner in his opposition.  Respondent's argument is not

---

[12]         Respondent referred to the claim as ground four, sub-part (E).  The Court will refer to it as it was
designated in the petition, *i.e.*, ground four, sub-part (2)(A).

[13]         In *Ring v. Arizona*, 538 U.S. 584, 609 (2002), the Supreme Court held that the Sixth Amendment
requires the jury, rather than the judge, to find the aggravating circumstance that renders the defendant death-
eligible.  In *Schriro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519, 2526 (2004), the Supreme Court held that *Ring*
does not apply retroactively to cases that were already final on direct review at the time *Ring* was decided.

well taken.

The substance of ground four, sub-part (2)(A) was presented to the Supreme Court of Ohio in proposition of law number four.  That petitioner includes herein a citation to *Ring v. Arizona*, which citation he did not include on appeal to the Supreme Court of Ohio, is immaterial.  For one thing, *Ring v. Arizona* was decided in 2002, three years after petitioner's direct appeal to the Supreme Court of Ohio.  That explains why petitioner did not include the *Ring* argument on direct appeal to the Supreme Court of Ohio; *Ring* had not been decided yet. Beyond the *Ring* argument, petitioner's claim as he presented it to the Supreme Court of Ohio is substantially the same as the claim he presents to this Court in ground four, sub-part (2)(A). Petitioner's inclusion in ground four, sub-part (2)(A) of an argument that he did not present to the Supreme Court of Ohio, *i.e.*, the *Ring* argument, is that much more immaterial to the issue of whether he fairly presented ground four, sub-part (2)(A), in light of the fact that the *Ring* decision does not apply retroactively.  In other words, petitioner cannot rely on or benefit from the *Ring* decision; so the fact that he has raised it in connection with ground four, sub-part (2)(A), when he did not raise it in connection with the claim he presented to the Supreme Court of Ohio, does not mean that he failed to fairly present the claim to the Supreme Court of Ohio. That being so, the Court rejects respondent's argument that ground four, sub-part (2)(A) was not fairly presented to the Supreme Court of Ohio on direct appeal.

Having rejected respondent's argument that ground four, sub-part (2)(A) is procedurally defaulted because it was never presented to the state courts clearly, the Court nonetheless concludes that petitioner's claim appears to be procedurally defaulted.

In his Opposition, petitioner argues that the fact that no contemporaneous objection was

raised against this jury instruction during trial does not constitute a procedural default in this instance because respondent did not raise that argument against this claim in his motion to dismiss.  (Doc.# 34, at 88).  The only procedural default defense raised by respondent against this claim, as noted above, was that the claim was never presented to the state courts.  And, as noted above, that argument is belied by the record.  Petitioner goes on to argue that, in the event the Court elects to enforce the procedural default that respondent failed to assert, *i.e.*, petitioner's violation of Ohio's contemporaneous objection rule, petitioner argues that that procedural default should not be enforced because petitioner can demonstrate cause and prejudice to excuse the default, *i.e.*, ineffective assistance of trial counsel, and because petitioner can demonstrate the "actual innocence" exception to procedural default.  (Doc.# 34, at 88).  All of petitioner's arguments fall short.

As discussed more fully *supra* in section IV(P), federal courts are not precluded from raising or recognizing a procedural default that was not expressly raised by the state, especially where, as here, petitioner is not unfairly disadvantaged and is given the opportunity to respond to the procedural default.  The procedural default stemming from trial counsel's failure to raise a contemporary objection to the jury instructions, even if not initially raised by respondent with respect to this particular claim against the trial court's jury instructions, has been briefed by the parties.  Petitioner was on notice that any claims involving jury instructions that were not objected to during trial would be subject to this particular procedural default.  When petitioner argued in his opposition that he had, in fact, raised the instant claim challenging the trial court's mitigation phase instruction on the "principal offender" and "aider and abettor" components of the aggravating circumstance, he surely was aware that the claim would be subject to the

procedural default stemming from trial counsel's failure to raise a contemporaneous instruction.

Respondent raised this procedural default argument in his reply to petitioner's opposition, and

petitioner, obviously anticipating that respondent would do so, offered several arguments in

response to why this Court should not enforce the default.  Thus, in the interests of common

sense and because it will not unfairly prejudice petitioner, the Court will recognize the

procedural default stemming from trial counsel's failure to raise a contemporaneous objection to

the trial court's "aider and abettor" instruction, even though respondent did not initially raise that

procedural default argument in his motion to dismiss.

Turning to the *Maupin* test, petitioner violated Ohio's contemporaneous objection rule

when he failed to object to the trial court's instruction during the mitigation phase on the

"principal offender" and "aider and abettor" segments of the aggravated murder charge.  The

Supreme Court of Ohio clearly and expressly enforced the rule when it found, on direct appeal,

that the claim did not rise to the level of plain error.  (App. Vol. III, at 149).  Further, the Court

has already determined that Ohio's contemporaneous objection rule is an adequate and

independent state ground upon which to deny relief.  Thus, the first three parts of the *Maupin* test

have been met.

Having determined that ground four, sub-part (2)(A) is subject to procedural default, the

Court turns its attention to petitioner's argument that ineffective assistance of trial counsel

constitutes cause and prejudice sufficient to excuse the default.  Specifically, petitioner argues

that his trial attorneys performed unreasonably and to his prejudice when they failed to object to

the failure of the trial court during the mitigation phase to require the jury to find beyond a

reasonable doubt either that petitioner was the principal offender or that petitioner was an aider

and abettor.  Ruling on petitioner's cause-and-prejudice argument will call upon the Court to rule on the trial counsel ineffectiveness claim set forth in ground one, sub-part (E), paragraph 263. Since ground one, sub-part (E), paragraph 263 is properly before the Court for a full review on the merits, and the parties have not yet submitted their merits briefs, the Court will defer consideration of the instant cause-and-prejudice argument until it rules on the trial counsel ineffectiveness claim set forth in ground one, sub-part (E), paragraph 263.

Beyond the four-part *Maupin* test, petitioner argues that the default of ground four, sub-part (2)(A) can be excused under the "actual innocence" exception.  For reasons discussed more fully in Section IV(C)(3), the Court will defer consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in his second ground for relief.

For the foregoing reasons, the Court concludes that ground four, sub-part (2)(A) is subject to procedural default.  The Court will defer consideration of petitioner's argument that trial counsel ineffectiveness constitutes cause and prejudice sufficient to excuse the default until after the parties submit their merits briefs and the Court considers the trial counsel ineffectiveness claim set forth in ground one, sub-part (E), paragraph 263.  Further, the Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence.  For the foregoing reasons, respondent's motion to dismiss ground four, sub-part (2)(A) as procedurally defaulted is **DENIED**, subject to reconsideration once the Court addresses the trial counsel ineffectiveness claim set forth in ground one, sub-part (E), paragraph 263, and the claim of actual innocence set

forth in petitioner's second ground for relief.[14]

S. Ground Four, Sub-Part (2)(B) – Mitigation Phase "Acquittal Of Death First" Instruction

In ground four, sub-part (2)(B), petitioner argues that the trial court erred during the mitigation phase in instructing the jury that it could consider a life sentence for petitioner only if it first determined that a death sentence was not appropriate.  (Petition, Doc.# 14, at ¶¶ 419-427).

Respondent argues that ground four, sub-part (2)(B) is procedurally defaulted because it was never presented to the state courts.  (Doc.# 23, at 7).[15]

Petitioner concedes that this jury instruction claim was never presented to the state courts, but offers several arguments for why procedural default should be excused.  (Doc.# 34, at 88-91).  First, petitioner argues that ineffective assistance of trial counsel constitutes cause and prejudice to excuse petitioner's failure to object to the instruction during trial.  Second, petitioner argues that ineffective assistance of appellate counsel constitutes cause and prejudice to excuse petitioner's failure to raise this jury instruction claim on direct appeal.  Finally, petitioner argues that he can satisfy the "gateway" actual innocence exception to procedural default.

The Court is not permitted to consider as "cause" any claim of counsel ineffectiveness that petitioner did not properly present to the state courts.  *See Edwards v. Carpenter, supra*, 529

---

[14]       As to other claims, where the Court has deferred consideration of petitioner's argument that he can satisfy the "gateway" actual innocence exception to procedural default, the Court has granted respondent's motion to dismiss those claims, subject to reconsideration, because the Court otherwise found that all four parts of the *Maupin* test had been met and that respondent had tentatively sustained his burden of establishing the procedural default.

        With respect to the instant claim, where the Court has deferred consideration of not only petitioner's argument that he can satisfy the "gateway" actual innocence exception to procedural default, but also petitioner's argument that he can satisfy the cause-and-prejudice exception to procedural default, this Court must deny respondent's motion to dismiss this claim, subject to reconsideration, because the Court cannot find that all four parts of the *Maupin* test have been met.

[15]       Respondent referred to this claim as ground four, sub-part F.  (Doc.# 23, at 7).

U.S. at 452-53.  It does not appear that petitioner presented to the state courts either of the "cause" arguments that he offers herein.  That is, it does not appear that petitioner presented to the state courts either a claim of trial counsel ineffectiveness for the failure to object to the "acquittal of death first" instruction during the mitigation phase or a claim of appellate counsel ineffectiveness for the failure to challenge the "acquittal first of death first" instruction on direct appeal.  Thus, it would appear that the Court cannot consider "cause" argument.

In urging the Court to excuse the default of his "cause" arguments, petitioner argues that an actual conflict of interest resulted in a total denial of petitioner's right to counsel in connection with his Rule 26(B) proceedings such that petitioner should be excused for having failed to present to the state courts the appellate counsel ineffectiveness claim he seeks to present to this Court has "cause" for the default of ground four, sub-part (2)(B).  The Court is not persuaded.  For reasons discussed more fully *supra* in section IV.(Q), the Court cannot find that an actual conflict of interest excused petitioner's failure to present to the state courts the appellate counsel ineffectiveness claim he seeks to present to this Court.  Since this Court cannot, accordingly, consider petitioner's "cause" arguments, the Court concludes that petitioner has not demonstrated cause and prejudice to excuse the default of ground four, sub-part (2)(B).

Beyond the four-part *Maupin* test, petitioner argues that the default of ground four, sub-part (2)(B) can be excused under the "actual innocence" exception.  For reasons discussed more fully in Section IV(C)(3), the Court will defer consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in his second ground for relief.

For the foregoing reasons, the Court concludes that ground four, sub-part (2)(B) is

110

procedurally defaulted and that petitioner has failed to demonstrate cause and prejudice to excuse the default.  The Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence.  For the foregoing reasons, respondent's motion to dismiss ground four, sub-part (2)(B) as procedurally defaulted is **GRANTED**, subject to reconsideration once the Court addresses the claim of actual innocence set forth in petitioner's second ground for relief.[16]

### T.  Ground Five, Sub-Part (A) – Lack Of Specific Findings By Jury

In ground five, sub-part (A), petitioner argues that the state prosecuted petitioner under the disparate theories that he was either the principal offender or an aider and abettor, and that neither the jury instructions, nor the jury verdict forms, ever required the jury to make specific findings either that they unanimously found that petitioner was the principal offender or that they unanimously found that petitioner was guilty as an aider and abettor.  (Petition, Doc.# 14, at ¶¶ 431-450).

Respondent argues that ground five, sub-part (A) is procedurally defaulted because no contemporaneous objection was raised during trial.  (Doc.# 23, at 11-12).

Petitioner, in his Opposition, concedes that no contemporaneous objection was raised during trial, but argues that the default should be excused under the cause-and-prejudice test because ineffective assistance of trial counsel constitutes "cause" to excuse the default.  (Opposition, Doc.# 34, at 92-93).  Petitioner further argues that the default should be excused

---

[16]        The Court has granted respondent's motion to dismiss, subject to reconsideration, rather than denying respondent's motion to dismiss, subject to reconsideration, because the Court otherwise finds that all four parts of the *Maupin* test had been met and that respondent had tentatively sustained his burden of establishing the procedural default.

under the "actual innocence" exception.

Turning first to the four-part *Maupin* test, the Court concludes that petitioner violated Ohio's contemporaneous objection rule when he failed to object to the failure of the trial court or verdict forms to require specific findings by the jury.  Claimed errors involving jury instructions or verdict forms that are not objected to during trial are waived, absent a showing of plain error. *See, e.g., State v. Underwood*, 3 Ohio St. 3d 12, syllabus, 444 N.E.2d 1332 (1993).  Petitioner violated this rule when he failed to object to the portions of the penalty phase jury instructions set forth above; petitioner does not appear to contend otherwise.  The Court further finds that the second part of the *Maupin* test has been satisfied, insofar as the Supreme Court of Ohio clearly and expressly enforced the contemporaneous objection rule against petitioner's claim challenging failure to require specific findings by the jury.  (App. Vol. III, at 149).  The Court has already determined that Ohio's contemporaneous objection rule is an adequate and independent state ground upon which to deny relief because it is clearly stated in unmistakable terms, is consistently enforced, and relies in no part on federal law.

Having determined that ground five, sub-part (A) is subject to procedural default, the Court turns its attention to petitioner's argument that ineffective assistance of trial counsel constitutes cause and prejudice sufficient to excuse the default.  Specifically, petitioner argues that his trial attorneys performed unreasonably and to his prejudice when they failed to object to the fact that the jury was not required to issue specific findings.  As respondent points out, ruling on petitioner's cause-and-prejudice argument will call upon the Court to rule on the trial counsel ineffectiveness claim set forth in ground one, sub-part (E), paragraph 260.[17]  Because ground

---

[17]    Respondent refers to this trial counsel ineffectiveness claim as ground one, sub-part (K).  It is actually ground one, sub-part (E), paragraph 260, as set forth in the petition.

one, sub-part (E), paragraph 260 is properly before the Court for a full review on the merits, and because the parties have not yet submitted their merits briefs, the Court will defer consideration of the instant cause-and-prejudice argument until it rules on the trial counsel ineffectiveness claim set forth in ground one, sub-part (E), paragraph 260.

