**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOHN C. STOJETZ,**

      **Petitioner,**

  **v.**                                    **Case No.  2:04cv263**
                                                      **JUDGE FROST**

**TODD ISHEE, Warden,**                      **Magistrate Judge King**

      **Respondent.**

**OPINION AND ORDER**

      Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action under 28 U.S.C. §2254.  This matter is before the Court upon respondent's motion to dismiss ground three as procedurally defaulted, (Doc.# 40), and petitioner's memorandum in opposition, (Doc.# 42).

### I.  Introduction

      On September 30, 2005, this Court issued an Opinion and Order granting in part and denying in part respondent's motion to dismiss procedurally defaulted claims.  (Doc.# 39.)  In that order, the Court struck respondent's motion to dismiss ground three and petitioner's memorandum in opposition, and directed the parties to file supplemental briefs on whether ground three should be dismissed as procedurally defaulted.

      In his third ground for relief, petitioner argues that the *voir dire* conducted in his trial was inadequate to ensure a fair and impartial jury.  (Petition, Doc.# 14, at ¶¶ 331-386.)  The third ground for relief, as it is set forth in the petition, was never presented to the state courts.  Rather, it is comprised of numerous allegations, some of which petitioner presented or attempted to present to the state courts and others of which he did not.  Petitioner has divided his third ground

for relief into the following sub-parts: pretrial matters (¶¶ 338-351), jury voir dire and death qualifying (¶¶ 352-365), general voir dire by defense counsel (¶¶ 366-373), and exercise of peremptories (¶¶ 374-382).

Respondent argues that all four sub-parts are procedurally defaulted.  Specifically, respondent argues that the sub-parts labeled as pretrial matters, general voir dire by defense counsel, and exercise of peremptories were never presented to the state courts.  With respect to jury voir dire and death qualifying, respondent argues that petitioner's allegations regarding improper "death qualification" of the jurors and prospective jurors, (¶¶ 352-356), are procedurally defaulted because defense counsel did not raise a contemporaneous objection to them during *voir dire*, and that the remaining allegations within this sub-part, (¶¶ 357-365), were never presented to the state courts.

The Court will address each sub-part separately, detailing the allegations comprising the sub-part, respondent's procedural default argument, and petitioner's arguments in response.

## II. Pretrial Matters (¶¶ 338-351)

In the first sub-part of his third ground for relief, petitioner raises several pretrial matters of concern which, in his view, were not adequately addressed during *voir dire* by either the trial court or defense counsel.  According to petitioner, Madison County, where the prison was located and the murder occurred, was saturated with media coverage about the murder and petitioner's upcoming trial.  Further, many residents of Madison County worked at the prison, or had family members, friends, or acquaintances who worked at the prison.  Yet, according to petitioner, defense counsel filed "canned" motions for a change of venue and to increase the number of peremptory challenges available to petitioner, without tailoring those motions to

petitioner's case or supporting them with exhibits such as newspaper articles.  Petitioner further notes that the trial court did not conduct any hearings on defense counsel's motions.  Petitioner also complains that the trial court informed prospective jurors that he would not sequester jurors prior to or during the trial phase of petitioner's case, but that he would sequester jurors during the penalty phase of petitioner's case.

Respondent argues that these allegations are procedurally defaulted because they were never presented to the state courts.  Petitioner offers several arguments in response.  Specifically, petitioner argues that two of the challenges raised under the sub-part "pretrial matters" were presented to the state courts and that any subsequent default that may have occurred as to those challenges should not be recognized or enforced because respondent waived all but the only procedural default that he specifically raised, *i.e.*, petitioner's alleged failure to present those challenges to any state court.

A.  Ineffective Assistance of Counsel – Failure to Challenge Venue

Petitioner argues that his claim of ineffective assistance of counsel for the failure to properly challenge venue was presented to the state courts as the second claim for relief in his postconviction action.  Petitioner argues that the claim was the subject of an evidentiary hearing during the postconviction proceedings, and that the state trial court addressed and rejected the claim on the merits.  Thus, according to petitioner, respondent was incorrect in asserting that petitioner had never presented those allegations to the state courts.  Petitioner's arguments are not well taken.

A careful comparison of the allegations set forth under the heading "pretrial matters" in the petition to the allegations set forth in the second claim for relief in petitioner's postconviction

3

action reveals that they are not the same.  That is, the allegations set forth under "pretrial matters" in the petition were not presented to the state courts in the second claim for relief in petitioner's postconviction action as petitioner contends.  In the petition, as noted above, petitioner argues that defense counsel filed "canned" motions to change venue and for additional peremptory challenges without tailoring those motions to the facts in petitioner's case or supporting them with exhibits such as newspaper articles or affidavits about the pretrial publicity.  (Petition, Doc.# 14, at ¶¶ 338-351.)  Petitioner argues that Madison County, where the prison was located and the murder occurred, was saturated with media coverage about the murder and petitioner's upcoming trial, and that many residents of Madison County worked at the prison, or had relatives, friends, or acquaintances who worked at the prison.  (*Id*.)  By contrast, in the second claim for relief of his postconviction action, petitioner argued exclusively that defense counsel failed to ask sufficient questions of the prospective jurors during *voir dire* about whether or to what extent they had been exposed to or might be influenced by pretrial publicity.  (App.Vol. IV, at 18-19.)  Nowhere in those allegations did petitioner argue about or even mention the filing or alleged deficiencies of the motion filed by defense counsel for a change of venue.

Habeas corpus petitioners, in order to satisfy the exhaustion requirement, must fairly present their constitutional claim to the state courts under the same legal theory in which it is later presented to the federal court.  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  A claim about deficiencies in defense counsel's performance during *voir dire* and a claim about deficiencies in defense counsel's filing of a motion to change venue, despite the fact that they share a common core of facts, *i.e.*, potential exposure of prospective jurors to extensive pretrial

publicity, are nonetheless legally distinct claims.  Under Sixth Circuit law, the relatedness of the claims, or the fact that they share a common core of facts, does not save the instant allegation from a finding that it was not fairly presented to the state courts in postconviction as petitioner contends.  *See Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001); *Wong v. Money, supra*, 142 F.3d at 322.

Even assuming that petitioner's allegations concerning the motion filed by defense counsel for a change of venue had been fairly presented in petitioner's postconviction action, the fact remains that all of the claims raised in petitioner's postconviction action were subsequently defaulted on appeal.  Petitioner's postconviction counsel failed to file an appellate brief, causing the state appellate court to dismiss his postconviction appeal with prejudice.  Petitioner is correct when he asserts that, generally, procedural default is an affirmative defense that is waived if respondent does not raise it. *Trest v. Cain*, 522 U.S. 87, 89 (1997)(holding that state's failure to raise procedural default normally constitutes waiver of the default); *Gray v. Netherland*, 518 U.S. 152, 166 (1996)(holding that procedural default is normally an affirmative defense that will be waived if not raised).  Further, although federal courts are not prohibited from raising procedural default *sua sponte*, the practice is frowned upon and federal courts should employ it sparingly.  *See, e.g., Howard v. Boucher*, 405 F.3d 459, 476 (6th Cir. 2005)(citations omitted), *r'hng and r'hng en banc denied* July 6, 2005.

