**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JOHN C. STOJETZ,**

        **Petitioner,**

  **v.**                          **Case No.  2:04-cv-263**
                                     **JUDGE GREGORY L. FROST**
**TODD ISHEE, Warden,**          **Magistrate Judge Norah McCann King**

        **Respondent.**

<u>**OPINION AND ORDER**</u>

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action under 28 U.S.C. § 2254.  This matter is before the Court upon Petitioner's motion for an order to release records (Doc. # 79), Respondent's reply in opposition (Doc. # 80), and Petitioner's reply in support (Doc. # 81).  Also before the Court is Petitioner's Notice of additional information in support of his motion for an order to release records.  (Doc. # 84.)

In its September 30, 2004 opinion and order addressing procedural default, this Court noted that many of Petitioner's claims appeared to have been procedurally defaulted, but permitted Petitioner to pursue the "actual innocence" gateway exception to allow review of otherwise defaulted claims.  This Court explained:

> Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent...."  *Murray v. Carrier*, *supra*, 477 U.S. at 496.  The "actual innocence" exception to procedural default applies whether the petitioner is asserting that he is actually innocent of the underlying crime for which he was convicted, or is challenging the aggravating circumstances that made him eligible for the death penalty.  As the Sixth Circuit explained in *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004):
>
> > The "fundamental miscarriage of justice" gateway is open to a

> petitioner who submits new evidence showing that "a
> constitutional violation has probably resulted in the conviction of
> one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327,
> 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)(quoting *Murray v. Carrier*,
> 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).  "To
> establish the requisite probability, the petitioner must show that it
> is more likely than not that no reasonable juror would have
> convicted him in light of the new evidence." *Id*.  The gateway is
> also available to a petitioner who demonstrates that he is "actually
> innocent" of the sentence of death that has been imposed on him.
> To establish his "innocence" of the death penalty, a petitioner must
> "show by clear and convincing evidence that, but for a
> constitutional error, no reasonable juror would have found the
> petitioner eligible for the death penalty under the applicable state
> law." *Sawyer v. Whitley*, 505 U.S. 333, 336, 112 S.Ct. 2514, 120
> L.Ed.2d 269 (1992).

*Williams v. Bagley*, 380 F.3d at 973.

Thus, the "actual innocence" exception to procedural default applies
whether the petitioner is asserting that he is actually innocent of the underlying
crime for which he was convicted, or is challenging the aggravating
circumstances that made him eligible for the death penalty.  The standard of proof
that he must satisfy depends upon the challenge he is making.  *Calderon v.
Thompson*, 523 U.S. 538, 559 (1998).  Claims challenging the petitioner's
conviction for the underlying crime are governed by *Schlup*'s more lenient "more
likely than not" standard.  *Calderon*, 523 U.S. at 559.  Claims challenging the
petitioner's eligibility for the death penalty are governed by *Sawyer*'s more
exacting "clear and convincing" standard – this is true even where the petitioner's
claim challenges an element of the underlying offense that has the effect of
enhancing the underlying offense to a capital offense, thereby making the
petitioner eligible for the death penalty.  *Calderon*, 523 U.S. at 559-560.  In
*Calderon*, the Supreme Court emphasized:

> The *Sawyer* standard has a broader application than is first
> apparent.  As the Court explained in *Schlup*, when a capital
> petitioner challenges his underlying capital murder conviction on
> the basis of an element that "function[s] essentially as sentence
> enhancer," the *Sawyer* "clear and convincing" standard applies to
> the claim.  *Schlup, supra*, at 326, 115 S.Ct., at 866-867.  Thus, to
> the extent a capital petitioner claims he did not kill the victim, the
> *Schlup* "more likely than not" standard applies.  To the extent a
> capital petitioner contests the special circumstances rendering him
> eligible for the death penalty, the *Sawyer* "clear and convincing"

> standard applies, irrespective of whether the special circumstances
> are elements of the offense of capital murder or, as here, mere
> sentencing enhancers.