Beyond the four-part *Maupin* test, petitioner argues that the default of ground five, sub-part (A) can be excused under the "actual innocence" exception.  For reasons discussed more fully in Section IV(C)(3), the Court will defer consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in his second ground for relief.

For the foregoing reasons, the Court concludes that ground five, sub-part (A) is subject to procedural default.  The Court will defer consideration of petitioner's argument that trial counsel ineffectiveness constitutes cause and prejudice sufficient to excuse the default until  after the parties submit their merits briefs and the Court considers the trial counsel ineffectiveness claim set forth in ground one, sub-part (E), paragraph 260.  Further, the Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence.  For the foregoing reasons, respondent's motion to dismiss ground five, sub-part (A) as procedurally defaulted is **DENIED**, subject to reconsideration once the Court addresses the trial counsel ineffectiveness claim set forth in ground one, sub-part (E), paragraph 260, and the claim of actual innocence set forth in petitioner's second ground for

relief.[18]

 U.  <u>Ground Five, Sub-Part (B) – Lack Of Specific Findings By Jury Compounded By Denial Of</u>
<u>Access To Grand Jury Proceedings</u>.

In ground five, sub-part (B), petitioner argues that the failure to require specific findings

from the jury deprived him of his rights to a jury verdict and to hold the State to its burden of

proof under the Fifth, Sixth, Eighth, and Fourteenth Amendments, and that his lack of access to

the grand jury proceedings exacerbated this fundamental error.  (Petition, Doc.# 14, at ¶¶ 451-

456).  As noted above in connection with ground five, sub-part (A), petitioner was prosecuted

under disparate theories that he was guilty of capital aggravated murder as a principal offender

or an aider and abettor.  The jury was never required to make specific findings as to which

theory the State had proven beyond a reasonable doubt.  Petitioner argues that, since the

indictment charged him and five others regarding the murder of Damico Watkins, petitioner

should have been granted access to the grand jury proceedings to determine whether the grand

jury had determined that there were two possible theories, *i.e.*, that petitioner was guilty as the

principal offender or as an aider and abettor, or whether the grand jury rejected one of those

alternate theories.  Petitioner reasons that if the grand jury determined that only one theory was

viable, then the State should not have been able to argue both theories at trial.  Petitioner further

---

[18]        As to other claims, where the Court has deferred consideration of petitioner's argument that he can
satisfy the "gateway" actual innocence exception to procedural default, the Court has granted respondent's motion to
dismiss those claims, subject to reconsideration, because the Court otherwise found that all four parts of the *Maupin*
test had been met and that respondent had tentatively sustained his burden of establishing the procedural default.

        With respect to the instant claim, where the Court has deferred consideration of not only
petitioner's argument that he can satisfy the "gateway" actual innocence exception to procedural default, but also
petitioner's argument that he can satisfy the cause-and-prejudice exception to procedural default, this Court must
deny respondent's motion to dismiss this claim, subject to reconsideration, because the Court cannot find that all
four parts of the *Maupin* test have been met.

reasons that if the grand jury determined that only one theory was viable, then there may have been exculpatory testimony that caused them to reject the other theory, which exculpatory testimony petitioner was entitled to under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.

Respondent raises no procedural default argument against this claim.  More specifically, respondent fails entirely to address or even acknowledge this claim.

In his Opposition, petitioner argues that respondent's failure to address or even acknowledge this claim must be taken either as a concession that the claim is properly before this Court for a full review on the merits or as a waiver of the right to raise the affirmative defense of procedural default against the claim.  (Doc.# 34, at 93).  Petitioner's arguments are well taken.

As noted *supra* in section IV.(H), procedural default is an affirmative defense that must be raised by the state at the first possible opportunity, or it will be waived. *Trest v. Cain*, 522 U.S. 87, 89 (1997)(holding that state's failure to raise procedural default normally constitutes waiver of the default); *Gray v. Netherland*, 518 U.S. 152, 166 (1996)(holding that procedural default is normally an affirmative defense that will be waived if not raised).  The Court also noted that, while federal courts are not required to raise procedural default *sua sponte*, *Trest v. Cain, supra*, 522 U.S. at 89, neither are they precluded from raising or recognizing a procedural default that was not expressly raised by the state, especially where the petitioner has been given the opportunity to respond to the procedural default.  *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *r'hng and r'hng en banc denied* July 6, 2005, citing *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002); *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000).  That is not the case in this instance.

115

In other sections of this order, this Court has been willing to *sua sponte* recognize a procedural default not expressly raised by respondent where respondent attempted to raise *some* procedural default, but simply raised the wrong one; where respondent subsequently raised the correct procedural default in his reply to petitioner's opposition; and where the specific procedural default had already been extensively briefed by the parties such that petitioner could not be said to have been unfairly disadvantaged by the Court's *sua sponte* recognition.  Those circumstances are not present with respect to ground five, sub-part (B).  For one thing, as petitioner notes in his opposition, respondent did not address ground five, sub-part (B) at all in his motion to dismiss.  That is, respondent raised no procedural default defense at all.  Further, even when put on notice by petitioner's opposition that he had failed altogether to address ground five, sub-part (B) in his motion to dismiss, (Doc.# 23), respondent failed again to address the claim in his reply, (Doc.# 35).  That being the case, this Court is of the view that petitioner would be unfairly disadvantaged if the Court were to recognize any procedural default against ground five, sub-part (B), when respondent neglected in the first instance to argue procedural default in his motion to dismiss, and then failed in the second instance to argue procedural default in his reply.

For the foregoing reasons, this Court will not raise or recognize any procedural default against ground five, sub-part (B).  Accordingly, the Court concludes that ground five, sub-part (B) is properly before the Court for a full review on the merits.

 V.  Ground Six – Jury Was Exposed To Suppressed Evidence Inaccurately Reported By Media As Confession Of Responsibility.

In his sixth ground for relief, petitioner argues that the jury was exposed, through a

newspaper article, to evidence that the trial court suppressed.  (Petition, Doc.# 14, at ¶¶ 457-482).  Petitioner was alleged to have said to a corrections officer, while being transported from his arraignment back to jail, "All we did was kill an inmate.  Why are we going up before the death penalty for killing an inmate?"  The trial court suppressed that statement but, four days before petitioner's case was submitted to the jury, a local newspaper printed an article regarding the suppression of the statement and, according to petitioner, misquoted him as having said, "*all I did was kill another inmate*."  (Petition, Doc.# 14, at ¶ 465).  Petitioner argues in his sixth ground for relief that his jury was exposed to that prejudicial and inaccurate information, and that trial counsel neither moved for a mistrial nor requested to voir dire jurors to determine whether, or to what extent, they had read or heard about the article.

It appears that respondent raises no procedural default argument against this claim.  Respondent raises procedural default defenses against related claims; but, it does not appear that respondent raises a procedural default defense against, or even acknowledges, ground six.  Respondent argues that petitioner's claim of trial counsel ineffectiveness for the failure to move for a mistrial following the jury's exposure to the suppressed evidence was procedurally defaulted under Ohio's doctrine of *res judicata* and because petitioner failed to prosecute his postconviction appeal.  (Doc.# 23, at 23).[19]  Respondent also argues that petitioner's claim of appellate counsel ineffectiveness for the failure to raise trial counsel ineffectiveness in not moving for a mistrial might be procedurally defaulted; respondent could not say for sure.  (Doc.# 23, at 8).[20]  However, nowhere in his motion to dismiss did respondent argue procedural default

---

[19]     Respondent referred to this trial counsel ineffectiveness claim as ground one, sub-part (G).

[20]     Respondent referred to this appellate counsel ineffectiveness claim as ground eleven, sub-part (F).

against ground six itself.

In his Opposition, petitioner argues that "[n]otwithstanding Respondent's hit or miss attack of Petitioner's claims, and apparent failure to address Claim VI," petitioner raised the claim in his postconviction action and in the memorandum in support of jurisdiction to the Supreme Court of Ohio that he filed in trying to revive his postconviction appeal.  (Doc.# 34, at 96).  The Court appreciates petitioner's efforts to demonstrate that he raised this claim, but they are unnecessary.  This Court will not recognize any procedural default against ground six.

As noted *supra* in section IV.(H), procedural default is an affirmative defense that must be raised by the state at the first possible opportunity, or it will be waived. *Trest v. Cain*, 522 U.S. 87, 89 (1997)(holding that state's failure to raise procedural default normally constitutes waiver of the default); *Gray v. Netherland*, 518 U.S. 152, 166 (1996)(holding that procedural default is normally an affirmative defense that will be waived if not raised).  The Court also noted that, while federal courts are not required to raise procedural default *sua sponte*, *Trest v. Cain, supra*, 522 U.S. at 89, neither are they precluded from raising or recognizing a procedural default that was not expressly raised by the state, especially where the petitioner has the opportunity to respond to the procedural default.  *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *r'hng and r'hng en banc denied* July 6, 2005, citing *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002); *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000).  That is not the case in this instance.

In other sections of this order, this Court has been willing to *sua sponte* recognize a procedural default not expressly raised by respondent where respondent attempted to raise *some* procedural default, but simply raised the wrong one; where respondent subsequently raised the

118

correct procedural default in his reply to petitioner's opposition; and where the specific procedural default had already been extensively briefed by the parties such that petitioner could not be said to have been unfairly disadvantaged by the Court's *sua sponte* recognition. Those circumstances are not present with respect to ground six. For one thing, as petitioner notes in his opposition, respondent did not address ground six at all in his motion to dismiss. That is, respondent raised no procedural default defense at all. Further, even when put on notice by petitioner's opposition that he had failed altogether to address ground six in his motion to dismiss, (Doc.# 23), respondent failed again to address the claim in his reply, (Doc.# 35). That being the case, this Court is of the view that petitioner would be unfairly disadvantaged if the Court were to recognize any procedural default against ground six, when respondent neglected in the first instance to argue procedural default in his motion to dismiss, and then failed in the second instance to argue procedural default in his reply.

For the foregoing reasons, this Court will not raise or recognize any procedural default against ground six. Accordingly, the Court concludes that ground six is properly before the Court for a full review on the merits.

W. Ground Seven, Sub-Part (A) – Jury Was Exposed To Unduly Prejudicial Evidence, To Wit: Admission And Replaying Of Videotape Of Crime Scene.

In ground seven, petitioner argues that the jury was exposed to prejudicial evidence, to wit: a "crime scene" videotape, a "shank" misidentified as a weapon allegedly wielded by petitioner, and testimony from inmate Andre Wright speculating what the assailants had done to victim Damico Watkins in his (Watkins's) cell. (Petition, Doc.# 14, at ¶¶ 483-518). Although petitioner did not divide ground seven into three sub-parts, a review of that claim clearly reveals

119

three sub-parts – a sub-part challenging admission of the videotape (¶¶ 485-494), a sub-part

challenging admission of the shank and testimony linking petitioner to that shank (¶¶ 495-507),

and a sub-part challenging admission of the testimony of Andre Wright speculating as to what

had occurred in Damico Watkins's cell (¶¶ 508-515).  Although the Court has frowned upon

respondent's constant and confusing re-numbering of petitioner's claims, since the challenge in

ground seven is so clearly divided between three distinct pieces of evidence, the Court will refer

to allegations regarding the "crime scene" videotape as ground seven, sub-part (A); allegations

regarding the "shank" linked to petitioner as ground seven, sub-part (B); and allegations

regarding Andre Wright's testimony as ground seven, sub-part (C).

Respondent concedes that ground seven, sub-part (A) is properly before the Court for a

full review on the merits.  (Doc.# 23, at 5).

X.  <u>Ground Seven, Sub-Part (B) – Jury Was Exposed To Unduly Prejudicial Evidence, To Wit:
"Shank" And Testimony Linking Petitioner To That "Shank"</u>

In ground seven, sub-part (B), petitioner argues that the jury was exposed to irrelevant,

inadmissible, inflammatory and unduly prejudicial evidence, *i.e.*, a shank and testimony linking

petitioner to that shank.  (Petition, Doc.# 14, at ¶¶ 495-507).  Specifically, petitioner argues that

the "shank" in question was linked by circumstantial evidence to three of the six or seven fatal

wounds sustained by the decedent, and that witnesses falsely placed the shank in petitioner's

hand as he allegedly chased the decedent through the Adams A cell block.

Respondent argues that ground seven, sub-part (B) is procedurally defaulted because no

contemporaneous objection was raised at trial.  (Doc.# 23, at 12).

According to petitioner, respondent concedes that petitioner's claim of trial counsel

ineffectiveness regarding counsel's failure to object to the evidence is properly before the Court, (Doc.# 23, at 5)[21], but then argues that the claim itself, *i.e.*, ground seven, sub-part (B), is subject to procedural default because no contemporaneous objection was raised at trial.  To the extent that petitioner is suggesting that there is something illogical or inconsistent about respondent's arguments, the Court does not agree.  There is nothing about respondent's concession that petitioner's trial counsel ineffectiveness claim[22] regarding the failure to object to this evidence that precludes respondent from arguing that the underlying claim, *i.e.*, ground seven, sub-part (B), is defaulted under Ohio's contemporaneous objection rule.  Petitioner goes on to argue in his Opposition that ground seven, sub-part (B) was presented to the Supreme Court of Ohio on direct appeal in the seventh proposition of law and that the claim, accordingly, is "ready for review in federal *habeas* proceedings."  (Doc.# 34, at 103).