However, in the instant case, this Court is of the view that it would be appropriate and prudent to acknowledge and enforce the procedural default resulting from the failure of petition's postconviction counsel to file an appellate brief to the state appellate court.  Where, as here, petitioner has had the opportunity to respond to the procedural default, it is not

inappropriate for the Court to raise the procedural default *sua sponte*. *Howard v. Bouchard, supra*, 405 F.3d at 476, citing *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002); *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000). The procedural default stemming from the failure of petitioner's postconviction counsel to file an appellate brief to the state court of appeals, even if not initially raised by respondent with respect to this particular claim of trial counsel ineffectiveness, has been exhaustively briefed by the parties and thoroughly considered by this Court. Thus, petitioner was on notice that any claim raised in his postconviction action would be subject to this particular procedural default. When petitioner argued in his opposition to respondent's supplemental motion to dismiss that he had, in fact, raised the instant claim of trial counsel ineffectiveness in his postconviction petition, he surely was aware that the claim would be subject to the procedural default stemming from the failure of his postconviction counsel to prosecute his appeal. In the introduction of his opposition to the instant motion to dismiss, petitioner raised numerous arguments for why the default stemming from the failure of postconviction counsel to file an appellate brief should not be enforced. (Petitioner's Opposition, Doc.# 42, at 16-28.) Thus, petitioner would not be unfairly prejudiced by the Court *sua sponte* recognizing this procedural default.

In any event, contrary to petitioner's contention, his allegations concerning the motion filed by defense counsel for a change of venue were not presented to the state courts in petitioner's postconviction action. It does not appear that they were ever presented to the state courts. Before addressing respondent's assertion that the claim is defaulted because it was never presented to the state courts, the Court will address petitioner's argument that he fairly presented on direct appeal his claim about the limits on peremptory challenges available to defense

6

counsel.

### B.  Limits on Number of Peremptory Challenges

Petitioner argues that his claim about the limits on the number of peremptory challenges available to defense counsel was raised on direct appeal as part of petitioner's claim challenging the trial court's refusal to remove prospective juror Andre Porter for cause, *i.e.*, petitioner's sixth proposition of law.  Thus, according to petitioner, respondent was incorrect in asserting that petitioner had never presented those allegations to the state courts.  Petitioner's arguments are not well taken.

The Court concludes that the allegations set forth under "pretrial matters" in the petition were not presented to the state courts in petitioner's sixth proposition of law on direct appeal as petitioner contends.  In the petition, as noted above, petitioner argues that defense counsel filed "canned" motions to change venue and for additional peremptory challenges without tailoring those motions to the facts in petitioner's case or supporting them with exhibits such as newspaper articles or affidavits about the pretrial publicity.  (Petition, Doc.# 14, at ¶¶ 338-351.) Petitioner complains that the trial court denied the motion for additional peremptory challenges without receiving evidence, entertaining oral arguments, or holding a hearing.

By contrast, in the sixth proposition of law on direct appeal, petitioner argued that the trial court erred in not *sua sponte* removing prospective juror Andre Porter as an "automatic death penalty vote," after defense counsel challenged Porter for cause citing only Porter's views on the defendant exercising his Fifth Amendment right not to testify.  (App.Vol. II, at 145-150.) Petitioner argued that, because defense counsel was forced to use a peremptory challenge to remove Porter, and because defense counsel had used all of their peremptory challenges as a

result, petitioner was forced to accept Carla Stover on his jury, even though she was a "strident" supporter of the death penalty.  Nowhere in his sixth proposition of law did petitioner challenge or even mention the trial court's refusal to grant petitioner additional peremptory challenges, or the failure of the trial court to receive evidence, entertain oral arguments, or hold a hearing on defense counsel's pretrial motion for additional peremptory challenges.  The only thing for which petitioner faulted the trial court was failing to *sua sponte* remove Andre Porter from the prospective panel as an "automatic death penalty vote."  Further, the only thing for which petitioner faulted defense counsel was basing the "cause" challenge to Porter only on Porter's views regarding the defendant exercising his Fifth Amendment right not to testify.

Thus, the Court cannot accept petitioner's assertion in his opposition to respondent's supplemental motion to dismiss that he fairly presented in the sixth proposition of law on direct appeal the allegations set forth under "pretrial matters" in his third claim for relief that the trial court had erred in denying his motion for additional peremptory challenges.  It does not appear that those allegations were ever presented to the state courts.

### C.  Respondent's Argument – Failure to Present

Respondent argues that none of the allegations set forth under "pretrial matters" in petitioner's third claim for relief were ever presented to the state courts.  The Court has rejected petitioner's argument that two of those allegations – *i.e.*, ineffective assistance of counsel for failing to properly challenge venue and a claim regarding the number of peremptory challenges to which defense counsel were limited – were presented to the state courts in petitioner's postconviction action and on direct appeal, respectively.  Thus, the Court turns its attention back to respondent's original argument that none of the allegations under "pretrial matters" were ever

8

presented to the state courts.

A state prisoner must exhaust available state court remedies before he can secure federal habeas corpus review. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Picard v. Connor*, 404 U.S. 270, 275 (1971). A petitioner satisfies the exhaustion requirement when he fairly presents his constitutional claims to the state's highest court to provide the state courts with the first opportunity to remedy constitutional infirmities. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If petitioner has not fairly presented his claims, and a state remedy still exists for him to do so, then his habeas corpus petition may be dismissed for want of exhaustion. *See Rhines v. Weber,*, 544 U.S. 269, 125 S.Ct. 1528, 1534-35 (2005); *Rose v. Lundy*, 455 U.S. 509, 510 (1982).

If petitioner has not fairly presented his claims, and no state remedy exists for him to do so, then his claim is exhausted and procedurally defaulted.

> Exhaustion is a problem only if the state still provides a remedy for the habeas petitioner to pursue, thus providing the state courts an opportunity to correct a constitutionally infirm state court conviction. If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts.

*Rust*, 17 F.3d at 160; *see also Gray v. Netherland*, 518 U.S. 152, 161 (1996)(exhaustion requirement is satisfied if it is clear that the petitioner's claims are now procedurally barred under state law); *Gall v. Parker*, 231 F.3d 265, 283-84 (6th Cir. 2000)(same).