> *Calderon, supra*, 523 U.S. at 560.

(Doc. # 39 at 49-50).

Noting that Petitioner appeared to be arguing that he was both actually innocent of the killing of Damico Watkins and actually innocent of the death sentence imposed upon him, the Court ultimately deferred consideration of whether Petitioner could establish either the *Schlup* gateway exception (actual innocence of the offense) or the *Sawyer* gateway exception (actual innocence of the death penalty) until it considered the merits of Petitioner's substantive claim of actual innocence set forth in his second ground for relief.  This Court explained:

> Although free-standing claims of actual innocence involve a different, and surely
> more exacting, standard of proof than gateway claims of actual innocence, *see
> Herrera v. Collins*, 506 U.S. 390, 417 (1993)(noting that the "threshold showing"
> for a free-standing claim of actual innocence would be "extraordinarily high");
> *Schlup v. Delo, supra*, 513 U.S. at 313-315 (distinguishing between a free-
> standing, substantive claim of actual innocence upon which the Court could grant
> habeas relief, and a gateway, procedural claim of actual innocence by which a
> Court could examine the merits of an otherwise defaulted claim), the facts
> supporting both claims – and both claims will involve a fact-intensive analysis –
> will be the same.  Thus, this Court is of the view that it would be more prudent to
> address petitioner's "gateway" claim of actual innocence when it considers his
> "free-standing" claim of actual innocence.

(Doc. # 39 at 52).

On March 27, 2007, the Court issued an order denying Petitioner's expansive motion for leave to conduct discovery.  (Doc. # 56.)  In so doing, however, the Court indicated both that it was inclined to grant Petitioner's separate motions for expert assistance and, assuming that the investigators uncovered new information, that it might be willing to entertain any renewed motion for discovery.  (Doc. # 56 at 49.)

3

Subsequently, on July 10, 2007, the Court granted Petitioner's motions for funds to employ a private investigator and a mitigation investigator.[1]  (Doc. # 69.)  Petitioner had requested a private investigator to investigate, among other things, details surrounding a lawsuit by the victim's family against various state agencies; to collect statements by juvenile inmate witnesses; to explore the scope of deals that the State offered to cooperating inmate witnesses, as well as the nature of meetings between the prosecutors and inmate witnesses; to investigate further the gang affiliation of the victim and certain inmate witnesses; to locate and interview jurors who served during Petitioner's trial, as well as potential jurors who were excused from service; to locate and interview any other fact witnesses; and to investigate and collect records and documents.  The Court granted funds for the investigator, finding that Petitioner had demonstrated a nexus between his request and potentially viable claims.

Petitioner had requested a mitigation investigator to assist him in locating and interviewing family, friends, medical providers, and others; to locate and obtain documents concerning Petitioner's social, medical, and mental health history; to investigate the nature and continuing impact of a head injury that Petitioner had suffered in 1976 as a result of being struck in the back of the head by a crowbar during a fight; and to investigate the nature and continuing impact of having his throat slashed during a fight in prison.  He sought funds to employ both experts in connection with not only his *Brady* claims and certain claims of ineffective assistance of counsel, but also his substantive actual innocence claim and his actual innocence gateway arguments.  The Court granted Petitioner's request, albeit with some reservations.  The Court explained:

---

[1]     The Court denied Petitioner's requests for funds to employ an attorney expert and a neuropsychologist.

4

> The nexus between this funding request and viable constitutional claims is somewhat tenuous because the status of the constitutional claims at issue is more tenuous. Arguably this funding request implicates primarily, if not solely, petitioner's claim of ineffective assistance of counsel during mitigation, *i.e.*, ground one, sub-part (I). In its *Opinion and Order* of September 30, 2005, the Court granted respondent's motion to dismiss most of that claim, subject to reconsideration should petitioner be able to satisfy the "actual innocence" exception to procedural default. Satisfying the "actual innocence" exception is no small task, to say the least. Nonetheless, this Court has found that petitioner is entitled to try to make that showing, and is of the view that this funding request is reasonably necessary to enable him to do so.