Although his arguments are somewhat difficult to decipher, petitioner does not appear to dispute respondent's assertion that no contemporaneous objection was raised at trial to the admission of testimony linking petitioner to the shank in question.

Turning first to the four-part *Maupin* test, the Court concludes that petitioner violated Ohio's contemporaneous objection rule when he failed to object to testimony by Corrections Officer Browning linking petitioner to the shank that allegedly delivered some of the fatal wounds to the decedent.  The Court further finds that the second part of the *Maupin* test has been satisfied, insofar as the Supreme Court of Ohio clearly and expressly enforced the contemporaneous objection rule against petitioner's claim challenging the admission of that

---

[21]    Respondent referred to this trial counsel ineffectiveness claim as ground one, sub-part (W).

[22]    Although respondent referred to this trial counsel ineffectiveness claim as ground one, sub-part (W), it is actually ground one, sub-part (G).  (Petition, Doc.# 14, at ¶¶ 281-283).

121

testimony. (App. Vol. III, at 151-52). The Court has already determined that Ohio's contemporaneous objection rule is an adequate and independent state ground upon which to deny relief because it is clearly stated in unmistakable terms, is consistently enforced, and relies in no part on federal law.

Having determined that ground seven, sub-part (B) is subject to procedural default, the Court turns its attention to the fact that petitioner appears to argue that ineffective assistance of trial counsel constitutes cause and prejudice sufficient to excuse the default. Although petitioner did not expressly argue that his trial attorneys performed unreasonably and to his prejudice when they failed to object to testimony linking petitioner to the shank in question, petitioner implicitly argued as much when he noted that his trial attorneys had failed to object at trial. Ruling on this cause-and-prejudice argument will call upon the Court to rule on the trial counsel ineffectiveness claim set forth in ground one, sub-part (G).[23] Because ground one, sub-part (G) is properly before the Court for a full review on the merits, and because the parties have not yet submitted their merits briefs, the Court will defer consideration of the instant cause-and-prejudice argument until it rules on the trial counsel ineffectiveness claim set forth in ground one, sub-part (G).

In this particular instance, petitioner did not, beyond the four-part *Maupin* test, argue that the default of ground seven, sub-part (B) should be excused under the "actual innocence" exception to procedural default. That being so, the Court will not consider that argument.

For the foregoing reasons, the Court concludes that ground seven, sub-part (B) is subject to procedural default. The Court will defer consideration of petitioner's argument that trial counsel ineffectiveness constitutes cause and prejudice sufficient to excuse the default until after

---

[23]        Respondent refers to this trial counsel ineffectiveness claim as ground one, sub-part (W). It is actually ground one, sub-part (G).

the parties submit their merits briefs and the Court considers the trial counsel ineffectiveness claim set forth in ground one, sub-part (G).  For the foregoing reasons, respondent's motion to dismiss ground seven, sub-part (B) as procedurally defaulted is **DENIED**, subject to reconsideration once the Court addresses the trial counsel ineffectiveness claim set forth in ground one, sub-part (G).[24]

Y.  <u>Ground Seven, Sub-Part (C) – Jury Was Exposed To Unduly Prejudicial Evidence, To Wit: Testimony By Andre Wright</u>.

In ground seven, sub-part (C), petitioner argues that the jury was exposed to irrelevant, inadmissible, inflammatory and unduly prejudicial evidence, *i.e.*, testimony by inmate Andre Wright speculating as to what occurred in the victim's cell.  (Petition, Doc.# 14, at ¶¶ 508-515).

It appears that respondent raises no procedural default argument against this claim.

In his Opposition, petitioner argues that this claim was presented to the Supreme Court of Ohio on direct appeal and that the Supreme Court of Ohio noted in its decision overruling the claim that it had been waived due to the failure of petitioner's trial attorneys to object.  (Doc.# 34, at 104).  The Court appreciates petitioner's effort to demonstrate that he raised this claim and forthrightness in admitting that the state courts found the claim to be waived; but it is not necessary.  This Court will not recognize any procedural default against ground seven, sub-part (C).

For reasons discussed more fully *supra* in section IV.(V) addressing petitioner's sixth ground for relief, this Court will not *sua sponte* recognize a procedural default that respondent

---

[24]    With respect to the instant claim, where the Court has deferred consideration of only petitioner's argument that he can satisfy the cause-and-prejudice exception to procedural default, this Court must deny respondent's motion to dismiss this claim, subject to reconsideration, because the Court cannot find that all four parts of the *Maupin* test have been met.

123

neglected in the first instance to argue in his motion to dismiss, and then failed in the second instance, having been put on notice by arguments set forth in petitioner's opposition, to argue in his reply.

For the foregoing reasons, this Court will not raise or recognize any procedural default against ground seven, sub-part (C). Accordingly, the Court concludes that ground seven, sub-part (C) is properly before the Court for a full review on the merits.

 Z. <u>Ground Eight – Jury's Responsibility For Execution Of Petitioner Stojetz Was Improperly Diminished</u>.

In his eighth ground for relief, petitioner argues that the jury's responsibility for the execution of Mr. Stojetz was improperly diminished in violation of *Caldwell v. Mississippi*, 472 U.S. 320 (1985). (Petition, Doc.# 14, at ¶¶ 519-534). Respondent raises no procedural default arguments against this claim, and concedes that it is properly before the Court for a determination on the merits. (Doc.# 23, at 5).

 AA. <u>Ground Nine, Sub-Part (A) – Prosecutorial Misconduct For Gender Discrimination In Voir Dire</u>.

In his ninth ground for relief, petitioner raises a litany of prosecutorial misconduct claims. (Petition, Doc.# 14, at ¶¶ 535-601). In ground nine, sub-part (A), petitioner argues that, during jury selection, the prosecution systematically excluded women from the jury panel through the discriminatory use of peremptory challenges in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). (Petition, Doc.# 14, at ¶¶ 540-554).

Respondent argues that petitioner's claim is procedurally defaulted because it was never raised in any state court. (Doc.# 23, at 7). Petitioner concedes that the claim was never

presented, but argues that the default should be excused under the cause-and-prejudice test or the "actual innocence" exception.  (Doc.# 34, at 106-109).  Turning to the *Maupin* test, the Court concludes that petitioner violated Ohio's contemporaneous objection rule when he failed to raise a *Batson* claim at trial, and that petitioner subsequently violated Ohio's *res judicata* rule when he failed to raise his *Batson* claim on direct appeal.  The Court deems the second part of the *Maupin* test to have been met because the state courts were never given the opportunity to enforce either procedural rule.  Under the third part of the *Maupin* test, the Court has already determined that Ohio's contemporaneous objection rule and *res judicata* rule are adequate and independent state grounds upon which to deny relief.

Once the Court determines that petitioner's claim is subject to procedural default, it is incumbent upon petitioner under the fourth part of the *Maupin* test to demonstrate cause and prejudice to excuse the default.  To that end, petitioner appears to assert ineffective assistance of trial counsel for the failure to raise a contemporaneous objection at trial and ineffective assistance of appellate counsel for the failure to raise the issue on direct appeal.  Regarding the fact that the appellate counsel ineffectiveness claim asserted by petitioner as cause was never presented to the state courts, petitioner argues that an actual conflict of interest resulted in a total denial of petitioner's right to counsel such that petitioner should be excused for having failed to present to the state courts the appellate counsel ineffectiveness claim he seeks to present to this Court has "cause" for the default of ground nine, sub-part (A).  The Court is not persuaded.  For reasons discussed more fully *supra* in section IV.(Q), the Court cannot find that an actual conflict of interest excused petitioner's failure to present to the state courts the appellate counsel ineffectiveness claim he seeks to present to this Court.  Thus, the Court cannot consider

125

petitioner's argument that appellate counsel ineffectiveness constitutes "cause" for his failure to raise his *Batson* claim on direct appeal.

However, petitioner also offers ineffective assistance of trial counsel as "cause" to excuse his failure to raise his *Batson* claim at trial.  Ruling on that trial counsel ineffectiveness claim will require the Court to rule on the trial counsel ineffectiveness claim set forth in ground one, sub-part (F), paragraph 275.[25]  Because ground one, sub-part (F), paragraph 275,  is properly before the Court for a full review on the merits, and because the parties have not yet submitted their merits briefs, the Court will defer consideration of the instant cause-and-prejudice argument until it rules on the trial counsel ineffectiveness claim set forth in ground one, sub-part (F), paragraph 275.

Beyond the four-part *Maupin* test, petitioner argues that the default of ground nine, sub-part (A) can be excused under the "actual innocence" exception.  For reasons discussed more fully in section IV(C)(3), the Court will defer consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in his second ground for relief.

For the foregoing reasons, the Court concludes that ground nine, sub-part (A) is subject to procedural default.  The Court will defer consideration of petitioner's argument that trial counsel ineffectiveness constitutes cause and prejudice sufficient to excuse the default until  after the parties submit their merits briefs and the Court considers the trial counsel ineffectiveness claim set forth in ground one, sub-part (F), paragraph 275.  Further, the Court will defer

---

[25]    Respondent refers to this trial counsel ineffectiveness claim as ground one, sub-part (U), and concedes that it is not procedurally defaulted.  (Doc.# 23, at 5).  Actually, this trial counsel ineffectiveness claim is ground one, sub-part (F), paragraph 275, as set forth in the petition.

consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence. For the foregoing reasons, respondent's motion to dismiss ground nine, sub-part (A) as procedurally defaulted is **DENIED**, subject to reconsideration once the Court addresses the trial counsel ineffectiveness claim set forth in ground one, sub-part (F), paragraph 275, and the claim of actual innocence set forth in petitioner's second ground for relief.[26]

BB. Ground Nine, Sub-Part (B) – Prosecutorial Misconduct For Misrepresenting Testimony

In ground nine, sub-part (B), petitioner argues that the prosecution committed misconduct by, during the trial phase closing argument, misrepresenting the testimony of Barbara Sears by attributing to her statements about petitioner that she never actually made during her testimony. (Petition, Doc.# 14, at ¶¶ 555-561).

Respondent raises no procedural default argument against this claim in either his motion to dismiss or his reply. In fact, respondent fails entirely to address or even acknowledge this claim.

In his Opposition, petitioner argues that respondent's failure to address or even acknowledge this claim must be taken either as a concession that the claim is properly before this

---

[26] As to other claims, where the Court has deferred consideration of petitioner's argument that he can satisfy the "gateway" actual innocence exception to procedural default, the Court has granted respondent's motion to dismiss those claims, subject to reconsideration, because the Court otherwise found that all four parts of the *Maupin* test had been met and that respondent had tentatively sustained his burden of establishing the procedural default.

With respect to the instant claim, where the Court has deferred consideration of not only petitioner's argument that he can satisfy the "gateway" actual innocence exception to procedural default, but also petitioner's argument that he can satisfy the cause-and-prejudice exception to procedural default, this Court must deny respondent's motion to dismiss this claim, subject to reconsideration, because the Court cannot find that all four parts of the *Maupin* test have been met.

Court for a full review on the merits or as a waiver of the right to raise the affirmative defense of procedural default against the claim.  (Doc.# 34, at 109).  Petitioner's arguments are well taken.

For reasons discussed more fully *supra* in section IV.(V) addressing petitioner's sixth ground for relief, this Court will not *sua sponte* recognize a procedural default that respondent neglected in the first instance to argue in his motion to dismiss, and then failed in the second instance, having been put on notice by arguments set forth in petitioner's opposition, to argue in his reply.

For the foregoing reasons, this Court will not raise or recognize any procedural default against ground nine, sub-part (B).  Accordingly, the Court concludes that ground nine, sub-part (B) is properly before the Court for a full review on the merits.

CC.  Ground Nine, Sub-Part (C) – Prosecutorial Misconduct For Improperly Arguing Victim Impact Evidence

In ground nine, sub-part (C), petitioner argues that the prosecutor engaged in misconduct by, during trial phase closing arguments, urging the jury to consider victim impact evidence that was wholly unrelated to the crime charged.  (Petition, Doc.# 14, at ¶¶ 562-566).

Respondent raises no procedural default argument against this claim, and fails altogether to acknowledge it in either his motion to dismiss or his reply.

The arguments set forth by petitioner in his Opposition regarding this claim are somewhat difficult to follow because it appears that petitioner has conflated his underlying claim of prosecutorial misconduct for making improper arguments about victim impact evidence and his claim of ineffective assistance of trial counsel for the failure to challenge the prosecutor's alleged misconduct in this regard.  In the interests of brevity and clarity, and because respondent

128

has failed altogether to acknowledge this claim in either his motion to dismiss or his reply, the Court will not attempt to address each of the arguments set forth in petitioner's Opposition. Rather, the Court simply concludes that this claim is properly before it because respondent did not raise a procedural default against it.