As the Court noted *supra*, the allegations set forth under "pretrial matters" may be summarized as follows. According to petitioner, the county where the prison was located and the murder occurred was saturated with media coverage about the murder and petitioner's upcoming trial, and many of the county's residents worked at the prison, or had family members,

9

friends, or acquaintances who worked at the prison.  Yet, according to petitioner, defense counsel filed "canned" motions for a change of venue and to increase the number of peremptory challenges available to petitioner, without tailoring those motions to petitioner's case or supporting them with exhibits such as newspaper articles.  Petitioner further notes that the trial court did not conduct any hearings on defense counsel's motions.  Petitioner also complains that the trial court informed prospective jurors that he would not sequester jurors prior to or during the trial phase of petitioner's case, but that he would sequester jurors during the penalty phase of petitioner's case.

To the extent that these allegations involve matters appearing on the face of the record, petitioner violated Ohio's *res judicata* doctrine when he failed to raise them on direct appeal.  To the extent, however, that these allegations would have relied on evidence outside the record, petitioner should have collected that evidence and presented his allegations in his initial, timely postconviction action, but he did not.  The Court is mindful of the remote, theoretical possibility that petitioner might present these allegations in a second, untimely postconviction action.  *See* O.R.C. §2953.23.  Given the substantial unlikelihood that the state courts will actually entertain such a postconviction action, the record as it presently exists compels this Court to conclude that the allegations set forth under "pretrial matters" appear to be procedurally defaulted.

### D.  Cause and Prejudice / Actual Innocence

Once the Court determines that a constitutional claim is subject to procedural default, the Court may not address the merits of that claim absent a showing by petitioner that the default can be excused under either the cause-and-prejudice test or the narrow "actual innocence" exception.  Although petitioner did not specifically raise any such arguments in the section of his opposition

10

devoted to "pretrial matters," he included a host of arguments concerning cause and prejudice, the actual innocence exception, and other reasons for not enforcing procedural default. The Court will address all of the arguments that are relevant to the procedural default at hand, *i.e.*, petitioner's failure to raise these allegations in any state court.

### 1. Inadequacy of Ohio's Postconviction System

To the extent that the allegations set forth under "pretrial matters" involved evidence outside the record, and were therefore defaulted when petitioner failed to include them in his postconviction action, petitioner has offered the argument that no defaults committed in connection with state postconviction proceedings should be enforced because Ohio's postconviction system is not an adequate and independent ground to foreclose federal habeas corpus review of constitutional claims. (Petitioner's Opposition, Doc.# 42, at 19-23.) Petitioner complains that Ohio's postconviction remedy, O.R.C. §2953.21, does not provide a reasonable opportunity for state prisoners to present federal constitutional claims to the state courts because Ohio courts have severely restricted the remedy, because litigants are afforded little or no opportunity for factual development, and because *res judicata* is applied in a manner that prevents any meaningful review of federal constitutional claims. In short, according to petitioner, Ohio's postconviction remedy has become an exercise in futility.

Petitioner's arguments are insufficient to excuse his failure to include non-record claims in his postconviction action. For one thing, petitioner's criticisms of Ohio's postconviction system would be more persuasive had he actually raised the allegations set forth under "pretrial matters" in his postconviction action and could point specifically to a manner in which the various flaws he identifies in the system resulted in an unfair or ineffective adjudication of his

11

allegations.  But such is not the case.  In any event, the United States Court of Appeals for the

Sixth Circuit has consistently held that Ohio's postconviction system is an adequate and

independent ground for foreclosing federal habeas corpus review.  *See, e.g., Mason v. Mitchell*,

320 F.3d 604, 628 (6th Cir. 2003); *Coleman v. Mitchell*, 268 F.3d 417, 428-29 (6th Cir. 2001).

2.  Ineffective Assistance of Counsel Constitutes "Cause"

a.  Ineffective Assistance of Appellate Counsel

To the extent that the allegations set forth under "pretrial matters" appeared on the face

of the record, and were therefore defaulted when petitioner failed to raise them on direct appeal,

petitioner offers ineffective assistance of appellate counsel as cause and prejudice to excuse the

default.  (Petitioner's Opposition, Doc.# 42, at 28-30.)  However, petitioner cannot offer

ineffective assistance of appellate counsel as cause for the default of these trial counsel

ineffectiveness claims because he never presented that allegation of appellate counsel

ineffectiveness to the state courts.  *See Edwards v. Carpenter*, 529 U.S. 446, 452-53

(2000)(holding that an ineffective assistance of counsel claim offered as cause for the default of

a substantive federal claim must first be properly presented to the state courts).

In urging the Court to excuse the default of this "cause" argument, petitioner explains

that he was represented on direct appeal by the Ohio Public Defender's Office, and that the Ohio

Public Defender's Office contracted and paid attorney John Gideon to file in the state courts a

Rule 26(B) "*Murnahan*" application challenging the effectiveness of the public defender's

representation of petitioner during his appeal.  (Petitioner's Opposition, Doc.# 42, at 7-13.)

According to petitioner, this amounted to a conflict of interest that effectively denied him his

Sixth Amendment right to counsel altogether and the Supreme Court of Ohio erred in not

12

inquiring about the conflict of interest.  Petitioner further argues that this was a structural error not capable of being cured through a review for harmless error.

Petitioner appears to be arguing that Mr. Gideon suffered from an actual conflict of interest, by virtue of the fact that he was hired by the Ohio Public Defender's Office to file a state action alleging the ineffectiveness of the Ohio Public Defender in representing petitioner on direct appeal, and that this actual conflict of interest resulted in a total denial of counsel during petitioner's Rule 26(B) proceedings such that petitioner should be excused for having failed to present to the state courts the appellate counsel ineffectiveness claim that he seeks to present to this Court as cause for the default of the allegations set forth under "pretrial matters."  The Court is not persuaded.  Petitioner, to demonstrate an actual conflict of interest and resulting denial of counsel, must be able to point to specific evidence that something about the circumstances surrounding Mr. Gideon's representation of him in connection with his Rule 26(B) application for reopening caused Mr. Gideon to represent interests adverse to petitioner's own interests.  *See United States v. Hall*, 200 F.3d 962, 965-66 (6th Cir. 2000).  Petitioner has made no such showing.  Rather, petitioner has offered only a hypothetical conflict of interest.  *See Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir. 1987).  In sum, the Court is not persuaded that an actual conflict of interest resulted in a denial of petitioner's Sixth Amendment right to counsel sufficient to excuse the fact that petitioner never presented to the state courts the ineffective assistance claims that he asks this Court to consider as "cause" to excuse the procedural default of allegations set forth under "pretrial matters."  Thus, ineffective assistance of appellate counsel does not constitute cause and prejudice to excuse this procedural default.

b.  Ineffective Assistance of Postconviction Counsel

To the extent petitioner might be arguing ineffective assistance of postconviction counsel for counsel's failure to include these allegations in petitioner's postconviction action, there is no constitutional right to counsel in a collateral attack upon a criminal conviction.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  It is therefore well settled that ineffective assistance of postconviction counsel cannot be asserted as cause to excuse a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991).  Thus, ineffective assistance of postconviction counsel cannot constitute cause and prejudice to excuse this procedural default.