(Doc. # 69 at 5.)

Turning to the instant motion, Petitioner seeks an order permitting him, (or, more precisely, his counsel and agents), to view and copy any documents and records pertaining to Petitioner from the following agencies: 1) Ohio Department of Rehabilitation and Correction ("ODRC"); 2) Cuyahoga County Probation Department; 3) Cuyahoga County Juvenile Court; and 4) Cuyahoga County Children and Family Services. (Doc. # 79 at 1.) Petitioner argues that, in order to present the merits of the free-standing actual innocence claim set forth in his second ground for relief, as well as *Schlup/Sawyer* "gateway" actual innocence arguments to excuse otherwise defaulted claims, it is essential that he receive the social, medical, and related history that his mitigation investigator seeks and which was not presented at trial. Stating that his investigation reveals that the agencies listed above "will possess records pertaining to Petitioner," Petitioner explains that the agencies will not release those records absent a court order. Petitioner argues that the records are reasonably necessary to enable his counsel and mitigation specialist to present the evidence necessary to establish his free-standing and gateway actual innocence claims. In support of this argument, Petitioner attaches a photocopy of an affidavit by his current court-appointed mitigation specialist, Margaret M. Petrone, Ph.D., in

5

which she avers that she needs to obtain and review life history records and cannot complete the tasks of interviewing Petitioner, his family, and others until she obtains and reviews the records from those agencies. (Doc. # 79-2 at 2.)

Respondent offers several arguments opposing Petitioner's request. Respondent opposes Petitioner's request for discovery of records from ODRC on the ground that Petitioner failed to present that evidence to the state courts on direct appeal or in postconviction. As to those records, Respondent emphasizes that, in the event this Court grants Petitioner's request, Respondent waives no claims or defenses associated with exhaustion, procedural default, or the restrictions on factual development set forth in 28 U.S.C. § 2254(e)(2). Respondent opposes Petitioner's request for records from the Cuyahoga County agencies, arguing that Petitioner should have presented those records during his state court proceedings and that Petitioner fails to demonstrate how any records that preceded his incarceration in 1992 are relevant to a claim of actual innocence regarding crimes that were committed at the Madison Correctional Institution on April 25, 1996. Regarding records that Petitioner seeks from time periods that pre-date the killing of Damico Watkins, Respondent also asserts that although such records might be relevant to Petitioner's claim of mitigation-phase ineffective assistance of counsel, that claim is not properly before the Court because it has been procedurally defaulted. (Doc. # 80 at 3 (citing Doc. # 39 at 79-82).)

In reply, Petitioner asserts that the restrictions on factual development set forth in 28 U.S.C. § 2254(e)(2) do not apply to the development or presentation of new evidence in support of an "actual innocence" gateway argument. (Doc. # 81 at 1.) Reasoning that the restrictions set forth in § 2254(e)(2) expressly apply to new evidence in support of *claims*, Petitioner argues that

the new evidence he seeks to present supports--not a habeas corpus *claim*--but an "actual

innocence" *gateway*.  In support of this argument, Petitioner cites *House v. Bell*, 547 U.S. 518,

539 (2006), for the proposition that the Supreme Court "rejected the very restrictions Respondent

seeks to prevent the Petitioner from gathering evidence in support of his gateway issue under

*Schlup v. Delo*, 513 U.S. 298 (1995)."  (Doc. # 81 at 1-2.)  Petitioner also points out that this

Court premised its decision approving the expenditure of funds for expert assistance on the fact

that the whole reason that Petitioner sought those experts was to enable him to satisfy the actual

innocence gateway exception to procedural default.  (Doc. # 81 at 2 (citing Doc. # 69 at 5).)  In

apparent contradiction to this argument, however, Petitioner goes on to argue that it is essential

that he receive the social, medical, and other documents that he seeks in order to present both the

merits of his actual innocence claim as well as his *Schlup*/*Sawyer* gateway arguments.  (Doc. #

81 at 2.)  Petitioner argues that, without an order from this Court for the release of "records

pertaining to Petitioner" in the possession of ODRC and the Cuyahoga County agencies,

Petitioner's ability to fairly present his actual innocence arguments would be frustrated and

Respondent would successfully restrict this Court's consideration of the *Schlup*/*Sawyer* gateway

arguments to only old evidence.  (*Id*. at 3.)