The Court has noted repeatedly throughout this order that procedural default is an affirmative defense that must be raised by the state at the first possible opportunity, or it will be waived. *Trest v. Cain*, 522 U.S. 87, 89 (1997)(holding that state's failure to raise procedural default normally constitutes waiver of the default); *Gray v. Netherland*, 518 U.S. 152, 166 (1996)(holding that procedural default is normally an affirmative defense that will be waived if not raised). In other sections of this order, this Court has been willing to *sua sponte* recognize a procedural default not expressly raised by respondent where respondent attempted to raise *some* procedural default, but simply raised the wrong one; where respondent subsequently raised the correct procedural default in his reply to petitioner's opposition; and where the specific procedural default had already been extensively briefed by the parties such that petitioner could not be said to have been unfairly disadvantaged by the Court's *sua sponte* recognition. Those circumstances are not present with respect to ground nine, sub-part (C). For one thing, respondent did not address ground nine, sub-part (C) at all in his motion to dismiss. That is, respondent raised no procedural default defense at all. Further, even when put on notice by petitioner's opposition that he had failed altogether to address ground nine, sub-part (C) in his motion to dismiss, (Doc.# 23), respondent failed again to address the claim in his reply, (Doc.# 35). That being the case, this Court is of the view that petitioner would be unfairly disadvantaged if the Court were to recognize any procedural default against ground nine, sub-

129

part (C), when respondent neglected in the first instance to argue procedural default in his motion to dismiss, and then failed in the second instance to argue procedural default in his reply.

For the foregoing reasons, this Court will not raise or recognize any procedural default against ground nine, sub-part (C). Accordingly, the Court concludes that ground nine, sub-part (C) is properly before the Court for a full review on the merits.

DD. Ground Nine, Sub-Part (D) – Prosecutorial Misconduct For Making Improper Arguments During The Mitigation Phase.

In ground nine, sub-part (D), petitioner argues that the prosecutor engaged in misconduct throughout the mitigation phase by drawing extraneous and irrelevant comparisons between Petitioner Stojetz and his family, by urging the jury to consider the public policy concerns surrounding the sole aggravating circumstance, and by incorrectly defining the weighing process so as to improperly shift the burden of proof to petitioner. (Petition, Doc.# 14, at ¶¶ 567-599). Although petitioner grouped all of these arguments under ground nine, sub-part (D), and did not further sub-divide them, a review of ground nine, sub-part (D) clearly reveals three distinct allegations – prosecutorial misconduct for drawing comparisons between petitioner and his family (¶¶ 567-573); prosecutorial misconduct for arguing the public policy concerns supporting the sole aggravating circumstance (¶¶ 574-581); and prosecutorial misconduct for improperly defining mitigation evidence and shifting the burden of proof to petitioner (¶¶ 582-599). Although the Court has frowned upon respondent's constant and confusing re-numbering of petitioner's claims, since the challenge in ground nine, sub-part (D) is so clearly divided between three distinct allegations, the Court will refer to allegations regarding the prosecutor drawing comparisons between petitioner and his siblings as ground nine, sub-part (D); allegations

regarding the prosecutor arguing public policy as ground nine, sub-part (E); and allegations regarding the prosecutor shifting the burden of proof to petitioner as ground nine, sub-part (F).

With the foregoing in mind, the Court turns its attention to ground nine, sub-part (D). Respondent argues that ground nine, sub-part (D) is procedurally defaulted because no contemporaneous objection was raised at trial.  (Doc.# 23, at 12-13).

Petitioner appears to concede that this claim is subject to procedural default under Ohio's contemporaneous objection rule, but raises a number of arguments for why the default should be excused.  (Doc.# 34, at 111-113).  First, petitioner argues that the he can demonstrate cause and prejudice to excuse the default because his trial attorneys performed unreasonably and to his prejudice in failing to object to the alleged misconduct.  (*Id*. at 111-112).  Second, petitioner argues that the failure of his appellate counsel to raise this claim was presented to the state courts in petitioner's Rule 26(B) "*Murnahan*" application to reopen his direct appeal.  (*Id*. at 113). Finally, petitioner argues that the default should be excused under the "actual innocence" exception.

Initially, with respect to petitioner's allegations regarding the implication of his Rule 26(B) "*Murnahan*" application, to the extent he is arguing that the prosecutorial misconduct claim set forth in ground nine, sub-part (D) – improperly drawing comparisons between petitioner and his siblings – is properly before the Court because it was presented to the state courts in his Rule 26(B) "*Murnahan*" application, petitioner's argument must be rejected.  For reasons discussed more fully *supra* in section IV.(D), a Rule 26(B) application is the procedure in Ohio for raising claims of ineffective assistance of appellate counsel.  Consequently, the only claims that are preserved in a Rule 26(B) application are claims of ineffective assistance of

131

appellate counsel.[27]

Turning to the *Maupin* test, the Court finds that petitioner violated Ohio's contemporaneous objection rule when he failed to object at trial to the prosecutor's alleged misconduct during the mitigation phase in improperly drawing comparisons between petitioner and his siblings.  The Supreme Court of Ohio clearly and expressly enforced this rule on direct appeal when it held that the claim had been waived for all but plain error.  (App. Vol. III, at 153-54).  Further, the Court has already determined that Ohio's contemporaneous objection rule is an adequate and independent state ground upon which to deny relief.

Having determined that ground nine, sub-part (D) is subject to procedural default, the Court turns its attention to petitioner's argument that ineffective assistance of trial counsel constitutes cause and prejudice sufficient to excuse the default.  Specifically, petitioner argues that his trial attorneys performed unreasonably and to his prejudice when they failed to object to the prosecutor's alleged misconduct during the mitigation phase in drawing comparisons between petitioner and his family members.  As respondent points out, ruling on petitioner's cause-and-prejudice argument will call upon the Court to rule on the trial counsel ineffectiveness claim set forth in ground one, sub-part (F), paragraph 272.[28]  Because ground one, sub-part (F), paragraph 272 is properly before the Court for a full review on the merits, as conceded by respondent in both his motion to dismiss and reply, and because the parties have not yet

_____

[27]     The Court notes that petitioner argued in the second proposition of law in his Rule 26(B) application that his appellate attorneys were ineffective for failing to raise a claim on direct appeal challenging trial counsel's failure to object to the prosecutor's alleged misconduct in, among other things, drawing comparisons between petitioner and his siblings.

[28]     Respondent refers to this trial counsel ineffectiveness claim as ground one, sub-part (R), and appears to concede that it is properly before the Court.  (Doc.# 23, at 5).  It is actually ground one, sub-part (F), paragraph 272, as set forth in the petition.

132

submitted their merits briefs, the Court will defer consideration of the instant cause-and-prejudice argument until it rules on the trial counsel ineffectiveness claim set forth in ground one, sub-part (F), paragraph 272.

Beyond the four-part *Maupin* test, petitioner argues that the default of ground nine, sub-part (D) can be excused under the "actual innocence" exception.  For reasons discussed more fully in Section IV(C)(3), the Court will defer consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in his second ground for relief.

For the foregoing reasons, the Court concludes that ground nine, sub-part (D) is subject to procedural default.  The Court will defer consideration of petitioner's argument that trial counsel ineffectiveness constitutes cause and prejudice sufficient to excuse the default until after the parties submit their merits briefs and the Court considers the trial counsel ineffectiveness claim set forth in ground one, sub-part (F), paragraph 272.  Further, the Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence.  For the foregoing reasons, respondent's motion to dismiss ground nine, sub-part (D) as procedurally defaulted is **DENIED**, subject to reconsideration once the Court addresses the trial counsel ineffectiveness claim set forth in ground one, sub-part (F), paragraph 272, and the claim of actual innocence set forth in petitioner's second ground for relief.[29]

---

[29]     As to other claims, where the Court has deferred consideration of petitioner's argument that he can satisfy the "gateway" actual innocence exception to procedural default, the Court has granted respondent's motion to dismiss those claims, subject to reconsideration, because the Court otherwise found that all four parts of the *Maupin* test had been met and that respondent had tentatively sustained his burden of establishing the procedural default.

EE.  Ground Nine, Sub-Part (E) – Prosecutorial Misconduct For Arguing Public Policy Behind
Sole Aggravating Circumstance.

In ground nine, sub-part (E), petitioner argues that the prosecutor committed misconduct
by urging the jury to consider the public policy interests supporting the sole aggravating
circumstance.  (Petition, Doc.# 14, at ¶¶ 574-581).  Specifically, petitioner argues that the
prosecutor urged the jury to consider irrelevant evidence, thereby violating petitioner's right to
individualized sentencing, when he (the prosecutor) remarked that "the State has an interest in
keeping the peace at a correctional institution."  (Petition, Doc.# 14, at ¶ 574).

Respondent argues that ground nine, sub-part (E) is procedurally defaulted because no
contemporaneous objection was raised at trial.  (Doc.# 23, at 13).

Petitioner appears to concede that this claim is subject to procedural default under Ohio's
contemporaneous objection rule, but raises a number of arguments for why the default should be
excused.  (Doc.# 34, at 111-113).  First, petitioner argues that the he can demonstrate cause and
prejudice to excuse the default because his trial attorneys performed unreasonably and to his
prejudice in failing to object to the alleged misconduct.  (*Id*. at 111-112).  Second, petitioner
argues that the failure of his appellate counsel to raise this claim was presented to the state courts
in petitioner's Rule 26(B) "*Murnahan*" application to reopen his direct appeal.  (*Id*. at 113).
Finally, petitioner argues that the default should be excused under the "actual innocence"
exception.

_____

With respect to the instant claim, the Court has deferred consideration of not only petitioner's
argument that he can satisfy the "gateway" actual innocence exception to procedural default, but also petitioner's
argument that he can satisfy the cause-and-prejudice exception to procedural default.  Thus, this Court must deny
respondent's motion to dismiss this claim, subject to reconsideration, because the Court cannot find that all four
parts of the *Maupin* test have been met.

Initially, with respect to petitioner's allegations regarding the implication of his Rule 26(B) "*Murnahan*" application, to the extent he is arguing that the prosecutorial misconduct claim set forth in ground nine, sub-part (E) – improperly arguing the public policy behind the aggravating circumstance – is properly before the Court because it was presented to the state courts in his Rule 26(B) "*Murnahan*" application, petitioner's argument must be rejected.  For reasons discussed more fully *supra* in section IV.(D), a Rule 26(B) application is the procedure in Ohio for raising claims of ineffective assistance of appellate counsel.  Consequently, the only claims that are preserved in a Rule 26(B) application are claims of ineffective assistance of appellate counsel.[30]

Turning to the *Maupin* test, the Court finds that petitioner violated Ohio's contemporaneous objection rule when he failed to object at trial to the prosecutor's alleged misconduct during the mitigation phase in improperly urging the jury to consider as relevant its sentencing deliberations the public policy behind the sole aggravating circumstance.  The Supreme Court of Ohio clearly and expressly enforced this rule on direct appeal when it held that the claim had been waived for all but plain error.  (App. Vol. III, at 153-54).  Further, the Court has already determined that Ohio's contemporaneous objection rule is an adequate and independent state ground upon which to deny relief.

Having determined that ground nine, sub-part (E) is subject to procedural default, the Court turns its attention to petitioner's argument that ineffective assistance of trial counsel constitutes cause and prejudice sufficient to excuse the default.  Specifically, petitioner argues

---

[30]     The Court notes that petitioner argued in the second proposition of law in his Rule 26(B) application that his appellate attorneys were ineffective for failing to raise a claim on direct appeal challenging trial counsel's failure to object to the prosecutor's alleged misconduct in, among other things, urging the jury to consider the public policy behind the aggravating circumstance.

135

that his trial attorneys performed unreasonably and to his prejudice when they failed to object to the prosecutor's alleged misconduct during the mitigation phase in urging the jury to consider the public policy supporting the aggravating circumstance in petitioner's case.  The Court is not permitted to consider as "cause" any claim of counsel ineffectiveness that petitioner did not properly present to the state courts.  *See Edwards v. Carpenter, supra*, 529 U.S. at 452-53.  The Court has already determined that the trial counsel ineffectiveness claim offered by petitioner as "cause" was itself defaulted.  See section IV.(F), *supra*, discussing ground one, sub-part (F), paragraph 271.  Because this Court cannot, accordingly, consider petitioner's "cause" argument, the Court concludes that petitioner has not demonstrated cause and prejudice to excuse the default of ground nine, sub-part (E).

Beyond the four-part *Maupin* test, petitioner argues that the default of ground nine, sub-part (E) can be excused under the "actual innocence" exception.  For reasons discussed more fully in Section IV(C)(3), the Court will defer consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in his second ground for relief.

For the foregoing reasons, the Court concludes that ground nine, sub-part (E) is procedurally defaulted and that petitioner has failed to demonstrate cause and prejudice to excuse the default.  The Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence.  For the foregoing reasons, respondent's motion to dismiss ground nine, sub-part (E) as procedurally defaulted is **GRANTED**, subject to reconsideration once the Court addresses the claim of actual

innocence set forth in petitioner's second ground for relief.[31]

  FF.  <u>Ground Nine, Sub-Part (F) – Prosecutorial Misconduct For Shifting The Burden Of Proof To Petitioner During Mitigation</u>.

      In ground nine, sub-part (F), petitioner argues that the prosecutor committed misconduct in improperly defining mitigation evidence and in shifting the burden of proof to petitioner. (Petition, Doc.# 14, at ¶¶ 582-599).

      Respondent argues that ground nine, sub-part (F) is procedurally defaulted because no contemporaneous objection was raised at trial.  (Doc.# 23, at 13-14).

      Petitioner appears to concede that this claim is subject to procedural default under Ohio's contemporaneous objection rule, but raises a number of arguments for why the default should be excused.  (Doc.# 34, at 111-113).  First, petitioner argues that the he can demonstrate cause and prejudice to excuse the default in that his trial attorneys performed unreasonably and to his prejudice by failing to object to the alleged misconduct.  (*Id*. at 111-112).  Second, petitioner argues that the failure of his appellate counsel to raise this claim was presented to the state courts in petitioner's Rule 26(B) "*Murnahan*" application to reopen his direct appeal.  (*Id*. at 113). Finally, petitioner argues that the default should be excused under the "actual innocence" exception.