### 3.  Actual Innocence Exception

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent...."  *Murray v. Carrier*, *supra*, 477 U.S. at 496.  The "actual innocence" exception to procedural default applies whether the petitioner is asserting that he is actually innocent of the underlying crime for which he was convicted, or is challenging the aggravating circumstances that made him eligible for the death penalty.  As the Sixth Circuit explained in *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004):

> The "fundamental miscarriage of justice" gateway is open to a petitioner who submits new evidence showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)(quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Id.* The gateway is also available to a petitioner who demonstrates that he is "actually innocent" of the sentence of death that has been imposed on him.  To establish his "innocence" of the death penalty, a petitioner must "show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law."  *Sawyer v. Whitley*, 505 U.S. 333, 336, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

14

*Williams v. Bagley*, 380 F.3d at 973.

Thus, the "actual innocence" exception to procedural default applies whether the petitioner is asserting that he is actually innocent of the underlying crime for which he was convicted, or is challenging the aggravating circumstances that made him eligible for the death penalty. The standard of proof that he must satisfy depends upon the challenge he is making. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). Claims challenging the petitioner's conviction for the underlying crime are governed by *Schlup*'s more lenient "more likely than not" standard. *Calderon*, 523 U.S. at 559. Claims challenging the petitioner's eligibility for the death penalty are governed by *Sawyer*'s more exacting "clear and convincing" standard – this is true even where the petitioner's claim challenges an element of the underlying offense that has the effect of enhancing the underlying offense to a capital offense, thereby making the petitioner eligible for the death penalty. *Calderon*, 523 U.S. at 559-560. In *Calderon*, the Supreme Court emphasized:

> The *Sawyer* standard has a broader application than is first apparent. As the Court explained in *Schlup*, when a capital petitioner challenges his underlying capital murder conviction on the basis of an element that "function[s] essentially as sentence enhancer," the *Sawyer* "clear and convincing" standard applies to the claim. *Schlup, supra*, at 326, 115 S.Ct., at 866-867. Thus, to the extent a capital petitioner claims he did not kill the victim, the *Schlup* "more likely than not" standard applies. To the extent a capital petitioner contests the special circumstances rendering him eligible for the death penalty, the *Sawyer* "clear and convincing" standard applies, irrespective of whether the special circumstances are elements of the offense of capital murder or, as here, mere sentencing enhancers.

*Calderon, supra*, 523 U.S. at 560.

It is unclear whether that distinction is important in the instant case because petitioner appears to be arguing both that he is actually innocent of the murder of Damico Watkins, and

that he is actually innocent of the death penalty.  (Petitioner's Opposition, Doc.# 42, at 30-37.)
In the end, petitioner focuses his arguments on *Schlup*'s "more likely than not" standard, arguing
that he is actually innocent of the death penalty under the facts and law.  (*Id*.)

Specifically, in an effort to demonstrate the facts necessary to qualify for the "actual
innocence" exception, petitioner argues that evidence of his mental state, his underlying
motivation for the attack on Damico Watkins, actions and threats by Watkins that provoked the
attack against him, and the "culture" of prison life, demonstrate that petitioner is actually
innocent of the death penalty specifications of which he was convicted.  Petitioner points out that
inmate Vandersommen testified during petitioner's state postconviction hearing that he
(Vandersommen) and inmate Bishop killed Watkins; that petitioner did not kill Watkins or even
intend for Watkins to be killed; and that Watkins was killed because he (Vandersommen)
"snapped" once the attack began.  (Doc.# 42, at 31, citing Tr.Vol. IX, at 31-51, deposition of
William Vandersommen.)  Petitioner further argues that other witnesses corroborated
Vandersommen's account.  (Doc.# 42, at 31, citing Tr.Vol. IX, at 15-20, deposition of David
Hicks.)

To satisfy the legal predicate of the "actual innocence" exception, petitioner argues that,
under *Schlup*, he need only demonstrate that it is more likely than not that a reasonable juror, in
light of the new evidence described above, would not have found guilt beyond a reasonable
doubt.  (Doc.# 42, at 32.)  Petitioner further argues that the question is not whether sufficient
evidence was presented at trial to sustain his conviction and death sentence.  (*Id*.)  Petitioner
asserts that evidence in support of his claim that he is actually innocent of the death penalty is
intricately tied to his habeas claims of ineffective assistance of counsel, prosecutorial

16

misconduct, and violations of his rights under the Eighth Amendment.  (*Id.*)

Regardless of whether petitioner is arguing that he is actually innocent of the aggravated murder of Damico Watkins, to which *Schlup*'s more lenient "more likely than not" standard would apply, or whether petitioner is arguing that he is actually innocent of the death sentence that he received for the aggravated murder of Damico Watkins, to which *Sawyer*'s more exacting "clear and convincing" standard would apply, the Court is of the view that it would be ill-advised to address petitioner's "actual innocence" claim at this time.  In addition to offering an actual innocence claim as a "gateway" claim to revive otherwise defaulted claims, petitioner has raised a free-standing claim of actual innocence in his second ground for relief.  Respondent has expressly conceded that petitioner's free-standing claim of actual innocence – his second ground for relief – is not procedurally defaulted.  As such, it is deserving of a full review on the merits and will be fully briefed by the parties at a later date.  Although free-standing claims of actual innocence involve a different, and surely more exacting, standard of proof than gateway claims of actual innocence, *see Herrera v. Collins*, 506 U.S. 390, 417 (1993)(noting that the "threshold showing" for a free-standing claim of actual innocence would be "extraordinarily high"); *Schlup v. Delo, supra*, 513 U.S. at 313-315 (distinguishing between a free-standing, substantive claim of actual innocence upon which the Court could grant habeas relief, and a gateway, procedural claim of actual innocence by which a Court could examine the merits of an otherwise defaulted claim), the facts supporting both claims – and both claims will involve a fact-intensive analysis – will be the same.  Thus, this Court is of the view that it would be more prudent to address petitioner's "gateway" claim of actual innocence when it considers his "free-standing" claim of actual innocence.

17

E.  Conclusion

In conclusion, the Court finds that all of the allegations set forth under "pretrial matters," *i.e.*, ¶¶ 338-351 of the petition, are procedurally defaulted due to petitioner's failure to present them to the state courts.  The Court also finds that petitioner has not demonstrated cause or prejudice to excuse the default.  However, the Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence.  For that reason, respondent's motion to dismiss the allegations of ground three set forth under "pretrial matters," *i.e.*, ¶¶ 338-351, as procedurally defaulted is GRANTED, subject to reconsideration once the Court addresses the claim of actual innocence set forth in petitioner's second ground for relief.