      In his reply, Petitioner also takes issue with Respondent's suggestion that he (Petitioner)

is, through this request for an order for the release of records, seeking discovery.  (*Id*. at 4.)  The

fact that these agencies require a court order before releasing records does not, Petitioner

contends, transform his attempt to access those records into a formal request for discovery.[2]  It is

---

[2]     Habeas corpus litigants are entitled to conduct discovery only by leave of the district court.  Rule 6(a) of the Rules Governing Section 2254 Cases provides:  "A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."

only if Petitioner seeks, after reviewing the records, to introduce those records in support of his gateway arguments that the Court will be required to rule on the admissibility of those records. Petitioner also takes issue with Respondent's argument that Petitioner is not entitled to the records that he seeks because they relate only to a claim that has been procedurally defaulted, *i.e.*, Petitioner's mitigation-phase ineffective assistance of counsel claim. Petitioner notes that this Court deferred consideration of whether Petitioner could establish the *Schlup/Sawyer* exception to secure review of his otherwise defaulted mitigation-phase ineffective assistance claim and that the records that he seeks are essential to his ability to satisfy the *Schlup/Sawyer* gateway exception. (*Id*. at 4-5.)

This Court has to this point refrained from attempting to define the contours of the *Schlup/Sawyer* "actual innocence" gateway arguments, or the free-standing "actual innocence" claim referenced in *Herrera v. Collins*, 506 U.S. 390, 417 (1993) ("We may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim") and *House v. Bell*, 547 U.S. 518, 555 (2006). Given the extraordinary and rare circumstances that would support such claims, ready or precise definitions are not easily formulated. Further, at the time that this Court first recognized the possibility that petitioner might be able to demonstrate one or both claims--in its September 30, 2005, order addressing respondent's motion to dismiss procedurally defaulted claims (Doc. # 39)--no discovery or other factual development had yet occurred in this proceeding. Finally, this Court was loathe to unreasonably hamper petitioner's demonstration of the actual innocence gateway(s) or claim by prematurely

8

imposing unreasonably limitations or unfounded expectations. After all, the whole purpose of the "actual innocence" gateway exception--*i.e.*, to allow federal habeas corpus review of an otherwise defaulted claim in a case where constitutional error has resulted in the conviction or death sentence of one who is innocent--demands that courts view attempts to demonstrate such a showing with proper adherence to the high showing necessary but without preconceived or rigid notions. As to a free-standing, substantive claim of actual innocence, even the Supreme Court has refrained from defining the contours of such a claim, stating only that "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Herrera*, 502 U.S. at 417.

Now the Court finds itself faced with an open-ended, inadequately-defined request for an order to release records, at the twilight of this habeas corpus proceeding when factual development would ordinarily be nearing its close (or, in this case, directed solely toward new evidence that would assist Petitioner in demonstrating that he is actually innocent of the murder and/or actually innocent of the death penalty). With the exception, perhaps, of certain records in the possession of ODRC, the records that Petitioner seeks from various Cuyahoga County agencies could only support the *Sawyer* actual-innocence-of-the-death penalty exception.[3] (It is true, as Petitioner asserts, that such records might also support a claim of mitigation-phase ineffective assistance of counsel; but to reach that defaulted claim, Petitioner must first demonstrate an actual innocence gateway; the only actual innocence gateway that the Cuyahoga County records sought by Petitioner could support is the *Sawyer* actual innocence gateway.) To characterize the burden of establishing the *Sawyer* actual innocence exception on the basis of

---

[3] Given, however, that Petitioner supports his request for the release records by only the affidavit of his *mitigation* investigator, it may be that the records he seeks from ODRC pertain only to mitigation issues, as opposed to offense-related issues.