      Initially, with respect to petitioner's allegations regarding the implication of his Rule 26(B) "*Murnahan*" application, to the extent he is arguing that the prosecutorial misconduct claim set forth in ground nine, sub-part (F) – improperly defining mitigation evidence and

---

[31]     The Court has granted respondent's motion to dismiss, subject to reconsideration, rather than denying respondent's motion to dismiss, subject to reconsideration, because the Court otherwise finds that all four parts of the *Maupin* test had been met and that respondent had tentatively sustained his burden of establishing the procedural default.

improperly shifting the burden of proof to petitioner – is properly before the Court because it was presented to the state courts in his Rule 26(B) "*Murnahan*" application, petitioner's argument must be rejected.  For reasons discussed more fully *supra* in section IV.(D), a Rule 26(B) application is the procedure in Ohio for raising claims of ineffective assistance of appellate counsel.  Consequently, the only claims that are preserved in a Rule 26(B) application are claims of ineffective assistance of appellate counsel.[32]

Turning to the *Maupin* test, the Court finds that petitioner violated Ohio's contemporaneous objection rule when he failed to object at trial to the prosecutor's alleged misconduct during the mitigation phase in improperly defining mitigation evidence and improperly shifting the burden of proof to petitioner.  The Supreme Court of Ohio clearly and expressly enforced this rule on direct appeal when it held that the claim had been waived for all but plain error.  (App. Vol. III, at 153-54).  Further, the Court has already determined that Ohio's contemporaneous objection rule is an adequate and independent state ground upon which to deny relief.

Having determined that ground nine, sub-part (F) is subject to procedural default, the Court turns its attention to petitioner's argument that ineffective assistance of trial counsel constitutes cause and prejudice sufficient to excuse the default.  Specifically, petitioner argues that his trial attorneys performed unreasonably and to his prejudice when they failed to object to the prosecutor's alleged misconduct during the mitigation phase in improperly defining mitigation and improperly shifting the burden of proof to petitioner.  The Court is not permitted

---

[32]    The Court notes that petitioner argued in the second proposition of law in his Rule 26(B) application that his appellate attorneys were ineffective for failing to raise a claim on direct appeal challenging trial counsel's failure to object to the prosecutor's alleged misconduct in, among other things, improperly defining mitigation evidence and improperly shifting the burden of proof to petitioner.

to consider as "cause" any claim of counsel ineffectiveness that petitioner did not properly present to the state courts. *See Edwards v. Carpenter, supra*, 529 U.S. at 452-53. The trial counsel ineffectiveness claim offered by petitioner as "cause" is set forth in the petition as ground one, sub-part (F), paragraph 274. Respondent alleges that this claim of trial counsel ineffectiveness is defaulted because it was never presented to the state courts, although respondent concedes that he failed to raise this procedural default argument in his motion to dismiss when he raised procedural default arguments against other components of ground one, sub-part (F). (Doc.# 35, at 27-29 n.5). Respondent urges the Court to find that the trial counsel ineffectiveness claim is procedurally defaulted in spite of respondent's failure to argue procedural default against the claim. The Court declines to do so.

The Court has noted repeatedly throughout this order that procedural default is an affirmative defense that must be raised by the state at the first possible opportunity, or it will be waived. *Trest v. Cain*, 522 U.S. 87, 89 (1997)(holding that state's failure to raise procedural default normally constitutes waiver of the default); *Gray v. Netherland*, 518 U.S. 152, 166 (1996)(holding that procedural default is normally an affirmative defense that will be waived if not raised). In other sections of this order, this Court has been willing to *sua sponte* recognize a procedural default not expressly raised by respondent where respondent attempted to raise *some* procedural default, but simply raised the wrong one; where respondent subsequently raised the correct procedural default in his reply to petitioner's opposition; and where the specific procedural default had already been extensively briefed by the parties such that petitioner could not be said to have been unfairly disadvantaged by the Court's *sua sponte* recognition. Those circumstances are not present with respect to the trial counsel ineffectiveness claim offered as

139

cause to excuse ground nine, sub-part (F).

As noted *supra*, the trial counsel ineffectiveness claim offered as "cause" herein is set forth in the petition as ground one, sub-part (F), paragraph 274. When respondent raised procedural default arguments against ground one, sub-part (F), he argued that only two components were procedurally defaulted, *i.e.*, paragraphs 269 and 271. (Doc.# 23, at 6). He neglected to argue that paragraph 274 was procedurally defaulted. This Court is of the view that petitioner would be unfairly disadvantaged if the Court were to recognize any procedural default against this trial counsel ineffectiveness claim, either as the free-standing claim set forth in ground one, sub-part (F), paragraph 274 or as "cause" to excuse the default of ground nine, sub-part (F).

Because the Court will not recognize any procedural default against the trial counsel ineffectiveness claim set forth in ground one, sub-part (F), paragraph 274, the Court is free to consider that argument as "cause" for the default of the prosecutorial misconduct claim set forth in ground nine, sub-part (F). And because ground one, sub-part (F), paragraph 274, is properly before the Court for a full review on the merits, and because the parties have not yet submitted their merits briefs, the Court will defer consideration of the instant cause-and-prejudice argument until it rules on the trial counsel ineffectiveness claim set forth in ground one, sub-part (F), paragraph 274.

Beyond the four-part *Maupin* test, petitioner argues that the default of ground nine, sub-part (F) can be excused under the "actual innocence" exception. For reasons discussed more fully in Section IV(C)(3), the Court will defer consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in

140

his second ground for relief.

      For the foregoing reasons, the Court concludes that ground nine, sub-part (F) is subject to procedural default.  The Court will defer consideration of petitioner's argument that trial counsel ineffectiveness constitutes cause and prejudice sufficient to excuse the default until after the parties submit their merits briefs and the Court considers the trial counsel ineffectiveness claim set forth in ground one, sub-part (F), paragraph 274.  Further, the Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence.  For the foregoing reasons, respondent's motion to dismiss ground nine, sub-part (F) as procedurally defaulted is **DENIED**, subject to reconsideration once the Court addresses the trial counsel ineffectiveness claim set forth in ground one, sub-part (F), paragraph 274, and the claim of actual innocence set forth in petitioner's second ground for relief.[33]

  GG.  Ground Ten – State Improperly Withheld Exculpatory, Mitigation, And/Or Impeachment Evidence.

      In ground ten, petitioner argues that the state withheld exculpatory, mitigation, and/or impeachment evidence from defense counsel in violation of *Brady v. Maryland*, 373 U.S. 83

---

[33]      In other claims, where the Court has deferred consideration of petitioner's argument that he can satisfy the "gateway" actual innocence exception to procedural default, the Court has granted respondent's motion to dismiss those claims, subject to reconsideration, because the Court otherwise found that all four parts of the *Maupin* test had been met and that respondent had tentatively sustained his burden of establishing the procedural default.

      With respect to the instant claim, where the Court has deferred consideration of not only petitioner's argument that he can satisfy the "gateway" actual innocence exception to procedural default, but also petitioner's argument that he can satisfy the cause-and-prejudice exception to procedural default, this Court must deny respondent's motion to dismiss this claim, subject to reconsideration, because the Court cannot find that all four parts of the *Maupin* test have been met.

(1963).  (Petition, Doc.# 14, at ¶¶ 602-624).  Specifically, petitioner argues that he learned

during postconviction proceedings that the prosecutor and Sergeant Downey of the Ohio State

Highway Patrol turned over an edited form of Sergeant Downey's investigative report.  Sergeant

Downey's original report was 22 pages, while the report presented to petitioner's defense

counsel was just 15 pages.  Omitted from the report, according to petitioner, were statements by

Sidney Taylor, Brandon Hill, and Roman Ward.  According to petitioner, Sidney Taylor said in

his omitted statement that he saw inmate Wierzgac, not petitioner, stab Damico Watkins.

(Petition, Doc.# 14, at ¶ 615).  Further, according to petitioner, Brandon Hill said in his omitted

statement that he saw only inmate Bishop stab Watkins and only saw Bishop on the upper tier of

Adams A were Watkins died.  (Petition, Doc.# 14, at ¶ 616).  Finally, according to petitioner,

Roman Ward said in his omitted statement that inmate Bishop and inmate Bowling were the men

who entered Watkins's cell and were the ones who did most of the stabbing.  (Petition, Doc.# 14,

at 618).

     Respondent raises two different procedural default arguments against petitioner's claim.

As to the omission of Sidney Taylor's statement from Downey's report, respondent argues that

petitioner's claim is procedurally defaulted because it was not fairly presented to the state courts.

(Doc.# 23, at 16, referencing Ground Ten, Sub-Part (B)).  Specifically, respondent argues that,

although petitioner presented a *Brady* claim to the state courts in his postconviction action

regarding Downey's report, nowhere in that claim did petitioner mention the omission of Sidney

Taylor's statement.  As to the omission of statements by Brandon Hill and Roman Ward from

Downey's report, respondent argues that those statements were included in the *Brady* claim that

petitioner presented to the state trial court during postconviction, but that petitioner committed

procedural default when he failed to prosecute his appeal to the state court of appeals from the trial court's decision rejecting his postconviction action. (Doc.# 23, at 21, referencing Ground Ten, Sub-Parts (A) and (C)).

Petitioner offers a number of arguments in response. As to respondent's assertion that the component of the claim regarding Sidney Taylor's statement was not fairly presented, petitioner argues that the emphasis of the *Brady* claim that he presented to the state courts in postconviction was that the State had improperly redacted Sergeant Downey's report before providing it to defense counsel; that argument, according to petitioner, was fairly presented to the state courts, even if it did not specifically include reference to Sidney Taylor's omitted statement. (Doc.# 34, at 114).

Even assuming that petitioner's argument is correct, especially in light of the Supreme Court's decision in *Banks v. Dretke*, 540 U.S. 668, 674-75 (2004),[34] it is immaterial because petitioner subsequently defaulted the *Brady* claim that he raised in his postconviction action when he failed to prosecute an appeal to the state court of appeals.

Petitioner raised the substance of the *Brady* claim set forth in his tenth ground for relief as the sixth cause of action in his postconviction petition. In the third amendment to his postconviction petition, he included additional evidence and arguments in support of that *Brady* claim. (App. Vol. IV, at 24-25, 254). Regarding respondent's argument that petitioner defaulted

---

[34]    Petitioner never included in the *Brady* claim that he presented to the state courts in postconviction arguments about the omission of Sidney Taylor's statement. In *Banks*, the Supreme Court remarked that when the prosecution conceals significant exculpatory evidence and repeatedly asserts that all exculpatory evidence has been disclosed, it normally is incumbent upon the state to set the record straight, not the petitioner to uncover the evidence. *Banks, supra*, 540 U.S. at 674-75. Under that case, petitioner possibly could be forgiven for failing to include in his *Brady* claim his arguments about the omission from Sergeant Downey's report of Sidney Taylor's statement, if it could be demonstrated that the State continued to conceal Mr. Taylor's statement even after other previously redacted portions of Sergeant Downey's were disclosed.

the *Brady* claim that he raised in postconviction when he failed to prosecute an appeal to the state court of appeals from the trial court's decision rejecting his postconviction action, petitioner offers a number of arguments for why that default should not be enforced.  (Doc.# 34, at 114-116).  Specifically, petitioner argues that the State waived any reliance on the procedural default when the prosecutor declined to oppose petitioner's efforts to persuade the state court of appeals to reopen his postconviction appeal; that ineffective assistance of postconviction counsel either renders the procedural default inadequate or constitutes cause and prejudice to excuse the default; and that the default should be excused under the "actual innocence" exception or to avoid a miscarriage of justice.  All of these arguments have been considered and rejected by this Court, save petitioner's "actual innocence" argument, of which the Court will defer consideration until it rules on the actual innocence claim set forth in petitioner's second ground for relief.

Turning to the first part of the *Maupin* test, the Court finds, for reasons discussed more fully *supra* in section IV(B)(1), that when petitioner failed during his postconviction appeal to file his appellate brief in accordance with the appellate court's scheduling order and as permitted by numerous extensions of time, he failed to prosecute an appeal in violation of the Ohio Rules of Appellate Procedure and *State v. Nichols*.  Further, the state court of appeals clearly and expressly dismissed petitioner's appeal in his postconviction proceedings on the ground that petitioner failed to file a brief.  (App. Vol. VII, at 53).  Thus, the second part of the *Maupin* test has been met.

The third part of the *Maupin* test requires the Court to determine whether the state procedural rule at issue is an adequate and independent ground upon which to deny habeas

144

corpus review.  The Court has determined that it is.  Petitioner argues that the default at issue

fails the adequate and independent requirement because the State waived reliance on the default

when the prosecutor declined to oppose petitioner's motion asking the state court of appeals to

reopen his postconviction appeal and because Ohio's postconviction remedy is inadequate.  The

Court, after careful consideration, has already rejected those arguments in section IV(B)(1)(c).

       To the extent that petitioner offers ineffective assistance of postconviction counsel either

as a reason for why the default is not an adequate state ground upon which to deny relief or as

cause and prejudice to excuse the default, this Court determined in section IV(B)(1)(d) that there

is no right to effective assistance of postconviction counsel and that, as a result, ineffective

assistance of postconviction counsel cannot defeat the adequacy of the default or constitute cause

and prejudice to excuse a procedural default.