III.  Jury Voir Dire and Death Qualifying (¶¶ 352-365)

In the second sub-part of his third claim for relief, petitioner raises a number of questions about the manner in which the trial court and defense counsel conducted *voir dire*.  According to petitioner, the trial court demonstrated a lack of commitment to, and a lack of respect for, the *voir dire* process.  The heart of petitioner's allegations, however, was that the trial court's questions and statements were skewed to weed out those jurors who would not consider imposing the death penalty, and that no corresponding effort was made to weed out jurors would not consider imposing a life sentence.  Petitioner also complains that *voir dire* proceeded too quickly.  Petitioner went on to list myriad jurors and prospective jurors who were, in petitioner's view, "death qualified" by ensuring that they would impose the death penalty, and/or not "life

18

qualified" by ensuring that they would impose a life sentence. Petitioner also points out several prospective jurors who were improperly questioned or instructed that their rejection of a death sentence had to be unanimous, or who were misled into believing that self-defense was a viable mitigating factor in Ohio and would be an issue in petitioner's case. As a result, petitioner argues that his jury was rife with the following deficiencies: jurors were not properly death qualified or were improperly instructed on the imposition of the death penalty; jurors were given an improper "unanimity" instruction; jurors with "deep-seated" views on the death penalty were permitted to remain on petitioner's jury; jurors were not properly vetted by defense counsel regarding their views about the death penalty; jurors were not properly life qualified or were improperly instructed on the imposition of a life sentence; and jurors were subjected to incomprehensible statements and questions, misleading statements and questions about self-defense, and confusing statements about the concept of mitigation evidence.

Respondent argues that petitioner's allegations regarding improper "death qualification" and "life qualification" of prospective jurors, *i.e.*, ¶¶ 352-356, are procedurally defaulted under Ohio's contemporaneous objection rule. Specifically, respondent argues that even though petitioner presented these allegations on direct appeal in his first proposition of law, the Supreme Court of Ohio noted that petitioner had waived all but plain error, due to the fact that trial counsel had raised no contemporaneous objection to those allegations during *voir dire*. Respondent goes on to argue that the remaining allegations, *i.e.*, ¶¶ 357-365, are procedurally defaulted because they were never presented to the state courts.

Petitioner argues in response that "Respondent ignores the significant history of this claim in pretrial defense motion practice and the re-raising of this claim combined with claims of

19

ineffective assistance of counsel on direct appeal and other appellate proceedings." (Petitioner's Opposition, Doc. # 42, at 40.) Regarding respondent's allegation that paragraphs 352-356 are procedurally defaulted under Ohio's contemporaneous objection rule, petitioner appears to be arguing that although defense counsel initially preserved these claims by filing pretrial motions indicating a desire to have the trial court "life qualify" the jurors, defense counsel subsequently waived the claim when they failed to renew their request or raise objections during *voir dire*. Thus, petitioner appears to concede that the claims were defaulted under Ohio's contemporaneous objection rule, but argues that ineffective assistance of trial counsel constitutes cause and prejudice to excuse the default.

Petitioner disputes respondent's allegation that paragraphs 357-365 are procedurally defaulted because they were never presented to the Ohio courts. According to petitioner, those allegations lay out the impact of the failure to properly *voir dire* prospective jurors and constitute the factual and legal support of that claim, *i.e.*, failure to properly *voir dire* jurors, as it was raised on direct appeal. (Petitioner's Opposition, Doc.# 42, at 41, citing App.Vol. II, at 113-134.)

The Court will address each of respondent's two allegations in turn.

### A. Improper Death and Life Qualification (¶¶ 352-356)

Respondent argues that petitioner's allegations regarding the improper "death qualification" and lack of "life qualification" of the prospective jurors, *i.e.*, paragraphs 352-356, are procedurally defaulted because petitioner did not raise a contemporaneous objection to the alleged deficiencies during *voir dire*. Petitioner appears to concede as much, although his concession is clouded by complaints about how Ohio's "Catch-22" system allows the State to

erect procedural bars stemming from errors committed by state-supplied defense attorneys.
(Petitioner's Opposition, Doc.# 42, at 41.)

Turning first to the four-part *Maupin* test, the Court concludes that petitioner violated Ohio's contemporaneous objection rule when he failed to object to the manner in which the trial court "death qualified" prospective jurors and to the trial court's failure to "life qualify" the prospective jurors.  Claimed errors concerning *voir dire* that are not objected to during *voir dire* are waived for all but plain error.  *State v. Lundgren*, 73 Ohio St. 3d 474, 481-82, 653 N.E.2d 304, 315 (1995); *see also State v. Bryan*, 101 Ohio St. 3d 272, 292, 804 N.E.2d 433, 458 (2004); *State v. Mason*, 82 Ohio St. 3d 144, 164, 694 N.E.2d 932, 953 (1998).  Petitioner violated this rule when he failed to object to the alleged deficiencies he complains of in paragraphs 352-356 of his habeas corpus petition; petitioner does not appear to contend otherwise.

The Court further finds that the second part of the *Maupin* test has been satisfied, insofar as the Supreme Court of Ohio clearly and expressly enforced the contemporaneous objection rule against petitioner's allegations challenging the "death qualification" and "life qualification" aspect of *voir dire*.  Petitioner raised this claim in his first proposition of law on direct appeal to the Supreme Court of Ohio.  The Supreme Court of Ohio noted that petitioner had waived all but plain error regarding this *voir dire* challenge because petitioner had failed to object to the trial court's death qualification and lack of life qualification questions.  (App.Vol. III, 147.)  Thus, the second part of the *Maupin* test has been satisfied and again, petitioner does not contend otherwise.

Ohio's contemporaneous objection rule is clearly stated and regularly enforced.  *See, e.g., State v. Underwood*, 3 Ohio St. 3d 12, syllabus, 444 N.E.2d 1332 (1983)("The failure to object to

21

a jury instruction constitutes a waiver of any claim of error thereto...."); *State v. Lundgren, supra*, 73 Ohio St. 3d at 481-82, 653 N.E.2d at 315 ("As Lundgren failed to object to the court's line of questioning [regarding the death qualification process] at trial, we review these arguments under the plain-error standard."). Ohio's contemporaneous objection rule serves important state interests in judicial economy and minimizing reversible error by enabling a trial judge to conduct *voir dire* that is free of error, and, where possible, agreeable to the parties. Finally, Ohio's contemporaneous objection rule -- even with the application of plain error review -- does not rely on or otherwise implicate federal law. The Sixth Circuit has consistently ruled that Ohio's contemporaneous objection rule is an adequate and independent procedural rule that bars federal habeas corpus review absent a demonstration of cause for the waiver and resulting prejudice. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell,* 209 F.3d 854, 866-71 (6th Cir. 2000); *see also Osborne v. Ohio*, 495 U.S. 103, 123 (1990); *Engle v. Isaac*, 456 U.S. 107, 124-25 (1982). Thus, the third part of the *Maupin* test has been satisfied.