9

new mitigation evidence as extraordinary is to grossly understate the task facing Petitioner.  The

District Court for the District of Arizona recently observed:

> As Petitioner acknowledges, to establish innocence of the death penalty as a
> gateway, Petitioner must show by *clear and convincing evidence* that, but for a
> constitutional error, *no reasonable factfinder* would have found the existence of
> any aggravating circumstance or some other condition of eligibility for the death
> sentence under the applicable state law.  (citation omitted.)  *** The Court rejects
> Petitioner's attempt to demonstrate, via new mitigation evidence, that no
> reasonable factfinder would have found at least one of the three aggravating
> factors at issue in this case.  (Citations omitted.)

*Greenway v. Schriro*, No. CV-98-25-TUC-RCC, 2007 WL 2808082, at *11 (D. Ariz. Sept. 25,

2007) (emphasis added).

Still, this Court remarked in its order granting Petitioner funds to employ a mitigation

investigator that he should be given every opportunity to establish the actual innocence gateways

and that the services of a mitigation investigator were reasonably necessary for him to do so.  It

would now be inconsistent to impose limitations on the efforts of that mitigation investigator.

Accordingly, the Court finds Petitioner's motion to be well taken.

The various arguments that Respondent raises against Petitioner's request are either

unfounded or premature.  Respondent's argument that Petitioner should be required to satisfy the

"good cause" standard governing discovery requests in habeas corpus is unfounded because

Petitioner has not filed a formal motion for discovery.  He requested and this Court granted, as

reasonably necessary pursuant to 18 U.S.C. § 3599(f), funds to employ a private investigator and

a mitigation investigator.  Nothing in that statutory section, or in any cases interpreting that

statutory section, requires Petitioner to demonstrate anything other than that the investigative or

expert services that he seeks are "reasonably necessary."  That certain agencies in possession of

records pertaining to Petitioner and sought by his investigators will not release them absent a

10

court order should not impose upon Petitioner the additional requirement of satisfying the "good cause" standard that governs discovery requests in habeas corpus.

Further Respondent's arguments that Petitioner's request might be barred by the doctrines of exhaustion and procedural default or the limitations on factual development set forth in 28 U.S.C. § 2254(e)(2) are premature.[4] Petitioner seeks access to records pertaining to his social, medical, and mental health history. He has not asked, and indeed may never ask, to expand the record with those records or to have the Court consider those records in deciding his constitutional claims or actual innocence gateway arguments. Thus, this Court need not (and cannot) now consider whether either the doctrines of exhaustion or procedural default or the limitations on factual development set forth in 28 U.S.C. § 2254(e)(2) preclude it from considering those records. The Court will consider such issues when and if they arise.

For the foregoing reasons, the Court **GRANTS** Petitioner's motion for an order to release records (Doc. # 79). The Court **HEREBY DIRECTS** the Ohio Department of Rehabilitation and Corrections ("ODRC"), the Cuyahoga County Probation Department, the Cuyahoga County Juvenile Court, and the Cuyahoga County Children and Family Services to release to Petitioner

---

[4]     28 U.S.C. §2254(e)(2) provides:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–

    (A) the claim relies on–

            (i)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

            (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

        (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

11

John C. Stojetz's attorneys or agents any records in their possession that pertain to Petitioner

John C. Stojetz and are not otherwise protected or privileged.  With respect to any records

believed by any agency listed to be protected or privileged, the Court **HEREBY DIRECTS** the

parties to proceed in accordance with Fed. R. Civ. P. 26(b)(5).

     **IT IS SO ORDERED.**


     **/s/ Gregory L. Frost**
     **GREGORY L. FROST**
     **United States District Judge**