       Finally, petitioner argues that the procedural default should be excused under either the

"actual innocence" exception or to avoid a "miscarriage of justice."  For reasons discussed more

fully in Section IV(C)(3), the Court will defer consideration of petitioner's "gateway" actual

innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in

his second ground for relief.  Further, as this Court concluded in Section IV(C)(4), there is no

"miscarriage of justice" exception to procedural default beyond the "actual innocence" exception

noted above.

       For the foregoing reasons, the Court concludes that petitioner's tenth ground for relief is

procedurally defaulted and that petitioner has failed to demonstrate cause and prejudice to

excuse the default.  The Court will defer consideration of petitioner's argument that he can

satisfy the "actual innocence" exception to procedural default until after the parties submit their

merit briefs and the Court considers petitioner's free-standing claim of actual innocence.  For

that reason, respondent's motion to dismiss ground ten as procedurally defaulted is **GRANTED**,

subject to reconsideration once the Court addresses the claim of actual innocence set forth in

petitioner's second ground for relief.

HH.  Ground Eleven – Ineffective Assistance Of Appellate Counsel

In his eleventh ground for relief, petitioner argues that the attorneys who represented him

in his direct appeal of right performed unreasonably and to his prejudice by failing to raise

certain issues on direct appeal.  (Petition, Doc.# 14, at ¶¶ 625-644).  In this claim, petitioner

presents not only an expansive discussion of an appellate attorney's duties in a capital case, but

also a "non-exhaustive list" of issues that his appellate attorneys were ineffective for failing to

present.  Regarding the "non-exhaustive list" of issues that his appellate attorneys failed to

present, there are ten sub-parts to petitioner's claim.  (Petitioner lists the errors that appellate

counsel failed to raise as A through K, but neglected to include "D.").

Respondent argues that sub-parts A, B, C, E, G, H, I, and J are procedurally defaulted

because they were never presented to the state courts.  (Doc.# 23, at 7).  Respondent argues that

sub-parts D[35] and F *might* be procedurally defaulted; specifically, respondent asserts that he

cannot determine whether the general allegations set forth in those sub-parts were presented to

the state courts in petitioner's Rule 26(B) "*Murnahan*" application for reopening.  (Doc.# 23, at

8).  Thus, respondent appears to be arguing that any of petitioner's appellate counsel

ineffectiveness claims that were raised in his Rule 26(B) "*Murnahan*" application are properly

---

[35]     As the Court will explain, the numbers and letters assigned by respondent to ground eleven bear no
relation to the numbers and letters assigned by petitioner in the habeas corpus petition.  For instance, respondent
refers to sub-part D; however, petitioner did not include a sub-part D.

146

before this Court for a review on the merits.

Initially, the Court is constrained once again to begin its discussion by deciphering and explaining respondent's re-numbering of petitioner's claims.  In ground eleven, sub-part (E), petitioner argues that his appellate attorneys were ineffective for failing to raise a claim challenging trial counsel's ineffectiveness for failing to object to the following allegedly improper arguments by the prosecutor: misrepresenting testimony, arguing victim impact evidence, drawing improper comparisons between petitioner and his siblings, urging the jury to consider public policy supporting the aggravating circumstance, and misdefining mitigation evidence so as to shift the burden of proof to petitioner.  (Petition, Doc.# 14, at ¶ 628, sub-part (E), citing ground nine, sub-part (D), *i.e.*, paragraphs 567-599).  Respondent refers to this claim as ground eleven, sub-part (D)[36], instead of referring to it as ground eleven, sub-part (E).  The Court will defer to petitioner's own numbering of his own claims, and refer to this claim as ground eleven, sub-part (E).  Respondent shall do the same from now on.

Further, respondent avers that he cannot determine whether ground eleven, sub-part (E) is procedurally defaulted.  Specifically, respondent complains that petitioner raised a general claim of appellate counsel ineffectiveness for the failure to raise a claim challenging trial counsel's failure to object to improper arguments on the part of the prosecutor, and that petitioner failed to enumerate the specific improper arguments allegedly made by the prosecutor to which trial counsel failed to object.  (Doc.# 23, at 8; Doc.# 35, at 16).  Respondent's confusion is curious.  Although petitioner did not list specific arguments in paragraph 628, sub-part (E), he *did* reference the prosecutorial misconduct claims that he had set forth earlier in ground nine of his

---

[36]     Petitioner neglected to include a sub-part (D) to his eleventh ground for relief, skipping from sub-part (C) to sub-part (E).

147

petition – namely, misrepresenting testimony, arguing victim impact evidence, drawing improper comparisons between petitioner and his siblings, urging the jury to consider the public policy interests supporting the aggravating circumstance, and misdefining mitigation evidence so as to shift the burden of proof to petitioner. These are the allegations set forth in ground nine, sub-part (D), and the Court advises respondent that they can be located in the habeas corpus petition at paragraphs 567-599.

In ground eleven, sub-part (G), petitioner argues that his appellate attorneys were ineffective for failing to raise a claim challenging trial counsel's ineffectiveness for failing to request a mistrial when the jury was exposed to suppressed and inaccurately characterized evidence. (Petition, Doc.# 14, at ¶ 628, sub-part (G)). Respondent refers to this claim as ground eleven, sub-part (F), instead of referring to it as ground eleven, sub-part (G). The Court will defer to petitioner's own numbering of his own claims, and refer to this claim as ground eleven, sub-part (G). Respondent shall do the same from now on.

Further, respondent avers that he cannot determine whether ground eleven, sub-part (G) is procedurally defaulted. Specifically, respondent complains that he cannot determine to what improper evidence the jury was exposed and that should have prompted trial counsel to seek a mistrial. (Doc.# 23, at 8; Doc.# 35, at 16). Again, respondent's confusion is curious. In ground eleven, sub-part (G), petitioner clearly references the arguments that he had set forth in ground six of the petition – namely, that trial counsel should have requested a mistrial after the jury was exposed (through an article appearing in a local newspaper) to evidence that had been suppressed and that inaccurately described in the newspaper article. These allegations are set forth in ground six, and the Court advises respondent that they can be located in the habeas corpus

148

petition at paragraphs 457-482.

Now that this confusion hopefully has been cleared up, the Court will turn its attention to respondent's arguments that ground eleven, sub-parts A, B, C, F, H, I, J, and K are procedurally defaulted because they were never presented to the state courts and that ground eleven, sub-parts E and G are procedurally defaulted to the extent that they were not presented to the state courts in petitioner's Rule 26(B) "*Murnahan*" application for reopening.

The first part of the *Maupin* test requires the Court to determine whether a procedural rule is applicable to petitioner's claim and, if so, whether he violated that rule. Under Ohio R. App. P. 26(B) and Rule XI, Section 5 of the Rules of Practice of the Supreme Court, claims of ineffective assistance of appellate counsel must be presented to the Supreme Court of Ohio in an application for reopening of the direct appeal within ninety days of the decision rejecting the direct appeal. *See also State v. Murnahan*, 63 Ohio St. 3d 60, 584 N.E.2d 1204 (1992). Petitioner filed a Rule 26(B) "*Murnahan*" application for reopening of his direct appeal in the Supreme Court of Ohio on May 18, 1999, well within the ninety-day time limit. (App. Vol. III, at 182). Further, the Supreme Court of Ohio denied his application on the merits – albeit, with a summary one-line order. (App. Vol. III, at 214).

However, it appears that not every allegation of appellate counsel ineffectiveness set forth in ground eleven of the habeas corpus petition was presented to the state courts in petitioner's Rule 26(B) application for reopening. Specifically, it appears that the allegations of appellate counsel ineffectiveness set forth in ground eleven, sub-parts A, B, C, F, G, H, I, J, and K were not presented to the state courts in petitioner's Rule 26(B) application for reopening. With respect to the allegations of appellate counsel ineffectiveness set forth in ground eleven,

149

sub-part (E), only the following allegations were presented in petitioner's Rule 26(B) application

for reopening:

> (1) trial counsel ineffectiveness for failing to object to prosecutorial misconduct, to wit: misrepresenting testimony during trial phase closing argument;
>
> (2) trial counsel ineffectiveness for failing to object to prosecutorial misconduct, to wit: drawing extraneous comparisons between petitioner and others, and urging the jury to consider the public policy concerns supporting the aggravating circumstance in petitioner's case during the mitigation phase closing argument;
>
> (3) trial counsel ineffectiveness for failing to object to prosecutorial misconduct, to wit: misleading the jury on the definition of "mitigation" during mitigation phase closing argument; and
>
> (4) trial counsel ineffectiveness for failing to object to prosecutorial misconduct, to wit: shifting the burden of proof to petitioner during mitigation phase closing argument.

(App. Vol. III, at 186). Not presented to the state courts was petitioner's allegation in ground

eleven, sub-part (E) that his appellate attorneys were ineffective for failing to raise a claim

challenging trial counsel's ineffectiveness in failing to object to the prosecutor's arguments

concerning victim impact evidence.

Petitioner violated a state procedural rule when he failed to present to the Supreme Court

of Ohio in his Rule 26(B) application for reopening certain appellate counsel ineffectiveness

claims that he seeks to present herein. Thus, the Court finds that the first part of the *Maupin* test

has been met as to ground eleven, sub-parts A, B, C, F, G, H, I, J, and K. The Court further finds

that the first part of the *Maupin* test has been met as to ground eleven, sub-part (E), ***only*** as to

petitioner's argument that his appellate attorneys were ineffective for failing to raise a claim

challenging trial counsel's failure to object to the prosecutor's alleged misconduct in arguing

victim impact evidence; it does not appear that this particular claim of appellate counsel

ineffectiveness was presented to the Supreme Court of Ohio in petitioner's Rule 26(B) application for reopening.

Turning to the second part of the *Maupin* test, *i.e.*, whether the state courts clearly and expressly enforced the procedural rule, the Court deems this part of the test to have been met because the state courts were never given the opportunity to enforce the procedural rule.

The third part of the *Maupin* test requires the Court to determine whether the procedural rule is an adequate and independent ground upon which to deny relief. Petitioner argues that this rule is inadequate in general and as applied to him. (Doc.# 34, at 117, 7-10). First, citing *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005), *Petition for Certiorari Filed*, 74 U.S.L.W. 3050 (Jul. 14, 2005)(NO. 05-101), and *Landrum v. Anderson*, 185 F.Supp.2d 868 (S.D. Ohio 2002), petitioner argues that "the only avenue to challenge the performance of appellate counsel, Ohio's *Murnahan* scheme, is generally an inadequate and ineffective remedy to support a procedural bar." (Doc.# 34, at 117). In this regard, petitioner argues that the impact and meaning of a *Murnahan* application has been in a constant state of flux. Second, petitioner also argues that the summary nature of the Supreme Court of Ohio's denial of his Rule 26(B) application rendered the remedy inadequate. (Doc.# 34, at 8-9). Petitioner's arguments are specious.

As a reminder, a procedural rule is adequate if it is firmly established and regularly followed by the state courts. *See, e.g., Ford v. Georgia*, 498 U.S. 411 (1991). It is true, as petitioner states, that the issue of whether Rule 26(B) applications are an adequate remedy within the meaning of *Maupin* has been in a constant state of flux in the Sixth Circuit. However, the particular issue that has been under constant debate concerns the provision within the rule requiring applicants to demonstrate "good cause" for filing Rule 26(B) applications outside of

the ninety-day limit.  That issue is not implicated in petitioner's case.  He filed a timely Rule 26(B) application; he simply failed to include in it all of the appellate counsel ineffectiveness claims that he seeks to present herein.

Thus, petitioner's reliance on *Richey v. Mitchell, supra*, as well as the argument that case law surrounding the adequacy of Rule 26(B) applications has been in flux, is misplaced.  In *Richey v. Mitchell, supra*, 395 F.3d at 679-680, the Sixth Circuit held that the Rule 26(B) "*Murnahan*" remedy was not adequate in Petitioner Richey's case because at the time that Petitioner Richey filed his untimely Rule 26(B) application, the "good cause" requirement for filing untimely applications had not yet been applied with any consistency.  The Sixth Circuit clarified that it had found the Rule 26(B) to be inadequate – not in general and as to all cases – but only as to Petitioner Richey's case.  *Richey, supra*, 395 F.3d at 680 n.8 ("we find that Rule 26(B) did not, *in Richey's case*, constitute an adequate state ground to deny his claims of ineffective assistance of appellate counsel...."  (emphasis added)).

In the instant case, petitioner did file a timely 26(B); he simply failed to include all claims in it.  Petitioner's arguments assailing the adequacy of Rule 26(B) applications as a remedy might be well taken had he actually raised the allegations set forth in ground eleven, sub-parts A, B, C, E (in part), F, G, H, I, J, and K in his Rule 26(B) application, or could at least point specifically to a manner in which a lack of consensus in the Ohio courts regarding the definition and application of the "good cause" requirement for filing untimely Rule 26(B) applications prevented him from including the allegations set forth in sub-parts A, B, C, E (in part), F, G, H, I, J, and K. But such is not the case.  For the same reasons, petitioner's argument that the Supreme Court of Ohio's summary denial of his own Rule 26(B) application renders the

152

remedy inadequate also fails. That argument does not explain why he was prevented him from including the allegations set forth in sub-parts A, B, C, E (in part), F, G, H, I, J, and K. That being so, petitioner's argument assailing the adequacy Ohio's Rule 26(B) remedy for the reasons that the rule has been in flux in the Sixth Circuit and that the Supreme Court of Ohio summarily denied his Rule 26(B) application must be rejected.