Having determined that ground three, paragraphs 352-356, are subject to procedural default, the Court turns its attention to petitioner's argument that ineffective assistance of trial counsel constitutes cause and prejudice sufficient to excuse the default. Specifically, petitioner argues that his trial attorneys performed unreasonably and to his prejudice when they failed to object to the trial court's improper "death qualification" of prospective jurors and corresponding failure to "life qualify" the prospective jurors. Ruling on petitioner's cause-and-prejudice argument will call upon the Court to rule on the trial counsel ineffectiveness claim set forth in ground one, sub-part (B)(2), paragraphs 235-248. Because ground one, sub-part (B)(2) is properly before the Court for a full review on the merits, (see Opinion and Order, Doc.# 39, at

Part IV.(B)(2)), and the parties have not yet submitted their merits briefs, the Court will defer consideration of the instant cause-and-prejudice argument until it rules on the trial counsel ineffectiveness claim set forth in ground one, sub-part (B)(2), paragraphs 235-248.

Beyond offering ineffective assistance of trial counsel as cause to excuse this procedural default, petitioner did not specifically raise any additional arguments in the section of his opposition devoted to "jury voir dire and death qualifying" for why the default should not be enforced. However, he included in the introduction of his opposition brief a host of arguments concerning cause and prejudice, the actual innocence exception, and other reasons for not enforcing procedural default. Of those arguments, the only one that is applicable to the instant procedural default, *i.e.*, violation of Ohio's contemporaneous objection rule, is petitioner's argument that procedural default can be excused under the "actual innocence" exception. (Petitioner's Opposition, Doc.# 42, at 30-37). For reasons discussed more fully *supra* in Part II(D)(3), the Court will defer consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in his second ground for relief.

For the foregoing reasons, the Court concludes that the allegations set forth in ground three under the heading "voir dire and death qualifying," *i.e.*, paragraphs 352-356, are subject to procedural default. The Court will defer consideration of petitioner's argument that trial counsel ineffectiveness constitutes cause and prejudice sufficient to excuse the default until after the parties submit their merits briefs and the Court considers the trial counsel ineffectiveness claim set forth in ground one, sub-part (B)(2), paragraphs 235-248. Further, the Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to

procedural default until after the parties submit their merit briefs and the Court considers

petitioner's free-standing claim of actual innocence.  For the foregoing reasons, respondent's

motion to dismiss ground three, paragraphs 352-356 as procedurally defaulted is DENIED,

subject to reconsideration once the Court addresses the trial counsel ineffectiveness claim set

forth in ground one, sub-part (B)(2), paragraphs 235-248, and the claim of actual innocence set

forth in petitioner's second ground for relief.[1]

### B.  Paragraphs 357-365

Respondent argues that the remaining allegations under the sub-part entitled "jury voir

dire and death qualifying," *i.e.*, paragraphs 357-365, are procedurally defaulted because they

were never presented to the Ohio courts.  Petitioner disputes that argument, insisting that those

allegations lay out the impact of the failure to properly *voir dire* prospective jurors and constitute

the factual and legal support of that claim, *i.e.*, failure to properly *voir dire* jurors, as it was

raised on direct appeal.  (Petitioner's Opposition, Doc.# 42, at 41, citing App.Vol. II, at 113-

134.)

The first part of the allegations under "jury voir dire and death qualifying" were devoted

to what petitioner characterized as improper "death qualifying" of prospective jurors and a

corresponding lack of "life qualifying" of prospective jurors.  The allegations set forth in the

---

[1]        As to other claims, where the Court has deferred consideration of petitioner's argument that he can satisfy the "gateway" actual innocence exception to procedural default, the Court has granted respondent's motion to dismiss those claims, subject to reconsideration, because the Court otherwise found that all four parts of the *Maupin* test had been met and that respondent had tentatively sustained his burden of establishing the procedural default.

With respect to the instant claim, where the Court has deferred consideration of not only petitioner's argument that he can satisfy the "gateway" actual innocence exception to procedural default, but also petitioner's argument that he can satisfy the cause-and-prejudice exception to procedural default, this Court must deny respondent's motion to dismiss this claim, subject to reconsideration, because the Court cannot find that all four parts of the *Maupin* test have been met.

second part of "jury voir dire and death qualifying," *i.e.*, paragraphs 357-365, may be summarized as follows. Petitioner identifies several prospective jurors who were improperly questioned or instructed that their rejection of a death sentence had to be unanimous, or who were misled into believing that self-defense was a viable mitigating factor in Ohio and would be an issue in petitioner's case. As a result, petitioner argues that his jury was rife with the following deficiencies: jurors were not properly death qualified or were improperly instructed on the imposition of the death penalty; jurors were given an improper "unanimity" instruction; jurors with "deep-seated" views on the death penalty were permitted to remain on petitioner's jury; jurors were not properly vetted by defense counsel regarding their views about the death penalty; jurors were not properly life qualified or were improperly instructed on the imposition of a life sentence; and jurors were subjected to incomprehensible statements and questions, misleading statements and questions about self-defense, and confusing statements about the concept of mitigation evidence.

The Court has carefully reviewed the allegations presented to the Supreme Court of Ohio in petitioner's third proposition of law, (App.Vol. II, at 113-134), and it is a stretch to say that the allegations set forth above were presented to the Supreme Court of Ohio in petitioner's third proposition of law as an explanation of the impact of the failure to properly *voir dire* prospective jurors. That said, although it cannot be said that every allegation set forth in paragraphs 357-365 was presented to the Supreme Court of Ohio in petitioner's third proposition of law, the Court is persuaded that most of those allegations, and therefore the "substance" of the allegations, were. *See, e.g.*, *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986)(holding that additional facts or evidence may be considered by a federal habeas corpus court where that new information does not

25

"fundamentally alter the legal claim already considered by the state courts."); *see also Sampson v. Love*, 782 F.2d 53, 55 (6th Cir. 1986)(holding that additional facts or evidence may be considered by a federal habeas court where that new information does not place the claim in a "significantly different posture" than the claim considered by the state courts).

Thus, petitioner presented the essence of the allegations set forth in paragraphs 357-365 on direct appeal to the Supreme Court of Ohio in his third proposition of law.  (App.Vol. II, at 113-119.)  The Supreme Court of Ohio addressed and rejected those allegations on the merits, albeit in summary fashion.  (App.Vol. III, at 148.)  Accordingly, the allegations set forth in paragraphs 357-365 are properly before the Court for review on the merits.  Respondent's motion to dismiss paragraphs 357-365 as procedurally defaulted is DENIED.