Regarding the adequacy of the Rule 26(B) remedy, petitioner also argues that the rule is inadequate as applied to him because the attorney who filed his Rule 26(B) application, John J. Gideon, had a conflict of interest that effectively resulted in a total denial of counsel in violation of petitioner's Sixth Amendment rights. This Court rejected that argument *supra* in section IV.(Q). Thus, the Court concludes that the state procedural rule at issue, Rule 26(B), is an adequate state ground upon which to deny relief.

The Court having found that ground eleven, sub-parts A, B, C, E (in part), F, G, H, I, J, and K are subject to procedural default, it is incumbent upon petitioner to demonstrate cause and prejudice to excuse the default. Petitioner offers no arguments in this regard.

Beyond the four-part *Maupin* test, petitioner argues that the procedural default should be excused under either the "actual innocence" exception or to avoid a "miscarriage of justice." (Doc.# 34, at 119-120). For reasons discussed more fully in section IV.(C)(3), the Court will defer consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in his second ground for relief. Further, as this Court concluded in Section IV.(C)(4), there is no "miscarriage of justice" exception to procedural default beyond the "actual innocence" exception noted above.

For the foregoing reasons, the Court concludes that ground eleven, sub-parts A, B, C, E

(in part), F, G, H, I, J, and K is procedurally defaulted and that petitioner has failed to demonstrate cause and prejudice to excuse the default.  The Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence.  For that reason, respondent's motion to dismiss ground eleven, sub-parts A, B, C, E (in part), F, G, H, I, J, and K as procedurally defaulted is **GRANTED**, subject to reconsideration once the Court addresses the claim of actual innocence set forth in petitioner's second ground for relief.

II.  <u>Ground Twelve – Inadequacy Of Ohio's Postconviction Process As A Corrective Remedy</u>

In his twelfth ground for relief, petitioner argues that Ohio's postconviction remedy is an inadequate corrective remedy rendering the entire death penalty scheme arbitrary and capricious. (Petition, Doc.# 14, at ¶¶ 645-709).

Respondent argues that petitioner's claim is procedurally defaulted because it was never raised in the state courts.  (Doc.# 23, at 7).

Petitioner concedes that he never presented this claim to the state courts, but argues that he was not required to do so because there is no avenue in the Ohio courts to raise such a claim. (Doc.#34, at 121).  Petitioner reasons that, "[b]ecause the failure of Ohio's post-conviction scheme is a systemic flaw that only impacts a defendant's case while going through the process, it is impossible to challenge the process while also going through the process."  (*Id*. at 121).  In the alternative, petitioner appears to argue that ineffective assistance of trial, appellate, and postconviction counsel constitutes cause and prejudice to excuse his failure to raise the claim. (*Id*. at 121-22).  Petitioner further argues in the alternative that any default should be excused

154

under the "actual innocence" exception or to avoid a miscarriage of justice. (*Id*.). The Court is constrained to reject petitioner's arguments.

The first part of the *Maupin* test requires the Court to determine whether a procedural rule is applicable to petitioner's claim and, if so, whether petitioner violated the rule. Petitioner argues that there is no state procedural rule requiring claims of this nature to be raised at the trial court level. Petitioner's argument is belied by case law. In *State v. Awan*, 22 Ohio St. 3d 120, syllabus, 489 N.E.2d 277 (1986), the Supreme Court of Ohio held that the failure to raise at the trial court level the issue of the constitutionality of a statute or its application, so long as the issue is apparent at the time of trial, constitutes a waiver of such issue when raised for the first time on appeal. A number of appellate courts in Ohio, following *Awan*, have held that the failure of a petitioner to raise at the trial court level the constitutionality of Ohio Rev. Code §2953.21 constitutes a waiver of that issue on appeal. *State v. McNeill*, 137 Ohio App. 3d 34, 44, 738 N.E.2d 23, 30-31 (Ohio App. 9 Dist. 2000); *State v. Awkal*, 1998 WL 827585, No. 73267 (Ohio App. 8 Dist. Nov. 25, 1998), at *3; *State v. Schmidt*, 1998 WL 351871, No. E-98-002 (Ohio App. 6 Dist. Jun. 19, 1998), at *1; *State v. Benner*, 1997 WL 549605, No. 18094 (Ohio App. 9 Dist. 1997). Thus, the Court is satisfied that there was a state procedural rule requiring petitioner to raise his claim challenging the constitutionality of Ohio's postconviction remedy at the trial court level and that petitioner violated the rule when he failed to do so.

The second part of the *Maupin* test requires the Court to determine whether the state courts actually enforced the procedural rule. The Court deems the second part of the *Maupin* test to have been met because the state courts, by virtue of petitioner's failure to raise this claim at all, were never given the opportunity to enforce the rule.

The Court further finds that the procedural rule is an adequate and independent state ground. The rule emerged as early as 1986 and is stated in clear terms. Having since been adopted by multiple courts, the rule has been consistently enforced in Ohio. The rule serves important state interests in judicial efficiency by encouraging litigants to raise claims challenging the adequacy of Ohio's postconviction process at a time and in a forum where such claims can most effectively be heard and remedied. Finally, the Court concludes that the procedural rule, *i.e.*, requiring claims challenging the adequacy of Ohio's postconviction process to be raised at the trial court level, does not rely on or otherwise implicate federal constitutional law.

The Court having determined that petitioner's twelfth ground for relief appears to be procedurally defaulted, and that the procedural default is an adequate and independent state ground upon which to deny relief, habeas corpus review is precluded absent a showing by petitioner of cause and prejudice to excuse the default. Petitioner appears to offer ineffective assistance of trial, appellate, and postconviction counsel. However, it does not appear that any of those claims of ineffective assistance were presented to the state courts and, as noted *supra*, this Court is precluded from considering as "cause" any claim of ineffective assistance that was not first properly presented to the state courts. *Edwards v. Carpenter, supra*, 529 U.S. at 452-53. Further, for reasons discussed more fully *supra* in section IV.(B)(1)(d), there is no right to effective assistance of postconviction counsel and, therefore, there is no way that a habeas petitioner can assert ineffective assistance of postconviction counsel as "cause" to excuse a procedural default.

Beyond the four-part *Maupin* test, petitioner argues that the procedural default should be

156

excused under either the "actual innocence" exception or to avoid a "miscarriage of justice."
(Doc.# 34, at 122). For reasons discussed more fully in Section IV.(C)(3), the Court will defer
consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's
"free-standing" actual innocence claim set forth in his second ground for relief. Further, as this
Court concluded in Section IV.(C)(4), there is no "miscarriage of justice" exception to
procedural default beyond the "actual innocence" exception noted above.

For the foregoing reasons, the Court concludes that petitioner's twelfth ground for relief
is procedurally defaulted and that petitioner has failed to demonstrate cause and prejudice to
excuse the default. The Court will defer consideration of petitioner's argument that he can
satisfy the "actual innocence" exception to procedural default until after the parties submit their
merit briefs and the Court considers petitioner's free-standing claim of actual innocence. For
that reason, respondent's motion to dismiss ground twelve as procedurally defaulted is
**GRANTED**, subject to reconsideration once the Court addresses the claim of actual innocence
set forth in petitioner's second ground for relief.

JJ. Ground Thirteen – Denial Of Fair Proportionality Review

In his thirteenth ground for relief, petitioner argues that he was denied his right to a fair
proportionality review in the state courts, as mandated by Ohio's death penalty statute, in
violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United
States Constitution. (Petition, Doc.# 14, at ¶¶ 710-768).

Respondent argues in his motion to dismiss that petitioner's claim is procedurally
defaulted because it was never presented to the state courts. (Doc.# 23, at 7). Petitioner counters
with a number of responses, including the argument that he preserved this constitutional claim

157

by raising it on direct appeal as his nineteenth proposition of law. (Doc.# 34, at 123).

Respondent agrees and, in his reply, expressly abandons his procedural default argument against this claim. (Doc.# 35, at 14). Accordingly, respondent's motion to dismiss ground thirteen is **DENIED**.

KK. <u>Ground Fourteen, Sub-Part (A) – Petitioner's Death Sentence Is Inappropriate, Arbitrary, And Capricious</u>

In his fourteenth ground for relief, petitioner raises a host of arguments urging this Court to find that his death sentence is inappropriate, arbitrary, and capricious. (Petition, Doc.# 14, at ¶¶ 769-814). In sub-part (A), petitioner argues that his sentence is disproportionate and inappropriate because none of his five co-defendants received a death sentence and because, with respect to other detention facility murders, petitioner was the only defendant to receive a death sentence where the detention facility killing was the sole aggravating circumstance. (*Id*. at ¶¶ 772-781). In sub-part (B), petitioner argues that his sentence is disproportionate and inappropriate because Damico Watkins's actions provoked the attack against him (Watkins). (*Id*. at 782-797). In sub-part (C), petitioner argues that his sentence is disproportionate and inappropriate because he suffered from post-traumatic stress disorder. (*Id*. at ¶¶ 798-812).

Respondent does not raise procedural default arguments against sub-parts (B) and (C); in fact, respondent does not even address or acknowledge sub-parts (B) and (C). Thus, ground fourteen, sub-parts (B) and (C) is properly before the Court for a review on the merits.

With respect to ground fourteen, sub-part (A), respondent argues that petitioner's claim is procedurally defaulted because it was not fairly presented to the Supreme Court of Ohio on direct appeal. (Doc.# 23, at 17). Specifically, respondent asserts that the only argument

158

presented by petitioner on direct appeal was that his death sentence was disproportionate to the crime in light of the mitigation evidence that he presented.  According to respondent, petitioner never argued to the Supreme Court of Ohio that his death sentence was disproportionate because other every other inmate convicted of committing murder while in prison had more than one aggravating circumstance or that his death sentence was disproportionate because the other members of the Aryan Brotherhood in his case did not receive death sentences despite their actions.  Respondent further argues that petitioner's claim was not presented to the Supreme Court of Ohio as a constitutional claim.

   In his Opposition, petitioner insists that he presented all three sub-parts of his fourteenth ground for relief on direct appeal, and that the Supreme Court of Ohio addressed all three parts on the merits.  (Doc.# 34, at 125-128).  In the alternative, petitioner argues that ineffective assistance of trial, appellate, and postconviction counsel constitutes cause and prejudice for his failure to fairly present the claim, and that any default should be excused under the "actual innocence" exception or to avoid a miscarriage of justice.

   In his reply, respondent concedes that petitioner fairly presented in his reply brief on direct appeal the argument that his death sentence was disproportionate to other inmates convicted of committing murder while in prison; accordingly, respondent expressly withdraws his motion to dismiss that component of petitioner's fourteenth ground for relief.  (Doc.# 35, at 31).  Respondent continues to insist, however, that petitioner never presented to the Supreme Court of Ohio the argument that his death sentence was disproportionate when compared to the sentences received by his co-defendants.  Respondent further argues that petitioner's "cause" arguments may not be considered because they were never presented to the Ohio courts.

It is well settled that, in order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of his constitutional claim to the state courts. *Anderson v. Harless*, 459 U.S. 4, 6, (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  A petitioner "fairly presents" the "substance of his federal habeas corpus claim" when the state courts are afforded sufficient notice and a fair opportunity to apply controlling legal principles to the facts bearing upon the constitutional claim.  *Harless*, 459 U.S. at 6.  A petitioner cannot be said to have fairly presented his constitutional claim to the state courts when he subsequently presents new facts or legal arguments in habeas corpus that place the claim in a significantly different posture than the claim that was presented to the state courts.  *See, e.g.*, *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986)(holding that additional facts or evidence may be considered by a federal habeas corpus court where that new information does not "fundamentally alter the legal claim already considered by the state courts."); *see also Sampson v. Love*, 782 F.2d 53, 55 (6th Cir. 1986)(holding that additional facts or evidence may be considered by a federal habeas court where that new information does not place the claim in a "significantly different posture" than the claim considered by the state courts).

Under the reasoning set forth in *Vasquez v. Hillery*, the Court is constrained to find that sub-part (A) of petitioner's fourteenth ground for relief is procedurally defaulted as to his allegation that none of the other five co-defendants charged in the death of Damico Watkins received the death penalty.  This Court has carefully reviewed petitioner's appellate brief, petitioner's reply brief, and the Supreme Court of Ohio's decision.  The allegation concerning petitioner's co-defendants was neither presented to nor considered by the Supreme Court of Ohio on direct appeal.  The allegation presents additional facts and legal arguments that place

160

petitioner's claim in a significantly different posture than the claim he presented to the Supreme Court of Ohio on direct appeal.  Thus, the Court concludes that petitioner did not fairly present the allegation in sub-part (A) of his fourteenth ground for relief concerning the disproportionality of his sentence when compared with his co-defendants.  (Petition, Doc.# 14, at ¶¶ 772-779).

In an effort to demonstrate cause and prejudice to excuse his failure to fairly present this particular component of ground fourteen, sub-part (A), petitioner appears to offer ineffective assistance of trial, appellate, and postconviction counsel.  However, it does not appear that any of those claims of ineffective assistance were presented to the state courts and, as noted *supra*, this Court is precluded from considering as "cause" any claim of ineffective assistance that was not first properly presented to the state courts.  *Edwards v. Carpenter, supra*, 529 U.S. at 452-53. Further, for reasons discussed more fully *supra* in section IV.(B)(1)(d), there is no right to effective assistance of postconviction counsel and, therefore, there is no way that a habeas petitioner can assert ineffective assistance of postconviction counsel as "cause" to excuse a procedural default.