## IV.  General Voir Dire by Defense Counsel (¶¶ 366-373)

In the third sub-part of his third ground for relief, petitioner generally assails trial counsel's performance during *voir dire*.  Petitioner argues that trial counsel should have asked, but did not ask, prospective jurors whether they had preconceived notions about the reasonable doubt standard, whether any of them had been or knew other people who had been victims of a crime, whether any of them had any prior jury experience, what knowledge they had of the Aryan Brotherhood, about their expectations of petitioner testifying, about their views regarding the credibility of petitioner and law enforcement officers, about their ability to hear about and view graphic evidence, what news accounts they had heard or read regarding the incident or petitioner, about their opinions of prisoners, whether any of them were familiar with any of the State's witnesses, their understanding of the presumption of innocence, and their opinions about the justice system.  Petitioner further complains that the only question defense counsel asked

26

repeatedly was whether the prospective jurors had had any negative experiences with a psychologist. Petitioner complains that, beyond asking prospective juror McCollum some follow-up questions about her employment with the Supreme Court of Ohio and her boyfriend's employment with the London Correctional Institute, defense counsel did not engage in extended *voir dire* with any prospective jurors – even prospective jurors who had admitted knowing or being acquainted with certain State witnesses. Finally, petitioner faults defense counsel for conducting a *voir dire* that consisted more of general statements than actual, probing questions to the prospective jurors.

Respondent argues that these allegations are procedurally defaulted because they were never presented to the Ohio courts. Petitioner argues in response that this defense "is simply wrong as a matter of fact." (Petitioner's Opposition, Doc.# 42, at 42). Citing App.Vol. II, at 115-119, petitioner insists that he presented these allegations to the Supreme Court of Ohio on direct appeal as part of his third proposition of law. The record does not support petitioner's argument and this Court finds that he did not, as he claims, present the substance of the allegations set forth in paragraphs 366-373 to the Supreme Court of Ohio in his third proposition of law.

Although ineffective assistance during *voir dire* was featured prominently in petitioner's third proposition of law, which assailed the performance of his trial attorneys at every stage of his capital case, the allegations of ineffective assistance during *voir dire* as raised in petitioner's third proposition of law share almost no facts in common with the allegations of ineffective assistance during *voir dire* as set forth in paragraphs 366-373 of petitioner's third ground for relief. The only commonality that this Court could find, after comparing petitioner's third

27

proposition of law to allegations set forth in paragraphs 366-373, was a claim that defense counsel should have asked prospective jurors about their awareness of or attitudes toward the Aryan Brotherhood. *Compare* App.Vol. II, at 115, *with* Petition, Doc.# 14, at ¶368, p.16. The variations in the two sets of allegations go well beyond the tinkering and reorganizing that is permitted. *See, e.g.*, *Vasquez v. Hillery, supra*, 474 U.S. at 260 (holding that additional facts or evidence may be considered by a federal habeas corpus court where that new information does not "fundamentally alter the legal claim already considered by the state courts."); *see also Sampson v. Love, supra*, 782 F.2d at 55 (holding that additional facts or evidence may be considered by a federal habeas court where that new information does not place the claim in a "significantly different posture" than the claim considered by the state courts). Rather, the facts alleged by petitioner in paragraphs 366-373 fundamentally alter the claim that was presented to and rejected by the Supreme Court of Ohio. Thus, although the legal theories are the same, *i.e.*, ineffective assistance of counsel during *voir dire*, the factual allegations presented to the Supreme Court of Ohio on direct appeal were entirely different from the facts set forth by petitioner herein.

A state prisoner must exhaust available state court remedies before he can secure federal habeas corpus review. *Coleman v. Thompson, supra*, 501 U.S. 722; *Picard v. Connor, supra*, 404 U.S. 270. If petitioner has not fairly presented his claims, and no state remedy exists for him to do so, then his claim is exhausted, but procedurally defaulted. *Rust*, 17 F.3d at 160; *see also Gray v. Netherland, supra*, 518 U.S. at 161 (exhaustion requirement is satisfied if it is clear that the petitioner's claims are now procedurally barred under state law); *Gall v. Parker, supra*, 231 F.3d at 283-84 (same). The allegations set forth under "general voir dire by defense counsel"

28

appear to be procedurally defaulted.

Once the Court determines that a constitutional claim is subject to procedural default, the Court may not address the merits of that claim absent a showing by petitioner that the default can be excused under either the cause-and-prejudice test or the narrow "actual innocence" exception. Although petitioner did not specifically raise any such arguments in the section of his opposition devoted to "general voir dire by defense counsel," he included in the introduction of his opposition a host of arguments concerning cause and prejudice, the actual innocence exception, and other reasons for not enforcing procedural default.  The Court will address all of the arguments that are relevant to the procedural default at hand, *i.e.*, petitioner's failure to raise these allegations in any state court.

To the extent that the allegations set forth under "general voir dire by defense counsel" appeared on the face of the record and were therefore defaulted when petitioner failed to raise them on direct appeal, petitioner offers ineffective assistance of appellate counsel as cause and prejudice to excuse the default.  (Petitioner's Opposition, Doc.# 42, at 28-30.)  However, petitioner cannot offer ineffective assistance of appellate counsel as cause for the default of these trial counsel ineffectiveness claims because he never presented this allegation of appellate counsel ineffectiveness to the state courts.  *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000)(holding that an ineffective assistance of counsel claim offered as cause for the default of a substantive federal claim must first be properly presented to the state courts).

To the extent that petitioner has urged the Court to excuse the default of this "cause" argument because the attorney who represented him during his Rule 26(B) proceedings, Mr. Gideon, suffered from an actual conflict of interest resulting in a total denial of counsel during

petitioner's Rule 26(B) proceedings, the Court has already considered and rejected that argument.  Thus, ineffective assistance of appellate counsel does not constitute cause and prejudice to excuse the procedural default of paragraphs 366-373.

To the extent that petitioner argues that procedural default can be excused under the narrow "actual innocence" exception, for reasons discussed more fully *supra* in Part II(D)(3), the Court will defer consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in his second ground for relief.

In conclusion, the Court finds that all of the allegations set forth under "general voir dire by defense counsel," *i.e.*, ¶¶ 366-373 of the petition, are procedurally defaulted due to petitioner's failure to present them to the state courts.  The Court also finds that petitioner has not demonstrated cause or prejudice to excuse the default.  However, the Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence.  For that reason, respondent's motion to dismiss the allegations of ground three set forth under "general voir dire by defense counsel," *i.e.*, ¶¶ 366-373, as procedurally defaulted is GRANTED, subject to reconsideration once the Court addresses the claim of actual innocence set forth in petitioner's second ground for relief.