Beyond the four-part *Maupin* test, petitioner argues that his failure to fairly present this component of ground fourteen, sub-part (A) should be excused under either the "actual innocence" exception or to avoid a "miscarriage of justice."  (Doc.# 34, at 125-126).  For reasons discussed more fully in section IV.(C)(3), the Court will defer consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in his second ground for relief.  Further, as this Court concluded in Section IV.(C)(4), there is no "miscarriage of justice" exception to procedural default beyond the "actual innocence" exception noted above.

161

For the foregoing reasons, the Court concludes that ground fourteen, sub-part (A), paragraphs 772-779 is procedurally defaulted because it was not fairly presented and that petitioner has failed to demonstrate cause and prejudice to excuse the default. The Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence. For that reason, respondent's motion to dismiss ground fourteen, sub-part (A) as procedurally defaulted is **GRANTED** as to paragraphs 772-779, subject to reconsideration once the Court addresses the claim of actual innocence set forth in petitioner's second ground for relief.

LL.  Ground Fifteen – Trial Court's Reliance On Unduly Prejudicial Victim Impact Evidence

In his fifteenth ground for relief, petitioner argues that the trial court relied on inadmissible, irrelevant, inflammatory, and unduly prejudicial victim impact evidence in sentencing petitioner to death. (Petition, Doc.# 14, at ¶¶ 815-835). In his motion to dismiss, respondent concedes that ground fifteen is not procedurally defaulted. (Doc.# 23, at 5). Thus, ground fifteen is properly before the Court for a full review on the merits.

MM.  Ground Sixteen – Denial Of Constitutional Right To Testify

In ground sixteen, petitioner argues that he was denied his constitutional right to testify. (Petition, Doc.# 14, at ¶¶ 836-862). Specifically, petitioner asserts that his trial attorneys failed to confer with him or realize that there was certain exculpatory evidence only he could provide by testifying, that his attorneys unreasonably cited his prior criminal record as the reason why he would not be called to testify on his own behalf, that his attorneys never informed him that he had a constitutional right to testify, and that, as a result of his counsel's ineffectiveness in this

162

regard, a host of exculpatory information that petitioner could have testified to was never presented to or considered by the jury.

Respondent argues that petitioner's claim is procedurally defaulted because it was raised in his postconviction petition, but subsequently was forfeited when petitioner failed to prosecute his appeal to the state court of appeals following the trial court's decision rejecting his postconviction action. (Doc.# 23, at 20-21).

Petitioner argues in response that, although it is true that his postconviction counsel failed to prosecute his postconviction appeal, no default should be recognized or enforced because he was essentially abandoned by his postconviction counsel, which issue he developed and presented to the state courts in his motion for a new trial and memorandum in support of jurisdiction. (Doc.# 34, at 133-134). The Court is constrained to reject petitioner's arguments.

To the extent petitioner is suggesting that he preserved this claim in his motion for a new trial, his argument must be rejected. That motion was filed on the premise that newly discovered evidence – deposition testimony by inmate Phillip Wierzgac – supported petitioner's assertion that he was actually innocent of the murder of Damico Watkins and undermined the State's theory of the killing of Watkins.

Turning to the first part of the *Maupin* test – whether petitioner violated a state procedural rule – Ohio law could not be more clear that postconviction actions, even in death penalty cases and other felony cases, are civil in nature and must be appealed in accordance with the Ohio Rules of Appellate Procedure. *State v. Nichols, supra*, 11 Ohio St. 3d 40, paragraphs one and two of the syllabus, 463 N.E.2d 375 (1984). In the fourth amendment to his postconviction action, petitioner raised as the seventh claim for relief the denial of his

163

constitutional right to testify and as the eighth claim for relief ineffective assistance of counsel in connection with the denial of his constitutional right to testify.  (App. Vol. IV, at 310). However, as discussed more fully *supra* in section IV.(B)(1)(a), when petitioner failed to file his appellate brief in accordance with the appellate court's scheduling order and as permitted by numerous extensions of time, he failed to prosecute an appeal in violation of the Ohio Rules of Appellate Procedure and *State v. Nichols*.  Thus, the first part of the *Maupin* test has been met.

The second part of the *Maupin* test requires the Court to determine whether the state courts actually enforced the state procedural rule.  In the instant case, the state court of appeals clearly and expressly dismissed petitioner's appeal in his postconviction proceedings on the ground that petitioner failed to file a brief.  (App. Vol. VII, at 53).  Thus, the second part of the *Maupin* test has been met.  Further, when petitioner presented his postconviction claims, as well as arguments about postconviction counsel's failure to prosecute his appeal, to the Supreme Court of Ohio in a memorandum in support of jurisdiction following the state court of appeals' decision declining to reopen petitioner's postconviction appeal, the Supreme Court of Ohio issued a one-line entry summarily declining to accept jurisdiction over petitioner's appeal. Under the "look-through doctrine," this Court looks through the Supreme Court of Ohio's unexplained entry and presumes that the unexplained entry relies on the reasoning set forth by the court of appeals below – namely, a clear and express dismissal of petitioner's postconviction appeal on the ground that petitioner failed to file an appellate brief.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001).

The Court further finds that the third part of the *Maupin* test has been satisfied.  As the Court discussed in more detail *supra* in Section IV.(B)(1)(c), the rule established by *State v.*

*Nichols* as to appeals in postconviction proceedings and the Ohio Rules of Appellate Procedure are stated in unmistakable language, are consistently enforced, and, together, serve the state's interests in finality and judicial economy by ensuring that postconviction appeals are adjudicated in a timely and orderly fashion.  Moreover, they do not rely on or otherwise implicate federal law.  Further, petitioner's argument that Ohio's postconviction process is an inadequate state remedy has been considered and rejected by the Court of Appeals for the Sixth Circuit.  Finally, as discussed more fully *supra* in Section IV.(B)(1)(c), the Court rejects petitioner's argument that the state disavowed or waived this procedural default.  Thus, the third part of the *Maupin* test has been satisfied.

Once the Court determines that a claim is subject to procedural default, and that the procedural default is an adequate and independent state ground upon which to deny relief, it is incumbent upon petitioner to demonstrate "cause" sufficient to excuse the procedural default. To that end, petitioner offers ineffective assistance of postconviction counsel.  Specifically, petitioner argues that he had an Eighth Amendment and a due process right to the effective assistance of counsel in his state postconviction proceedings and that the failure of attorney John J. Gideon to file an appellate brief violated this right in contravention of *Evitts v. Lucey*, 469 U.S. 387 (1985).  The Court considered this argument in great detail in Section IV.(B)(1)(d), *supra*, and concluded that there is no constitutional right to effective assistance of counsel during state collateral proceedings, *Pennsylvania v. Finley, supra*, and *Murray v. Giarratano, supra*, and that ineffective assistance of counsel cannot be asserted as "cause" to excuse a procedural default committed during a state collateral proceeding, *Coleman v. Thompson, supra*.  In the absence of authority holding that there is a constitutional right to counsel in state postconviction

165

proceedings, whether under the Eighth Amendment or as a matter of due process, this Court,

however sympathetic it might be, cannot excuse the procedural default that occurred when

petitioner's counsel failed to file an appellate brief resulting in the with-prejudice dismissal of

his state postconviction appeal. Accordingly, petitioner has failed to demonstrate cause and

prejudice sufficient to excuse the default of ground sixteen.

Petitioner offers no other arguments for why this Court should excuse or overlook the

default of his sixteenth ground for relief. Accordingly, respondent's motion to dismiss ground

sixteen as procedurally defaulted is **GRANTED**.

NN. Ground Seventeen – Unconstitutionality Of The Death Penalty Statute

In his seventeenth ground for relief, petitioner raises a host of challenges to the

constitutionality of Ohio's death penalty statute. (Petition, Doc.# 14, at ¶¶ 863-1070).

Respondent raises no procedural default arguments against any part of petitioner's

mammoth seventeenth ground for relief. (Doc.# 23). Although respondent does not include

ground seventeen in his list of claims that he conceded were not procedurally defaulted, neither

does respondent set forth any procedural default arguments against ground seventeen.

In his Opposition, petitioner argues that respondent's complete failure to address ground

seventeen "can only be taken as a concession that the claim is not defaulted or as a waiver of any

default defense." (Doc.# 34, at 135). This Court agrees.

The Court has noted repeatedly throughout this order that procedural default is an

affirmative defense that must be raised by the state at the first possible opportunity, or it will be

waived. *Trest v. Cain*, 522 U.S. 87, 89 (1997)(holding that state's failure to raise procedural

default normally constitutes waiver of the default); *Gray v. Netherland*, 518 U.S. 152, 166

166

(1996)(holding that procedural default is normally an affirmative defense that will be waived if not raised).  In other sections of this order, this Court has been willing to *sua sponte* recognize a procedural default not expressly raised by respondent where respondent attempted to raise *some* procedural default, but simply raised the wrong one; where respondent subsequently raised the correct procedural default in his reply to petitioner's opposition; and where the specific procedural default had already been extensively briefed by the parties such that petitioner could not be said to have been unfairly disadvantaged by the Court's *sua sponte* recognition.  Those circumstances are not present with respect to ground seventeen.

Thus, the Court concludes that ground seventeen is properly before the Court in its entirety for a review on the merits.

OO.  Ground Eighteen – Cumulative Impact Of The Errors Renders Petitioner's Conviction And Sentence Unreliable And Unconstitutional

In his eighteenth and final ground for relief, petitioner argues that the cumulative impact of the errors addressed in this petition renders Petitioner Stojetz's conviction and sentence unreliable and unconstitutional.  (Petition, Doc.# 14, at ¶¶ 1071-1077).

Respondent argues that petitioner's claim is procedurally defaulted because it was never presented to the state courts.  (Doc.# 23, at 7).

In response, petitioner concedes that the claim was never presented, but argues that because the claim requires consideration of both record and non-record issues, there was no procedure in the state courts where petitioner could have raised the claim.  (Doc.# 34, at 136).  In the alternative, petitioner appears to argue that ineffective assistance of trial, appellate, and postconviction counsel constitutes cause and prejudice sufficient to excuse any procedural

default.  Finally, petitioner argues that any default should be excused under the "actual innocence" exception or to avoid a miscarriage of justice.  (*Id*. at 136-137).

For reasons discussed more fully *supra* in connection with ground one, sub-part (K), this Court is inclined to address in a subsequent order the cumulative impact of any constitutional errors in accordance with Sixth Circuit practice.  *See, e.g., Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *but see Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief.").  The Court is mindful that petitioner never presented a "cumulative error" claim to the state courts and that the Sixth Circuit has enforced procedural default under such circumstances.  *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)(holding that cumulative error claim was procedurally defaulted and waived where it was not raised in the state courts or in the district court). However, since the Court will consider only claims that have not been procedurally defaulted and where constitutional error has been demonstrated, *see Derden v. McNeal*, 978 F.2d 1453, 1458 (5th Cir. 1992)(*en banc*); *Cooey v. Anderson*, 988 F.Supp. 1066, 1096 (N.D. Ohio 1997), the Court perceives no injury to the principles of comity and federalism that have shaped the doctrine of procedural default and waiver.

For the foregoing reasons, respondent's motion to dismiss ground eighteen as procedurally defaulted is **DENIED**.

## V.  Conclusion

For the foregoing reasons, respondent's motion to dismiss procedurally defaulted claims is **DENIED** as to grounds one, sub-part (A); ground one, sub-part (B)(2); two; thirteen; and eighteen; **GRANTED** as to grounds one, sub-part (B)(1) and sixteen; **DENIED**, subject to

reconsideration, as to grounds four, sub-part (1)(B); four, sub-part (2)(A); five, sub-part (A); seven, sub-part (B); nine, sub-part (A); nine, sub-part (D); and nine, sub-part (F); **GRANTED**, subject to reconsideration, as to grounds one, sub-part (C); one, sub-part (D); one, sub-part (E)(in part); one, sub-part (F) paragraphs 269 and 271; one, sub-part (G) paragraphs 485-494; one, sub-part (H); one, sub-part (I)(1); one, sub-part (I)(2); four, sub-part (1)(C); four, sub-part (1)(D); four, sub-part (2)(B); nine, sub-part (E); ten; eleven, sub-parts A, B, C, E (in part), F, G, H, I, J, and K; twelve; and fourteen, sub-part (A) paragraphs 772-779; and **DENIED**, subject to renewal, as to ground three.

Respondent's motion to dismiss petitioner's third ground for relief, as set forth in his Motion to Dismiss, (Doc.# 23, at 6, 7-8, and 10) is **STRICKEN**.  Petitioner's arguments in response, as set forth in his Opposition, (Doc.# 34, at 74-80), are also **STRICKEN**.  Respondent will have thirty days from the date of this opinion and order to file a new motion to dismiss petitioner's third ground for relief.  Petitioner will have twenty days to file a memorandum in opposition.  Respondent will have fifteen days to file a reply.  No extensions of time will be granted.  **Respondent is strongly encouraged to address petitioner's claims as those claims have been numbered, identified, and set forth in the habeas corpus petition**.

In accordance with the December 22, 2004 Scheduling Order (Doc.# 22), petitioner shall have thirty (30) days from the date of the Court's order addressing respondent's renewed motion to dismiss ground three to file a motion for discovery and any renewed motion for authorization for funds to employ experts.  Respondent's memorandum in opposition and petitioner's reply in support shall be briefed in accordance with the local rules.

**IT IS SO ORDERED.**


          /s/ Gregory L. Frost            
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**