## V.  Exercise of Peremptories (¶¶ 374-382)

In the fourth sub-part of his third ground for relief, petitioner assails both the trial court and defense counsel for the fact that he did not have enough peremptory challenges available to him to ensure a fair and impartial jury.  Specifically, petitioner argues that he could not remove all of the prospective jurors who had been "death qualified" but not correspondingly "life

30

qualified," as well as prospective jurors subject to other deficiencies such as being improperly instructed that any rejection of a death verdict had to be unanimous. Petitioner complains that, prior to final jury selection, the trial court denied petitioner's pretrial motion for additional peremptory challenges without holding a hearing, receiving evidence, or entertaining oral arguments. Petitioner argues that defense counsel were complicit in the trial court's failure to award additional peremptory challenges, insofar as they failed to renew their pretrial motion or request additional peremptory challenges during the jury selection process.

Respondent argues that these allegations, set forth in paragraphs 374-382, are procedurally defaulted because they were never presented to the state courts. In response, petitioner asserts that respondent's argument "again ignores the record of this case." (Petitioner's Opposition, Doc.# 42, at 43.) According to petitioner, the failures of his defense attorneys clearly were presented in the third proposition of law on direct appeal to the Supreme Court of Ohio, while the impact of the lack of sufficient peremptory challenges available to petitioner clearly was presented in the sixth proposition of law on direct appeal to the Supreme Court of Ohio. (*Id.*, citing App.Vol. II, at 113-134, 145-150.) Petitioner's argument is not supported by the record.

The allegations described above under "exercise of peremptories" were not presented on direct appeal in the third and sixth propositions of law as petitioner contends. The many allegations of trial counsel ineffectiveness presented on direct appeal in the third proposition of law included no allegation of trial counsel ineffectiveness for the failure to renew their motion for additional peremptory challenges or request additional peremptories during jury selection. Further, as the Court noted earlier in its discussion of the "pretrial matters" sub-part of

petitioner's third ground for relief, nowhere in his sixth proposition of law did petitioner challenge or even mention the trial court's refusal to grant petitioner additional peremptory challenges.  The only thing for which petitioner faulted the trial court was failing to *sua sponte* remove Andre Porter from the prospective panel as an "automatic death penalty vote."  Further, the only thing for which petitioner faulted defense counsel was basing the "cause" challenge to Porter only on Porter's views regarding the defendant exercising his Fifth Amendment right not to testify.

Thus, the Court cannot accept petitioner's assertion that he presented in the third and sixth propositions of law on direct appeal the allegations set forth under "exercise of peremptories" in his third ground for relief.  It does not appear that those allegations were ever presented to the state courts.

A state prisoner must exhaust available state court remedies before he can secure federal habeas corpus review.  *Coleman v. Thompson, supra*, 501 U.S. 722; *Picard v. Connor, supra*, 404 U.S. 270.  If petitioner has not fairly presented his claims, and no state remedy exists for him to do so, then his claim is exhausted, but procedurally defaulted.  *Rust*, 17 F.3d at 160; *see also Gray v. Netherland, supra*, 518 U.S. at 161 (exhaustion requirement is satisfied if it is clear that the petitioner's claims are now procedurally barred under state law); *Gall v. Parker, supra*, 231 F.3d at 283-84 (same).  The allegations set forth under "exercise of peremptories" appear to be procedurally defaulted.

Once the Court determines that a constitutional claim is subject to procedural default, the Court may not address the merits of that claim absent a showing by petitioner that the default can be excused under either the cause-and-prejudice test or the narrow "actual innocence" exception.

Although petitioner did not specifically raise any such arguments in the section of his opposition devoted to "exercise of peremptories," he included in the introduction of his opposition a host of arguments concerning cause and prejudice, the actual innocence exception, and other reasons for not enforcing procedural default.  The Court will address all of the arguments that are relevant to the procedural default at hand, *i.e.*, petitioner's failure to raise these allegations in any state court.

To the extent that the allegations set forth under "exercise of peremptories" appeared on the face of the record and were therefore defaulted when petitioner failed to raise them on direct appeal, petitioner offers ineffective assistance of appellate counsel as cause and prejudice to excuse the default.  (Petitioner's Opposition, Doc.# 42, at 28-30.)  However, petitioner cannot offer ineffective assistance of appellate counsel as cause for the default of these trial counsel ineffectiveness claims because he never presented this allegation of appellate counsel ineffectiveness to the state courts.  *See Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000)(holding that an ineffective assistance of counsel claim offered as cause for the default of a substantive federal claim must first be properly presented to the state courts).

To the extent that petitioner has urged the Court to excuse the default of this "cause" argument because the attorney who represented him during his Rule 26(B) proceedings, Mr. Gideon, suffered from an actual conflict of interest resulting in a total denial of counsel during petitioner's Rule 26(B) proceedings, the Court has already considered and rejected that argument.  Thus, ineffective assistance of appellate counsel does not constitute cause and prejudice to excuse the procedural default of paragraphs 366-373.

To the extent that petitioner argues that procedural default can be excused under the

33

narrow "actual innocence" exception, for reasons discussed more fully *supra* in Part II(D)(3), the Court will defer consideration of petitioner's "gateway" actual innocence claim until it considers petitioner's "free-standing" actual innocence claim set forth in his second ground for relief.

In conclusion, the Court finds that all of the allegations set forth under "exercise of peremptories," *i.e.*, ¶¶ 374-382 of the petition, are procedurally defaulted due to petitioner's failure to present them to the state courts.  The Court also finds that petitioner has not demonstrated cause or prejudice to excuse the default.  However, the Court will defer consideration of petitioner's argument that he can satisfy the "actual innocence" exception to procedural default until after the parties submit their merit briefs and the Court considers petitioner's free-standing claim of actual innocence.  For that reason, respondent's motion to dismiss the allegations of ground three set forth under "general voir dire by defense counsel," *i.e.*, ¶¶ 374-382, as procedurally defaulted is GRANTED, subject to reconsideration once the Court addresses the claim of actual innocence set forth in petitioner's second ground for relief.

## VI.  Conclusion

For the foregoing reasons, respondent's motion to dismiss ground three is **DENIED** as to the allegations set forth under "Jury Voir Dire and Death Qualifying," paragraphs 357-365; **DENIED**, subject to reconsideration, as to the allegations set forth under "Jury Voir Dire and Death Qualifying," paragraphs 352-356; and **GRANTED**, subject to reconsideration, as to the allegations set forth under "Pretrial Matters," (paragraphs 338-351), "General Voir Dire by Defense Counsel," (paragraphs 366-373), and "Exercise of Peremptories," (paragraphs 374-382).

In accordance with the December 22, 2004 Scheduling Order (Doc.# 22), petitioner shall have thirty (30) days from the date of this order to file a motion for discovery and any renewed

motion for authorization for funds to employ experts.  Respondent's memorandum in opposition

and petitioner's reply in support shall be briefed in accordance with the local rules.

**IT IS SO ORDERED.**

　　/s/ Gregory L. Frost　　　
**GREGORY L. FROST**
**United States District Judge**

35